UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
                                                    :
WILLIAM J. WARREN,                                  :
                              Plaintiff,            :
                                                    :          12 Civ. 5070 (JPO)
                  -against-                          :
                                                    :          OPINION AND ORDER
JOHN WILEY & SONS, INC.,                            :
                              Defendant.            :
                                                    :
------------------------------------------------------------ X
                                                    :
LAURIE RUBIN,                                       :
                              Plaintiff,            :
                                                    :
                  -against-                          :
                                                    :          12 Civ. 5071 (JPO)
JOHN WILEY & SONS, INC., WILLIAM                    :
ZERTER, HILLARY NEWMAN, and JOHN                    :
DOES 1-10,                                          :
                              Defendants.           :
                                                    :
------------------------------------------------------------ X
                                                    :
DAVID YOUNG-WOLFF,                                  :
                              Plaintiff,            :
                                                    :
                  -against-                          :          12 Civ. 5230 (JPO)
                                                    :
JOHN WILEY & SONS, INC.,                            :
                              Defendant.            :
                                                    :
------------------------------------------------------------ X
```

J. PAUL OETKEN, District Judge:

William J. Warren, Laurie Rubin, and David Young-Wolff bring separate actions against

John Wiley & Sons, Inc. ("Wiley") for copyright infringement and related claims. Rubin's

action is also against William Zerter and Hilary Newman (employees of Wiley), and John Does

1-10 ("the Printer Defendants"). Defendants now move to dismiss these actions for failure to

1

state a claim, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]  For

the reasons that follow, the motions to dismiss are granted in part and denied in part.

## I.      Background

### A.      Factual Background

The following facts are taken from Plaintiffs' Complaints and are presumed true for

purposes of this motion.

#### 1.      The Parties

Warren, Rubin, and Young-Wolff are professional photographers who make their living

by taking and licensing photographs.

Wiley is a publisher of textbooks, professional and trade books, and scholarly journals.

Zerter is the Vice President of Finance and Operations of the Global Education Division

at Wiley.

Newman is the Manager of the Photo Department of the Global Education Division at

Wiley.

The Printer Defendants are yet-to-be ascertained printing companies engaged by Wiley to

print infringing publications.

#### 2.      The Warren Action

Warren's lawsuit ("the Warren Action") alleges copyright infringement and fraud.

Warren is the creator and owner of a photograph known as "Executives Silhouetted."

Warren has provided a copy of the picture but has not included a registration number in his

Complaint or appended a copyright certificate thereto.  Wiley obtained a copy of "Executives

Silhouetted" through Plaintiff's licensing agent, Corbis Corporation ("Corbis"), and later used it

---

[1] Defendants also move to strike certain portions of the Complaints pursuant to Rule 12(f).
Those motions are denied.

on the cover of a book entitled "The Five Dysfunctions of a Team: A Leadership Fable," by the business author Patrick Lencioni.

### 3.      The Young-Wolff Action

Young-Wolff has also sued Wiley ("the Young-Wolff Action"), alleging copyright infringement, fraud, fraudulent concealment, breach of contract, and copyright exportation.

Young-Wolff alleges that Wiley has infringed seventeen of Young-Wolff's photographs. Young-Wolff has provided a copyright registration numbers for each photograph.

Wiley has entered into hundreds of license agreements with unnamed licensing agents regarding photographs owned by Young-Wolff, each requiring Wiley to disclose usage information upon request, which Wiley has purportedly failed to do.  Young-Wolff alleges that Wiley breached these contracts by exceeding the usage provided for in the licenses, by publishing the photographs prior to the start date of the licenses, and/or by failing to disclose usage information.  Young-Wolff also alleges that Wiley published Young-Wolff 's photographs in publication that Wiley willfully exported to foreign countries without permission from Young-Wolff .

### 4.      The Rubin Action

In her lawsuit ("the Rubin Action"), Rubin alleges that Wiley, Newman, and Zerter engaged in copyright infringement, fraud, and fraudulent concealment, and that Wiley engaged in infringing exportation.

Rubin alleges that she registered the copyright for the photograph at issue, "Burnt Toast," with the U.S. Copyright Office, but she has failed to include a registration number or copyright certificate showing ownership of the photograph.

Prior to March 3, 2000, an unnamed Wiley photo editor contacted Rubin asking her to use "Burnt Toast" for a textbook entitled "Fundamentals of Physics, 6th edition" ("the Sixth Edition").

Rubin provided Wiley a limited license to use the photograph to print 100,000 copies of the Sixth Edition to be printed in English only. This license was solely for distribution of the Sixth Edition in the United States. Defendants have published well in excess of 100,000 copies of the photograph and have published multiple foreign editions, totaling 627,639 copies of the textbook.

## 5.    Allegations Regarding Wiley's Willful and Fraudulent Conduct

In each of the three above-mentioned actions, Plaintiffs allege that Wiley's willfulness can be inferred from Wiley's history of violating licenses. Plaintiffs also allege that Wiley made misrepresentations and concealed its impermissible use of Plaintiffs' photographs, in order to obtain licenses on better terms.

In negotiating the license for Warren's photograph in February 2007, Wiley's agent, Adrian Morgan, represented to Warren that Wiley intended to use "Executives Silhouetted" only for a hardcover edition of "The Five Dysfunctions of a Team." Warren alleges that Wiley used Warren's images in other publications and prior to entering into the February 2007 agreement, thereby exceeding the obtained license.

The Rubin and Young-Wolff Complaints also allege that Wiley is engaged in a "clean up campaign," whereby Wiley contacts photographers whose photographs were used without permission in an effort to "clean up" past infringements. Both Complaints allege that Zerter and Newman have headed this campaign. Rubin and Young-Wolff allege that Wiley has made the

4

strategic decision to request permission for the use of photographs, or seek an extension, without informing the photographers that their works have already been infringed.

In February 2012, Newman contacted Rubin and requested an extension of the license for "Burnt Toast."  She did not disclose, however, that the request pertained to books that had already been published, nor did she disclose that Wiley had already violated its license.  In subsequent correspondences with Rubin, Zerter intentionally misrepresented the actual print run of the Sixth Edition to Rubin.

### B.      Procedural Background

The Rubin and Warren Actions were filed on June 28, 2012, while the Young-Wolff Action was filed on July 5, 2012.  On September 27, 2012, motions to dismiss, or, in the alternative, to strike, were filed in each action.  Plaintiffs in each action are represented by the same attorneys, as are Defendants.

## II.      Motions to Dismiss

### A.      Standard of Review

As a general rule, when deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court is obliged to "accept as true all of the factual allegations contained in the complaint," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007), drawing "all inferences in the light most favorable to the non-moving party's favor."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).  Courts deciding motions to dismiss are "not limited to the face of the complaint," but "may [also] consider," *inter alia*, "any written instrument attached to the complaint . . . ." *In re Scottish*, 524 F. Supp. 2d 370, 382 (S.D.N.Y. 2007) (quotation marks and citations omitted).

While Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to avoid dismissal, a plaintiff must state "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  In other words, to survive a motion to dismiss, a plaintiff's facts must give rise to a plausible narrative supporting his claim. *See Twombly*, 550 U.S. at 570 ("Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.  Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

Claims sounding in fraud must satisfy not only Rule 12(b)(6), but also Rule 9(b); thus unlike copyright claims, claims for fraud, as well as fraudulent concealment, must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Unlike pleadings analyzed solely under Rule 12(b)(6), "Rule 9(b) pleadings cannot be based upon information and belief." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (citation omitted).  "Rule 9(b) provides that fraudulent intent 'may be averred generally,' as long as the complaint provides a factual basis that gives rise to a strong inference of intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Marvullo v. Gruner & Jahr AG & Co.*, No. 98 Civ. 5000 (RLC), 2001 WL 40772, at *5 (S.D.N.Y. Jan. 17, 2001) (citation omitted).

**B.     Copyright Infringement Claims against Wiley**

**1.      Applicable Law**

The Copyright Act of 1976 provides that "the owner of copyright under this title has the exclusive rights to do and to authorize," *inter alia*: "(1) to reproduce the copyrighted work in copies or phonorecords . . . ; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending . . . ."  17 U.S.C. § 106; *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) ("The fundamental copyright principles are clear.  The owner of a copyright has the exclusive right to—or to license others to—reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work.")  A party who violates the exclusive rights of the copyright owner is an infringer, liable for damages pursuant to 17 U.S.C. § 504.

"A properly plead[ed] copyright infringement claim must allege 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992).  For the reasons explained below, all three Plaintiffs have adequately stated claims for infringement of copyright.

**2.      The Works that Are the Subject of the Claims**

 Young-Wolff, Warren, and Rubin have each enumerated the works that are the subjects of their respective actions.  (*See* Warren Compl. at ¶ 11; Rubin Compl. at ¶¶ 14, 45; Young-Wolff Compl. at ¶¶ 11-47).

Wiley argues that Young-Wolff, the sole plaintiff to allege the infringement of more than one photograph, has failed to provide adequate notice as to which of Young-Wolff's photographs

are at issue in this action.  Wiley points out that, while the Young-Wolff Complaint purports to allege seventeen instances of copyright infringement, it also includes a list of 278 images whose licenses were allegedly breached by Wiley.  (*Id.*, Ex. 1.)  This, argues Wiley, makes ambiguous which precise images are the subject of Young-Wolff's copyright infringement claim.  The Court disagrees.  The Young-Wolff Complaint states quite clearly which seventeen photographs are at issue in Young-Wolff's copyright claim.  The inclusion of a list of additional photographs in Exhibit One does not create any ambiguity as to the alleged infringement at issue.  In any event, to the extent that Young-Wolff purports to allege copyright claims as to any works aside from the seventeen enumerated in his Complaint, he has failed to do so.[2]

### 3.    Plaintiffs' Ownership and Registration of the Copyrights

Young-Wolff has listed the names and registration numbers of the seventeen works at issue in his action.  By contrast, Warren and Rubin have not attached a copyright certificate or identified the registration numbers of their photographs, which Wiley argues is fatal to Warren's case.  As explained above, at this stage, Plaintiffs need only "allege . . . that plaintiff owns the copyrights in those works" and "that the copyrights have been registered in accordance with the statute," *Kelly*, 145 F.R.D. at 36, and Warren and Rubin have done just that.  (Warren Compl. at ¶ 11, 30).  To require a plaintiff to do more, at the motion to dismiss stage, would be to subject copyright plaintiffs to a heightened level of pleading, something this Court has been strictly

---

[2] Similarly, Wiley notes that parts of Warren's Complaint indicate that his action concerns not just "Executives Silhouetted" but also other, unnamed photographs.  (*See, e.g.*, Warren Compl. at ¶ 34 ("Defendant's unauthorized use of Plaintiff's copyrighted *images* was willful." (emphasis added).)  To the extent that Warren intends to assert copyright claims regarding these unspecified photographs, that portion of his Complaint is dismissed.  *Accord Schneider v. Pearson Educ., Inc.*, No. 12 Civ. 6392 (JPO), 2013 WL 1386968, at *3 (S.D.N.Y. Apr. 5, 2013) ("Defendant is correct that Plaintiff's allegations in paragraphs 27 and 28 are nothing more than speculation, and to the extent that Plaintiff has attempted to state a claim for copyright infringement concerning works other than the ten listed in Exhibit A of the Complaint, he has failed to do so.")

proscribed from doing.  *See Mid America Title Co. v. Kirk*, 991 F.2d 417, 421–22 (7th Cir. 1993)

(noting that it would be inappropriate to hold a copyright infringement claim to a heightened

pleading standard).  It is true that, if Warren is unable to produce the registration number after

discovery, his claim will not survive summary judgment.  *See Psihoyos v. John Wiley & Sons,*

*Inc.*, No. 11 Civ. 1416 (JSR), 2011 WL 4916299, at *4 (S.D.N.Y Oct. 14, 2011).  But that is no

reason to dismiss these claims at this juncture.  In short, it would be inappropriate for the Court

to require production of the relevant certificates of incorporation at this preliminary stage of the

litigation.  *Accord Palmer Kane LLC v. Scholastic Corp*., No. 12 Civ. 3890, 2013 WL 709276, at

*3 (S.D.N.Y. Feb. 27, 2013) ("The complaint properly alleges that the copyrights have been

registered in stating that the copyrights 'that are the subject of this action have been registered

with the United States Copyright Office.' (para 15).  Contrary to defendants' contentions, the

complaint is not required to attach copies of registration certificates or provide registration

numbers for all of the copyrights at issue in order to survive a motion to dismiss.").

Accordingly, all three Plaintiffs have sufficiently alleged that they own and properly

registered the relevant photographs.

### 4.   The Acts by which the Copyrights Were Infringed

Wiley next argues that Plaintiffs have failed to allege "by what acts during what time the

defendant infringed the copyright."  *Kelly*, F.R.D. at 36.  The Court disagrees.

According to the Warren Complaint, Wiley obtained a license to use Warren's

photograph for a specific purpose, but used the image in other publications and prior to entering

into the February 2007 agreement.  Those allegations give Wiley sufficient notice to defend the

claim.  *Accord Schneider*, 2013 WL 1386968, at *3 (rejecting the defendant's argument that the

plaintiff failed to allege sufficient details concerning by what acts his copyrights were infringed,

9

on the ground that "Plaintiff's allegations, though not brimming with details, are specific enough to meet the requirements of Rule 12(b)(6) and Rule 8." (citing cases)).

Similarly, paragraph 49 of the Young-Wolff Complaint alleges that the seventeen works were infringed upon in at least eight ways:

- Publishing Plaintiff's works without permission;
- Reusing Plaintiff's works in subsequent editions of titles without obtaining a valid license prior to publication;
- Publishing Plaintiff's works prior to obtaining a valid license;
- Exceeding the limitations of licenses by printing more copies of the publications than was authorized;
- Exceeding the limitations of licenses by publishing Plaintiff's works in electronic, ancillary, or derivative publications without permission;
- Exceeding the limitations of licenses by distributing publications outside the authorized distribution area; and/or
- Refusing to provide usage information to Plaintiff relating to photographs owned by Plaintiff.

This paragraph provides sufficient notice to Wiley as to how the copyrights at issue have been infringed, as Wiley "may, in an abundance of caution, assume that it is being accused of violating each license in every way identified." *Pacific Stock, Inc. v. Pearson Educ., Inc.*, No. 11 Civ. 0423, 2012 WL 93182, at *6 (D. Haw. Jan. 11, 2012).  In other words, it is not fatal to Young-Wolff's copyright claim that the Complaint fails to specify how each particular photograph has been infringed.  *See Frerck v. Pearson Educ., Inc.,* No. 11 Civ. 5319, 2012 WL 1280771, at *3 (N.D. Ill. Apr. 16, 2012) (rejecting Pearson's argument that, "in order to state a claim for copyright infringement, Frerck must plead specific details as to each infringing act," as "[t]his requirement would impose a higher burden on copyright claims than is required under the federal rules.  Notice pleading, not fact pleading, is all that is required to survive a motion to dismiss under Rule 12(b)(6)").

Finally, Rubin has alleged that Wiley printed her photograph, without permission and in violation of its license, in (1) books aside from the 6th Edition; (2) more than 100,000 copies  of the 6th Edition; and (3) publications outside the United States.  (¶¶ 48-50).  Again, these allegations sufficiently inform Wiley as to how it has purportedly infringed Rubin's copyright.

### 5.    Conclusion

Accordingly, all three Plaintiffs have sufficiently alleged: (1) which specific works have been infringed (2) that Plaintiffs registered and own the copyright to those work; and (3) in what way the works were infringed.  Their copyright infringement claims, at least as to Wiley, therefore survive Wiley's motion to dismiss.

### C.    The Copyright Claim against Newman and Zerter

Rubin also alleges copyright infringement against Newman and Zerter in their personal capacities.  (Rubin Compl. at ¶¶ 51-52.)  A corporate employee can be held personally liable for copyright infringement under a theory of contributory liability "'if the officer is a moving, active, conscious force behind [the defendant corporation's] infringement.'"  *Mattel, Inc. v. Robarb's, Inc.*, No. 00 Civ. 4866 (RWS), 2001 WL 913894, at *8 (S.D.N.Y. Aug. 14, 2001) (citations omitted) (alteration in original); *see also Softel, Inc. v. Dragon Med. and Scientific Commc'ns*, 118 F.3d 955, 971 (2d Cir. 1997) ("To establish contributory infringement, Softel was required to show that Hodge 'authorized the [infringing] use.'"  (citation omitted) (alterations in original)); *Forties B LLC v. Am. W. Satellite, Inc.*, 725 F. Supp. 2d 428, 436 (S.D.N.Y. 2010) (noting that contributory infringement requires a high "degree of personal involvement"); *Brought to Life Music, Inc. v. MCA Records, Inc.*, No. 02 Civ. 1164 (RWS), 2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003) ("A plaintiff must allege that the defendant knew of, and substantially participated in, the alleged direct infringement, for a claim of contributory

infringement to stand."); 3 Melville B. Nimmer and David Nimmer, *Nimmer On Copyright*,
12.04[A][1] ("An employee who commits an act of infringement will not be personally liable if
that act was required as part of his employment and if, further, he was not permitted to exercise
discretion, judgment, or responsibility in the conduct of his duties.").  An officer can also be held
liable under a theory of vicarious infringement where he "profit[s] from direct infringement
while declining to exercise a right to stop or limit it."  *Arista Records LLC v. Lime Group LLC*,
784 F.  Supp.  2d 398, 434 (S.D.N.Y. 2011) (alteration in original) (quoting *MGM Studios Inc. v.
Grokster*, 545 U.S. 913, 930 (2005)); *see also Softel, Inc.*, 118 F.3d at 971 ("To establish
vicarious liability, Softel was required to show that Hodge had a 'right and ability to supervise
[that] coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted
materials.'"  (alterations in original) (citation omitted)).  Where a complaint lacks "any
description of acts that could lead to the conclusion of direct copyright [] infringement, or
allegations of authorization or participation that would indicate vicarious liability or contributory
infringement," claims sounding in those theories must be dismissed.  *Carell v. Shubert
Organization, Inc.*, 104 F. Supp. 2d 236, 271 (S.D.N.Y. 2000).

According to the Rubin Complaint, "Defendants Zerter and Newman personally
participated in Wiley's infringements and had knowledge, information, and control over such
infringements."  (Rubin Compl. at ¶ 51.)  This conclusory allegation appears to be based upon
Zerter and Newman's role in the so-called "clean-up campaign" allegedly waged to keep Rubin
in the dark about the infringements on her work.  (*Id*. at ¶¶ 38-43.)  These allegations are
insufficient to state a claim for personal liability.  Rubin has failed to state any fact-based
allegations indicating that Zerter or Newman authorized, or played any part at all, in the alleged
infringement itself, as opposed to Wiley's conduct *after* the infringement.  Notably, it was,

according to the Rubin Complaint, an unnamed "Wiley photo editor," rather than Newman or

Zerter, who initially sought a license from Wiley.[3]  Nor does the Rubin Complaint in any way

indicate that Newman and Zerter directly profited from the alleged infringement.[4]  Accordingly,

the copyright infringement claims as to Newman and Zerter are dismissed.  *Accord Carell*, 104

F. Supp. 2d at 271 (dismissing copyright infringement claim against individual defendant where

"[a]bsent from the Complaint is any description of acts that could lead to the conclusion of direct

copyright or trademark infringement, or allegations of authorization or participation that would

indicate vicarious liability or contributory infringement").[5]

> **D.**     **The Infringing Exportation Claims**

Rubin and Young-Wolff separately plead claim for infringing exportation against Wiley,

pursuant to 17 U.S.C. § 602, based upon Wiley's alleged publication of their "photos in

publications exported by Wiley to foreign countries."  (Rubin Compl. at ¶ 84; Young-Wolff

Compl. at ¶ 131.)  Wiley argues that these are impermissible claims, which must be dismissed.

Section 602(a)(2) provides that "[i]mportation into the United States or exportation from

the United States, without the authority of the owner of copyright under this title . . . is an

infringement of the exclusive right to distribute copies or phonorecords under section 106,

---

[3] Nor does the fact that Newman was one of two Wiley editors who countersigned the licensee permit draw one to reasonably draw the inference that Newman had either the right to stop or limit any alleged infringement or that Newman authorized the infringing use.

[4] Indeed, it is not even clear from the face of the Rubin Complaint that Newman is a corporate officer at Wiley.  (*See* Rubin Compl. at ¶¶ 4, 21 (describing Newman as "the Manager of the Photo Department of the Global Education" and "Wiley editor[]")).

[5] Zerter also moves to dismiss the claims against him for failure to adequately plead personal jurisdiction.  Because Rubin has failed to state a claim against Zerter, the Court need not reach the question of personal jurisdiction.  It does appear, however, that this Court's jurisdiction over Zerter is lacking.  *See Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 490 (S.D.N.Y. 2011) (courts can dismiss claims at the pleading stage where the plaintiff has failed to sufficiently allege personal jurisdiction in her complaint).

actionable under sections 501 and 506."   In other words, the plain language of the statute makes

clear that an exportation of a copyrighted work without the permission of the copyright owner is

merely a type of copyright infringement, rather than a separate cause of action.   Thus, Wiley is

correct that the unauthorized import or export of copies under § 602 are simply additional

examples of infringement under § 106.   Accordingly, to the extent that Rubin and Young-Wolff

purport to state separate claims for fraudulent exportation, those claims are dismissed.   Rubin

and Young-Wolff shall be permitted to pursue their claim of unauthorized exportation, however,

as part of their claims for copyright infringement.[6]

### E.   The Fraud Claims

All three actions allege that Wiley committed fraud, while the Rubin and Young-Wolff

claims also allege fraudulent concealment.   Rubin also alleges fraud and fraudulent concealment

claims against Zerter and Newman.   All of Plaintiffs' fraud and fraudulent concealment claims

fail under both Rules 9(b) and 12(b)(6).

### 1.   Rule 9(b)

In order to comply with Rule 9(b), a complaint alleging fraud "must: (1) specify the

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent."

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular

Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)); *see also DiVittorio*, 822 F.2d at 1247 (explaining that

"fraud allegations ought to specify the time, place, speaker, and content of the alleged

---

[6] This is important, if at all, because it likely means that Rubin and Young-Wolff can pursue an
award of statutory damages only once for each photograph at issue.  *See WB Music Corp. v. RTV
Commc'ns Grp., Inc.*, 445 F.3d 538, 540 (2d Cir. 2006) (describing the "general principle" that
"the total number of awards of statutory damages that a plaintiff may recover in any given action
depends on the number of works that are infringed and the number of individually liable
infringers, regardless of the number of infringements of those works" (citations omitted)).

misrepresentations"); *Jurgensen v. Felix Storch, Inc.*, No. 12 Civ. 1201 (KBF), 2012 WL 2354247, at *7 (S.D.N.Y  June 14, 2012) (failure to adequately plead under Rule 9(b) where "[t]here is simply nothing alleged about the where, when, and why of [the defendant's] *knowingly* and *intentionally* misstating" to the plaintiff).  Moreover, like a claim for fraud, a "claim of fraudulent concealment must be [pleaded] with particularity, in accordance with the heightened pleading standards of Fed. R. Civ. P. 9(b)."  *Hinds County, Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 520 (S.D.N.Y. 2009) (citation omitted).  Where the claim "is premised on concealment so that the plaintiff cannot specify the time and place because no affirmative act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud."  *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) (internal quotation marks and citation omitted).

In connection with his fraud claim, Young-Wolff alleges:

> Upon information and belief, Defendant intentionally and willfully and knowingly misrepresented material facts to Plaintiff's licensing agents, including, but not limited to, falsely representing that publications had not already occurred, the Wiley intended uses of Plaintiff's photographs would be limited to requested print run numbers and would not include any foreign editions or sales.

> Upon information and belief, Defendant intentionally and willfully and knowingly misrepresented material facts to Plaintiff licensing agents, including, but not limited to, misrepresenting the past publications and future publication plans for Plaintiff's photographs.

(Young-Wolff Compl. at ¶¶ 102.)  Nowhere in these paragraphs, nor anywhere else in his Complaint, does Young-Wolff specifically identify the "time, place, speaker, and content" of even one fraudulent statement, nor does he allege to whom these fraudulent statements were

15

made.  Young-Wolff's claim for fraudulent concealment also lacks the requisite specificity.

Rather than specifying the particular omissions made by Wiley and the persons responsible for

them, the Young-Wolff Complaint simply alleges that "Defendant knowingly, willfully, and

intentionally . . . fraudulently concealed crucial facts from Plaintiff's agent."  (*Id*. at ¶ 116.)  This

falls short of the level of pleading required by Rule 9(b).  *Accord Schneider*, 2013 WL 1386968,

at *4 (dismissing claims for fraud and fraudulent concealment pleaded with a comparable level

of specificity).

Warren's fraud claim also fails under Rule 9(b).  Warren's claim for fraud is premised

upon his allegation that Defendant made "various misrepresentations" to Warren in order to

"fraudulently obtain access" to Warren's photo on terms beneficial to Wiley.  (Warren Compl. at

¶ 44.)  Warren provides only the name of the employee who made one of these

misrepresentations.  (*Compare id.* at ¶ 38 (alleging that Adrian Morgan misrepresented material

facts in order to convince Warran to provide Wiley with a license) *with id*. at ¶¶ 39-43

(allegations that "Defendant" committed fraudulent acts)).  Thus, the majority of Warren's fraud

allegations clearly do not meet the heightened pleading standards of 9(b).  Indeed, paragraph 38

also arguably fails to adequately allege the content of Morgan's statement to Warren, as well as

the place in which it was made.  *Id*.

Moreover, most of the factual allegations supporting Warren's fraud claim – including

his allegation about Morgan – are pleaded "upon information and belief."  (*See* Warren Compl.

at ¶ 38 ("Upon information and belief, Defendant, by and through its agent Adrian Morgan,

intentionally and willfully and knowingly misrepresented material facts to Plaintiff in seeking his

permission to use an image and in negotiating the terms of the license."); *see also id*. at ¶¶ 39-

47.)[7]  In order to meet the heightened pleading standard set forth in Rule 9(b), a plaintiff may not

plead "on information and belief," except where the facts alleged are "peculiarly within the

opposing party's knowledge."  *Arthur Properties, S.A. v. ABA Gallery, Inc.*, No. 11 Civ. 4409

(LAP), 2012 WL 2886685, at *2 (S.D.N.Y. July 16, 2012) (citing *Stern v. Leucadia Nat'l Corp.,*

844 F.2d 997, 1003 (2d Cir. 1988)).  And even then, "the plaintiff must allege facts upon which

the belief is founded, including specific facts supporting a strong inference of *scienter.*"  *Id.*

(citing *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).  What Morgan said to

Warren cannot possibly be "peculiarly within the opposing party's knowledge."  *Eaves v.*

*Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 249 (S.D.N.Y. 2011) ("Plaintiffs allege that

Designs made misrepresentations *to Plaintiffs*, and, as such, the date, place, and contents of the

statements are not facts peculiarly within Designs' knowledge.")  Accordingly, Warren's claim

fails to meet the pleading standard set forth in Rule 9(b).

The Rubin Complaint also lacks the specificity required by Rule 9(b).  The Rubin

Complaint first alleges that a photo editor contacted Rubin prior to March 3, 2000 and knowingly

misinformed Rubin as to the number of copies that Wiley was to publish, but fails to specify who

made the misrepresentation.  (Rubin Compl. at ¶¶ 14-16.)  Similarly, Rubin's allegations that

"Wiley, Newman, and Zerter" made misrepresentations concerning (1) Wiley's intention to use

Rubin's photograph in more than 100,000 copies of the Sixth Edition, (2) Wiley's intention to

include the work in foreign editions and sales, and (3) the number of copies of the Sixth Edition

actual printed, all lack the specificity required by Rule 9(b).  (*Id*. at ¶¶ 58-59; *see also* ¶ 78

(alleging, as part of her claim for fraudulent concealment, that "Defendants Newman and Zerter

---

[7] As is indicated by the portions of the Young-Wolff Complaint cited above, many of the
allegations supporting Young-Wolff's fraud claim are also made "upon information and belief."
This is true for Rubin's fraud claim as well.

withheld and misrepresented crucial facts . . . ")  Indeed, Rule 9(b) cannot be satisfied by allegations that "vaguely attribute[] the alleged fraudulent statements to 'defendants,'" without specifying which defendant in particular made the complained of acts or omissions.  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citations omitted); *see also Fisher v. APP Pharmaceuticals*, *LLC*, 783 F. Supp. 2d 424, 433 (S.D.N.Y. 2011).

### 2.      Rule 12(b)(6)

Additionally, Plaintiffs have failed to state claims for fraud or fraudulent concealment under Rule 12(b)(6).  To state a claim for fraud under New York law, a plaintiff must allege: "(1) a false representation (2) of a material fact with (3) intent to defraud and (4) reasonable reliance on the representation (5) causing damage to the plaintiff."  *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 250 (S.D.N.Y. 2009).  "A fraudulent concealment claim shares these same elements with the additional requirement that a plaintiff must show that the defendant had a duty to disclose the material information."  *Woods v. Maytag*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) (citation omitted).

### a.      Damages

Plaintiffs have all failed to allege the requisite damages to support their claims for fraud and fraudulent concealment.  *See Semerdjian v. McDougal Littell*, No. 07 Civ. 7496 (LMM), 2008 WL 110942, at *2 (S.D.N.Y. Jan. 2, 2008) ("A plaintiff must have suffered damages in order to have a recognizable fraud claim.").  As to their claims for fraudulent concealment, Rubin and Young-Wolff simply allege that "Plaintiff suffered unique and distinct pecuniary damages as a result of Defendant's fraud and concealment of information."  (Young-Wolff Compl. at ¶ 120; *see also* Rubin Compl. at ¶ 80 ("Plaintiff suffered unique and distinct pecuniary damages as a result of Defendants' fraud and concealment of information.")).  These bare bones

assertions fail to satisfy the basic pleading requirements of Rule 12(b)(6). *Accord IBM v. Dale*, No. 11 Civ. 951 (VB), 2011 WL 4012399, at *2 ("[A]n allegation that defendant 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal*." (citing *Kopperl v. Bain*, No. 09 Civ. 1754 (CSH), 2010 WL 3490980, at *3-4 (D. Conn. Aug. 30, 2010)).

Plaintiffs have also failed to adequately allege damages resulting from their fraud claims. Under New York law, the alleged losses stemming from a fraud "must be the direct, immediate, and proximate result of the misrepresentation." *Kregos v. Assoc. Press*, 3 F.3d 656, 665 (2d Cir. 1993). Moreover, the "damages must [] be *independent* of other causes." *Id.* (emphasis added). None of the complaints specifically allege a pecuniary loss stemming from fraud independent from the alleged copyright infringement. Rather, Plaintiffs' alleged damages arise solely from Wiley's alleged infringements of their copyrights. (*See* Young-Wolff Compl. at ¶ 110 ("Plaintiff suffered damages as a result of Defendant's fraud, including depriving Plaintiff of the opportunity to obtain the full compensation to which he is entitled without litigation and without risk of not being compensated and without incurring significant expenses to obtain such rightful compensation."); Rubin Compl. at ¶ 68 (same); Warren Compl. at ¶ 52 (same).) In other words, had Wiley not infringed Plaintiffs' photographs, there would be no harm to Plaintiffs. Because Plaintiffs have not identified a distinct harm stemming from the alleged fraudulent conduct, they have failed to state claims for fraud. *Accord Schneider*, 2013 WL 1386968, at *5 n.6; *see also Semerdjian*, 2008 WL 110942, at *3 ("Independent of infringement, Plaintiff has not demonstrated the existence of any pecuniary harm, and similarly, she has not shown how McDougal's alleged misrepresentations would have led to a direct and proximate loss had no infringement occurred. She would be unable to prove either of these allegations at trial."); *Cole*

*v. John Wiley & Sons, Inc.*, No. 11 Civ. 2090 (DF), 2012 WL 3133520, at *17 (S.D.N.Y. Aug. 1, 2012) ("There would have been no unauthorized uses of Plaintiff's works (and, hence, no injury to Plaintiff), had Wiley timely obtained the appropriate licenses and acted in accordance with the terms of each license. Therefore, but for Wiley's infringing conduct, Plaintiff would have suffered no harm from the alleged misrepresentations or concealment.").[8]

### b.    Reasonable Reliance

Moreover, several of Plaintiffs' claims for fraud and fraudulent concealment fail to allege that Plaintiffs actually relied upon the alleged misrepresentations or concealments.  For example, Rubin alleges that Newman concealed certain facts about the print run of her photograph "Burnt Toast" (Rubin Compl. at ¶ 39), but nowhere in her complaint does Rubin allege that she reasonably *relied upon* these misrepresentations.  (*See id*. at ¶¶ 71-82.)  This is yet another infirmity present in Plaintiffs' fraud and fraudulent concealment claims.

### 3.    Conclusion

In sum, Young-Wolff, Warren, and Rubin have failed to properly allege claims for fraud or fraudulent concealment, under either Rule 9(b) Rule 12(b)(6).  The claims for fraud and fraudulent concealment are therefore dismissed.

---

[8] Plaintiffs argue that this Court should disregard the above-cited cases, and should instead hold, as some district courts have done, that a plaintiff  alleging fraud is required to demonstrate only that the pecuniary harm stems from the defendant' fraudulent conduct, but not that the damages alleged in the fraud claim are distinct from those alleged in the copyright claim.  *See, e.g.*, *Wood v. Houghton Mifflin Harcourt Publ'g Co.*, 589 F. Supp. 2d 1230, 1252 (D. Colo. 2008) (disagreeing with *Semerdjian*, on the theory that "if the harm from infringement is the amount the copyright holder would collect for the number of copies the publisher reproduced in excess of the scope of the license, the harm from fraud would be the lost opportunity to the copyright holder from having its rightful licensing fee up front and in the absence of litigation, as well as the significant risk that the infringement might never have been discovered.").  Notably, none of the cases cited by Plaintiffs are from this district, or even this circuit.  This Court agrees with Magistrate Judge Freeman that the cases cited by Plaintiffs are unpersuasive.  *See Cole*, 2012 WL 3133520, at *17.

>>>F.      Breach of Contract

Young-Wolff also brings claims for breaches of various licensing agreements.   The

Court agrees with Wiley that these claims must fail.

"Under New York law, the elements of a breach of contract claim are (1) the existence of

an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by

the defendant; and (4) damages."  *Swan Media Group, Inc. v. Staub*, 841 F. Supp. 2d 804, 807

(S.D.N.Y. 2012) (citation omitted).  A sufficient pleading for breach of contract must, "at a

minimum, allege the terms of the contract, each element of the alleged breach and the resultant

damages in a plain and simple fashion."  *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F. Supp. 276,

286 (S.D.N.Y. 1991) (citation omitted); *accord Eternity Global Master Fund Ltd. v. Morgan*

*Guar. Trust Co. of N. Y.*, 375 F.3d 168, 177 (2d Cir. 2004).

Here, the contracts at issue are the "hundreds of license agreements relating to Plaintiff's

images," of which "Plaintiff is an intended beneficiary . . . including but not limited to the

agreements referenced in Exhibit 1."  (Young-Wolff Compl. at ¶¶ 124-25.)  The Young-Wolff

Complaint alleges that these contracts "require Wiley to disclose usage information to Plaintiff"

but that "Wiley has refused to disclose" this information.  (*Id*. at ¶¶ 126-27.)  Young-Wolff

further alleges that "Defendant has breached each one of the contracts identified in Exhibit 1 by

publishing the photographs governed by those agreements prior to the state date of the licenses

and/or by exceeding material terms in the licenses, and or [*sic*] by violating the express and

implied terms of each license by refusing to disclose usage information to Plaintiff."  (*Id*. at ¶

128.)  Exhibit 1, entitled "David Young-Wolff Invoices to Wiley," is a spreadsheet that lists over

270 images allegedly owned by Young-Wolff that were requested by Wiley or a Wiley affiliate.

The spreadsheet provides the image number and description of each photograph, as well as the

title of the publication in which each image appeared.[9]   In other words, Young-Wolff purports, by pleading several short paragraphs and attaching a list of Young-Wolff's photographs, to allege breaches of over 270 separate contracts between Wiley and unnamed licensing agents.

These breach of contract claims lack the level of specificity required by Rules 8(a)(2) and 12(b)(6).  Despite the Young-Wolff Complaint's assertion to the contrary, Exhibit 1 does not "identif[y]" any "contracts" at all (*Id.* at ¶ 128.), nor does Exhibit 1 list any of the contract terms. It merely describes an array of photographs in which Wiley expressed interest, and perhaps licensed.  Young-Wolff has not named any of the licensing agents that are parties to these alleged contracts, nor has he identified with any specificity the "material" or "express or implied" terms referenced in his Complaint, nor how any of the contracts' terms were violated in any specific instance.   While Young-Wolff does allege that these licensing agreements "require Wiley to disclose usage information" and that Wiley breached some or all of these contracts by failing to do so, Young-Wolff sets forth no facts substantiating these allegations, such as the dates on which the information was requested, or the dates on which those requests were denied.

In short, Young-Wolff simply cannot successfully plead over 270 breaches of contract with a handful of sweeping, conclusory allegations.  Were the Court to allow such pleading, it would provide an avenue to use the discovery process to conduct baseless fishing expeditions, something the Supreme Court has explicitly directed lower courts to prevent.  *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed

---

[9] Exhibit 1 also lists the "invoice number" and "invoice date" of a percentage of the photographs listed.

with nothing more than conclusions."). Because Young-Wolff's breach of contract claims lack the requisite specificity, they must be dismissed.

**IV.    Conclusion**

For the foregoing reasons, Wiley's motions to dismiss are GRANTED in part and DENIED in part. The copyright infringement claims against Wiley survive, while the copyright exportation, fraud claims, and breach of contract claims are all dismissed. Additionally, Rubin's claims against Zerter and Newman are DISMISSED. Wiley's motions to strike are DENIED.

The Clerk of the Court is directed to terminate the motions at Docket Number 11 in 12 Civ. 5070, Docket Numbers 12 and 15 in 12 Civ. 5071, and Docket Number 10 in 12 Civ. 5230.

SO ORDERED.

Dated: New York, New York
       July 2, 2013

_____
J. PAUL OETKEN
United States District Judge