**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID YOUNG-WOLFF, | Case No. 12-cv-5230 (JPO) |
| *Plaintiff*, | Hon. J. Paul Oetken |
| v. | ECF Case |
| JOHN WILEY & SONS, INC., | Electronically Filed |
| *Defendant*. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
155 East 56th Street
New York, New York 10022
Tel: (646) 704-4900
Fax: (646) 308-1178

Attorneys for Plaintiff
March 27, 2015

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................ii

TABLE OF AUTHORITIES ...........................................................................................iv

OVERVIEW ................................................................................................................... 1

SUMMARY OF UNDISPUTED FACTS ........................................................................ 3

APPLICABLE STANDARD FOR SUMMARY JUDGMENT...................................... 8

ARGUMENT ................................................................................................................... 8

I.      LEGAL  STANDARD  FOR  DEMONSTRATING  A  CLAIM  FOR
        COPYRIGHT INFRINGEMENT............................................................................ 8

II.     PLAINTIFF OWNS TIMELY REGISTERED COPYRIGHTS IN ALL
        PHOTOS. ................................................................................................................ 9

III.    WILEY  INFRINGED  PLAINTIFF'S  COPYRIGHTS  BY  VIOLATING
        LICENSE  RESTRICTIONS  AND  MAKING  UNLICENSED  USE  OF
        THE PHOTOS ...................................................................................................... 10

        A.  Wiley's Violations. ....................................................................................... 10

        B.  Wiley's "Retroactive Licenses" From PhotoEdit Are Invalid And
            Cannot Provide A Defense Here................................................................... 13

        C.  Policy Concerns Demand The Court Invalidate Wiley's "License
            Extensions." ................................................................................................... 17

        D.  Wiley Must Be Estopped From Arguing Its "Retroactive Licenses"
            From A Licensing Agent Can Extinguish Accrued Copyright Claims........ 19

IV.     WILEY'S REMAINING DEFENSES ARE EQUALLY MERITLESS. ......... 20

        A.  Plaintiff Has Standing To Pursue These Infringement Claims Against
            Wiley.............................................................................................................. 20

        B.  Wiley's Statute Of Limitations Defense Is Meritless. ................................ 21

        C.  Wiley Has No Defense Under Section 201(c) Of The Copyright Act.......... 22

        D.  Wiley's "Innocent Intent" Defense Is Frivolous......................................... 24

V.      WILEY'S  INFRINGEMENTS  WERE  WILLFUL  AND  PART  OF  A
        WIDER PATTERN OF DOCUMENTED COPYRIGHT ABUSES. ............... 25

A.  Standard For Establishing Willfulness......................................................................... 25

B.  Wiley Had Actual Knowledge Of The Limited Usage Rights Allowed
    Under Its Licenses.......................................................................................................... 25

C.  Wiley Has A Well-Documented Pattern Of Massive Copyright
    Abuses. ........................................................................................................................... 26

D.  Wiley's Efforts To Conceal Copyright Violations From Copyright
    Owners Is Powerful Evidence Of Willfulness. ........................................................... 27

CONCLUSION.................................................................................................................... 28

# TABLE OF AUTHORITIES

CASES

*Alexander & Alexander v. These Ceratain Underwriters at Lloyd's London*, 136 F.3d 82 (2d Cir. 1998) .................................................. 22

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................... 14

*Bean v. John Wiley & Sons, Inc.*, No. 12-cv-8001, 2012 WL 1078662 (D. Ariz. March 30, 2012) ......................................................... 12, 32

*Beasley v. John Wiley & Sons, Inc.*, No. 12-cv-8715, 2014 WL 3600519 (N.D. Ill. July 21, 2014) ................................................................ 30

*Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934 (7th Cir. 1993) ............................................................................................................. 22

*Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83 (2d Cir. 2002) .................................................................................................. 14

*Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402 (9th Cir. 1995) .............................. 27

*Cassway v. Chelsea Historic Properties I*, No. 92–4124, 1993 WL 64633 (E.D. Penn. Mar. 4, 1993) ..................................................................... 21

*Celotex v. Catrett*, 477 U.S. 317 (1986) ...................................................... 14

*City Music v. Kisner*, 23 F.3d 400, 1994 WL 159769 (4th Cir. 1994) ............................................................................................................. 22

*Corbello v. DeVito*, 832 F.Supp. 2d 1231 (D. Nev. 2011) .......................................... 23

*Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) .................................................... 13, 21, 23

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27 (2d Cir. 1982) .................................................................................................. 21

*Feist Publ'g, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ................................... 15

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110 (2d Cir. 1986) .................................................................................................. 31, 33

*Frerck v. John Wiley & Sons, Inc.*, No. 11-cv-2727, 2014 WL 3512991 (N.D. Ill. July 14, 2014) ................................................................ 28

*Gilliam v. Am. Broad. Cos.*, 538 F.2d 14 (2d Cir. 1976) ........................................... 15

*Hulex Music v. C.F. Maint. & Prop. Mgmt., Inc.*, 115 F.R.D. 303 (D. Neb. 1987) ......................................................................................... 22

iv

*Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375 (7th Cir. 1988) .................................... 34

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) .................................... 15

*John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262 (S.D.N.Y. 2014) .................................... 8, 22, 26

*Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F. Supp. 730 (S.D.N.Y. 1981) .................................... 32

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995) .................................... 31

*Manno v. Tennessee Prod. Ctr., Inc.*, 657 F. Supp. 2d 425 (S.D.N.Y. 2009) .................................... 32

*Marvel Entm't, Inc. v. Kellytoy (USA), Inc.*, 769 F. Supp. 2d 520 (S.D.N.Y. 2011) .................................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986) .................................... 14

*Minden Pictures v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d 1117 (N.D. Cal. 2014) .................................... *passim*

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. 12-cv-4601, 2014 WL 1724478 (N.D. Cal. Apr. 29, 2014) .................................... 26

*N.A.S. Import Corp. v. Chenson Enter., Inc.*, 968 F.2d 250 (2d Cir. 1992)) .................................... 31, 33

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .................................... 26

*Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990) .................................... 30, 34

*Petrella v. Metro–Goldwyn–Mayer, Inc.*, ___ U.S. ___, 134 S. Ct. 1962 (2014) .................................... 27, 28

*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014) .................................... 11, 28

*Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (JPO), 2012 WL 5506121 (S.D.N.Y. Nov. 7, 2012) .................................... *passim*

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) .................................... 15

*Tasini v. New York Times Co., Inc.*, 206 F.3d 161 (2d Cir. 2000) .................................... 15

*Video Views v. Studio 21*, 925 F.2d 1010 (7th Cir. 1991) .................................... 34

*Weinstein Co. v. Smokewood Entmt. Group, LLC*, 664 F.Supp. 2d 332 (S.D.N.Y.2009) .................................... 21

*Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) ......................................................... 14

*Wood v. Houghton Mifflin Harcourt Publ'g Co.*, 589 F. Supp. 2d
    1230 (D. Colo. 2008). ........................................................................................ 31

**STATUTES**

17 U.S.C. § 101 ............................................................................................... 21, 29

17 U.S.C. § 106 ..................................................................................................... 15

17 U.S.C. § 410(c) ............................................................................................... 16

17 U.S.C. § 501 ..................................................................................................... 15

17 U.S.C. § 501(b) ........................................................................................... 20, 27

17 U.S.C. § 504(c) ............................................................................................... 32

17 U.S.C. § 507(b) ............................................................................................... 27

17 U.S.C. 201(c) ................................................................................................... 29

**RULES**

Fed. R. Civ. P. 56(a) ............................................................................................ 14

Plaintiff David Young-Wolff ("Young-Wolff" or "Plaintiff"), by and through undersigned counsel, hereby submits this memorandum of law in support of his Motion for Partial Summary Judgment against Defendant John Wiley & Sons, Inc. ("Wiley" or "Defendant"). Plaintiff seeks summary judgment on the following issues: (i) that Plaintiff's copyright registrations are valid and entitle Plaintiff, if he chooses, to elect statutory damages at trial on all claims; (ii) that Wiley infringed Plaintiff's copyrights as set forth herein and that these infringements were willful; and (iii) that all of Wiley's defenses are meritless.

## OVERVIEW

Plaintiff is a professional photographer who makes his living taking and licensing photographs. (DYW Decl. ¶ 3.) Plaintiff licenses his photos primarily through licensing agencies, including PhotoEdit, Inc. ("PhotoEdit"). (*Id.* ¶ 16.) Plaintiff created and is the sole author of all photographic works at issue on this Motion and has personally registered his copyrights in the at-issue photos with the U.S. Copyright Office. (*Id.* ¶ 4.)

Defendant Wiley is one of the nation's oldest and largest publishing companies, and it specializes in producing educational textbooks and related products. Wiley published numerous photos created by Plaintiff in its textbooks and related products. (*See* Compl. Ex. 1.) Wiley obtained copies of Plaintiff's images at issue here from Plaintiff's licensing agent PhotoEdit. All licenses granted to Wiley by PhotoEdit were "rights managed" (as opposed to "royalty free"), meaning that the licenses allowed only limited uses of Plaintiff's photos in specific books and did not permit any additional use of the photos beyond the limited licenses terms without Wiley purchasing additional licenses prior to making additional uses of the photos. (DYW Decl. ¶ 15.) In fact, each license issued to Wiley by PhotoEdit expressly stated that the rights being granted were "one-time" use only and that "[a]ll other rights are reserved." (McCulloch Exs. 3-23.)

Each license also expressly stated that "[n]o rights granted until usage fees are paid in full." (*Id.*)

In addition to these overarching provisions – which are the very foundation of "rights managed" licensing – each license also specified the limited rights being granted to Wiley for the specific title identified in the license. Despite the express restrictions stated in its licenses, Wiley routinely exceeded the scope of its permission and repeatedly republished Plaintiff's photos without purchasing the necessary additional rights prior to doing so. As set forth in the chart attached as Exhibit 1 to the McCulloch Declaration, Plaintiff brings this motion related to 13 of the photos at issue in this action which are covered by nine separate copyright registrations. (McCulloch Decl. Ex. 1; DYW Decl. ¶¶ 5-13.) The record is unequivocal that Wiley committed over 20 separate infringements of Plaintiff's copyrights. (*See* McCulloch Decl. Ex. 2.) Wiley's infringement in this case – just as in the litany of other copyright infringement actions against Wiley around the country and in this District – include various types of license violations, including exceeding the print run, geographic, and language restrictions of its licenses, as well as Wiley's making additional unlicensed uses of certain photos. (*Id.*)

As in many other cases as well, Wiley has attempted to "retroactively cure" (*i.e.*, settle) these claims with Plaintiff's licensing agent, PhotoEdit, despite knowing that PhotoEdit was not the owner of the copyrights that Wiley infringed. Wiley is well aware that licensing agents are not permitted to pursue or settle accrued claims for copyright infringement because it has prevailed on that exact issue in at least two separate federal copyright actions brought against it by licensing agents on behalf of their contributing photographers. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d 1117, 1125 (N.D. Cal. 2014); *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262 (S.D.N.Y. 2014). Despite successfully arguing in both *Minden Pictures* and *DRK Photo* that licensing agents lack standing to pursue copyright claims for their

contributing photographers (*even where there is an express written assignment of copyright*), Wiley contends here that its supposed "licenses" (*i.e.*, settlement agreements) with PhotoEdit are valid despite the being purchased after Wiley already had violated the terms of its original licenses, and in many cases being purchased *several years* (in some cases 6+ years) after Wiley's original license violations.  (*See* McCulloch Decl. Ex. 2, Rows 2, 7, 9, 13.)  There can be no doubt that Wiley procured these "licenses" for the specific intent of extinguishing the copyright claims of the photographers who owned copyrights in the photos (rather than to obtain prospective usage rights) because these "license extensions" often pertained to books that were already out of print and Wiley already had published subsequent editions of the same book.  (*Id.*)

Because PhotoEdit was not the owner of any copyrights in Plaintiff's photos and was not even an exclusive licensor of Plaintiff's works, the law in this Circuit requires that, both under the specific statutory provisions of the Copyright Act and to fulfill its underlying goals, these "retroactive licenses" or "license extensions" are invalid and thus cannot provide a defense here.

## SUMMARY OF UNDISPUTED FACTS

Plaintiff's Local Rule 56.1 Statement of Proposed Undisputed Facts identifies in detail the specific photos and copyrights at issue on this Motion.  (Pl. 56.1 Stmt. ¶¶ 9-30; *see also* DYW Decl. Ex. 1; McCulloch Decl. Ex. 1.)  Plaintiff's Local Rule 56.1 Statement also details the specific license violations and other infringements of each of Plaintiff's copyrights, broken down by title.  (Pl. 56.1 Stmt. ¶¶ 32-81; *see also* McCulloch Decl. Ex. 2.)  Given the number of photos and infringements at issue on this Motion, it is impossible to address each of the circumstances of Wiley's violations here.  Plaintiff thus incorporates by reference the factual statement made therein, and will recount here only examples of Wiley's infringements.

In January 2007, Wiley published two of Plaintiff's copyrighted photos identified as

3

"FAM581DYW041-001" (covered by registration VAu 677-325) and "MEN751DYW066-001" (covered by registration VAu 671-928) in a textbook entitled *Visualizing Psychology*, First Edition ("1e"). (*See* McCulloch Decl. Ex. 2, Row 1.) At the time that Wiley published Plaintiff's photos in this book it did not have a license to do so. Wiley was able to include Plaintiff's photos in this book only because it *previously* had acquired copies of the photos under a license from PhotoEdit related to a *different book series* (specifically, Wiley's *Psychology in Action* series). (*Id.* Ex. 1.) In fact, unlike the so-called "late permissioning" claims at issue in *Psihoyos I*, Wiley had not even requested a license prior to publishing this book and would not request a license for almost a full year. Finally, eleven months later, in December 2007, Wiley purchased a license from PhotoEdit. (*Id.* Ex. 3.) Although the book already was in circulation for a year and thus Wiley already was aware of its likely sales for this title and its intended distribution markets, Wiley requested a license to print only 40,000 copies of this title and to distribute the book in North America only. (*Id.*) Despite requesting a license with these limits, Wiley printed over 60,000 copies of this title and distributed the book around the world, including in Australia and China. (*Id.*)

The record is indisputable that Wiley originally published Plaintiff's photos without a license and then, nearly a year later, it purchased a license that it must have known (or at least should have known) was inadequate and which it ultimately violated in numerous ways.

Then, over *five years later* – and only after Wiley had been sued in *Psihoyos I* for violating licenses related to these same books, Wiley purchased an "extension of rights" license from PhotoEdit for $150. (McCulloch Decl. Ex. 4.) Wiley did not inform PhotoEdit that the book in question was already out of circulation or that Wiley had been sued for copyright infringement related to identical license violations for other photos in this same book. (*Id.*

Ex. 26.)  Instead, Wiley just issued its standard license request as if this was a typical transaction.

Wiley committed identical infringements in numerous other books at issue on this Motion, including (i) publishing photos prior to purchasing a license, (ii) violating the restrictions of the licenses it ultimately purchased, and then (iii) trying to "cure" these violations by purchasing invalid "license extensions" many years later.  For instance, Wiley committed this same pattern of blatant copyright abuse in *Visualizing Psychology*, 2e; *Psychology in Action*, 8e; and *Psychology in Action*, 9e.  (*See* McCulloch Decl. Ex. 2, Rows 3-9.)  The record is conclusive that Wiley is liable for numerous infringements of the copyrights at issue on this Motion.

The record also is conclusive that Wiley's infringements are willful.  Although Wiley already has been held liable for willful infringements involving identical conduct and many of these same books, Wiley still contends that it acted with "innocent intent" and that its misconduct was due to administrative errors or bureaucratic ineptitude.  This Court, however, already has rejected these argument, *see Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (JPO), 2012 WL 5506121 (S.D.N.Y. Nov. 7, 2012), and the Second Circuit already has confirmed that ruling, *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014).   As these rulings confirm, Wiley's infringements were not due to innocent mistakes or errors but rather resulted from Wiley's deeply flawed business practices that, predictably, led to such widespread abuses that Wiley has been sued for literally thousands of infringements.

Although Wiley certainly will try to downplay the significance of these lawsuits and blame them on unscrupulous plaintiffs' counsel attempting to trump up claims where none exist, the reality is that the evidence in these cases demonstrates that Wiley has admitted to massive license violations involving hundreds of books and countless photos.[1]  Wiley also repeatedly has

---

[1] *See, e.g.*, *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416, Dkt. No. 39-1, Ex 4 (S.D.N.Y. Sept. 1, 2011) (Wiley's responses to Requests for Admission) (McCulloch Decl. Ex. 63); *Bean v. John Wiley & Sons, Inc.*, No. 12-

been found liable for willful copyright infringement.[2]  Wiley also has settled numerous copyright lawsuits (and reached pre-litigation settlements with easily hundreds of other parties) related to its practice of violating license terms.[3]  Each of these lawsuits and settlements involved infringements that are identical to those alleged here.

As this Court concluded in *Psihoyos I*, this troubling pattern of copyright violations arose from Wiley's inexplicable failure to adopt license compliance protocols and other flawed licensing practices that led to widespread abuses.  2012 WL 5506121 at *2.  Based on the significant evidence presented at the *Psihoyos I* trial, this Court rejected Wiley's claim that it infringements were merely "innocent mistakes" or the result of "bureaucratic ineptitude" and instead concluded that Wiley acted with "willful blindness and/or reckless disregard." *Id.*

Again, although Wiley surely will try to distinguish the findings and rulings in *Psihoyos I*, the fact is that all of Plaintiff's claims here relate to books licensed by the same publishing division during the same period of time and certain claims even involve the same books at issue in *Psihoyos I*.  Accordingly, there is no *genuine* dispute that the infringements of Plaintiff's copyrights here resulted from the same flawed licensing practices.

Perhaps the only distinguishing feature of Plaintiff's claims here is that Wiley at least *arguably* attempted to notify Mr. Psihoyos of at least *certain* license violations (though it ultimately concealed numerous other infringements in order to try to settle those claims more cheaply with Psihoyos' agent, Getty Images).  In fact, Wiley's counsel put the issue of Wiley's

---

cv-8001, Dkt. No. 100 (D. Ariz. Jan. 1, 2012) (exhibits to motion for summary judgment identifying Wiley's admissions to infringements) .

[2] *See, e.g.*, *Psihoyos*, 2012 WL 5506121, at *2; *Bean v. John Wiley & Sons, Inc.*, No. 12-cv-8001, 2012 WL 1078662, at *3 (D. Ariz. March 30, 2012) (granting summary judgment against Wiley for 108 counts of copyright infringement).

[3] *See, e.g.*, *John Wiley & Sons, Inc. v. Hiser*, No. 09-cv-4307, Dkt. No. 40 (S.D.N.Y. Dec. 1, 2010) (Stipulation of Dismissal due to settlement) (McCulloch Decl. Ex. 47); *Rubin v. John Wiley & Sons, Inc.*, No. 12-cv-5071, Dkt. No. 51 (S.D.N.Y. July 18, 2013) (same) (McCulloch Decl. Ex. 48).

"cooperation" and supposedly "voluntary" disclosures squarely in front of the jury as a primary

defense to willfulness:

> [Plaintiff's counsel] talked about how Wiley is involved in lots of other lawsuits,
> that Wiley has this pattern and practice of cover-up, a pattern and practice of
> infringement, that there is a surreptitious effort by Wiley to engage in nefarious
> conduct.  That's not what happened in this case. . . .  [T]he evidence is going to
> show that Wiley told Mr. Psihoyos about this problem.  It was Wiley who made
> the contact to Mr. Psihoyos. . . .  Bottom line is, Wiley has learned, Wiley has
> reformed, and Wiley is not engaged in willful infringement for which there needs
> to be huge money.

*Psihoyos I*, Trial Trans. at 52:17—53:1; 54:18-20.

Here, however, Wiley refused to provide *any information* to Plaintiff's counsel prior to

suit and instead procured (invalid) "license extensions" from Plaintiff's licensing agents in a

transparent attempt to retroactively cure its infringements of Plaintiff's copyrights.  Regardless

of what Wiley thought it was accomplishing, the law in this Circuit is clear that such "retroactive

license extensions" are nothing more than settlements of accrued claims and thus are *per se*

invalid unless they are approved by the copyright owner because granting a "retroactive license"

to cure or extinguish an infringement is one of the exclusive rights granted to copyright owners

under the Copyright Act.  *See Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007).  Because Plaintiff's

licensing agent never acquired any interest in Plaintiff's copyrights and did not even license his

works on an exclusive basis (*see* DYW Decl. ¶¶ 19-31), Wiley cannot rely on any "retroactive

licenses" or "license extensions" as a defense to infringement here.

As in *Psihoyos I*, the evidence here conclusively demonstrates that Wiley violated

numerous licenses and otherwise used Plaintiff's photos without necessary permission.  The

evidence also shows that Wiley acted willfully or with reckless disregard for Plaintiff's

copyrights.  Nevertheless, in the face of this evidence and the litany of similar infringement suits

against it, Wiley continues to maintain that its infringements of Plaintiff's copyrights are merely

isolated incidents that should be excused due to its claimed "innocent intent."  As one the

world's most experienced and sophisticated publishers, Wiley's defense is not credible.  Wiley is

a habitual infringer that must be punished to the fullest extent allowed under the law.

### APPLICABLE STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving

party "bears the initial responsibility for informing the district court that there is an absence of

evidence to support the nonmoving party's case."  *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).

The non-moving party then "must 'set forth specific facts showing that there is a genuine issue

for trial' and cannot merely rest on the "allegations of the pleadings."  *Marvel Entm't, Inc. v.*

*Kellytoy (USA), Inc.*, 769 F. Supp. 2d 520, 52324 (S.D.N.Y. 2011) (quoting *Williams v. Smith*,

781 F.2d 319, 323 (2d Cir. 1986)).  The non-moving party "may not rely simply on conclusory

statements or on contentions that the affidavits supporting the motion are not credible."  *Burt*

*Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002).  Where the Court

determines that "a rational trier of fact could not find for the non-moving party based on the

record as a whole, [then] there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v.*

*Zenith Radio*, 475 U.S. 574, 587 (1986).  If Defendant's evidence "is merely colorable, or is not

significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249-50 (1986).

### ARGUMENT

### I.   LEGAL STANDARD FOR DEMONSTRATING A CLAIM FOR COPYRIGHT INFRINGEMENT.

Section 106 of the Copyright Act provides copyright owners certain "exclusive rights,"

including "to reproduce the copyrighted work in copies" and "to distribute copies . . . of the

copyrighted work to the public by sale [.]" 17 U.S.C. § 106. "'Anyone who violates any of the exclusive rights of the copyright owner,' that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work in one of the five ways set forth in the statute, 'is an infringer of the copyright.'" *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432 (1984) (quoting 17 U.S.C. § 501). Thus, to prevail on his infringement claims, Plaintiff must establish (1) ownership of a valid copyright and (2) that Defendant violated any of his exclusive rights in his copyrighted works. *Feist Publ'g, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). A party can show an infringement by demonstrating copying or distribution without permission or that the defendant exceeded the scope of its license to use the copyrighted work. *See Jacobsen v. Katzer*, 535 F.3d 1373, 1379-80 (Fed. Cir. 2008); *Gilliam v. Am. Broad. Cos.*, 538 F.2d 14, 20 (2d Cir. 1976). Where the validity or applicability of a license is in dispute, as it is here, "the burden is on the alleged infringer to prove the existence of the license." *Tasini v. New York Times Co., Inc.*, 206 F.3d 161, 171 (2d Cir. 2000).

## II.   PLAINTIFF OWNS TIMELY REGISTERED COPYRIGHTS IN ALL PHOTOS.

Plaintiff is the creator and sole owner of the works at issue here and he personally registered his copyrights in all photographs that are in issue on this motion. (DYW Decl. ¶ 4.) All of Plaintiff's copyrights at issue have been registered with the U.S. Copyright Office and copies of the relevant certificates of registration were produced to Defendant in discovery. (*See id.* ¶¶ 4-13 & Exs. 1-10.) Because Plaintiff registered his copyrights within five years of creating these photos (and thus necessarily within five years of first publication), these certificates constitute *prima facie* evidence of the validity of Plaintiff's copyrights. *See* 17 U.S.C. § 410(c).

Although this presumption is rebuttable, there is no evidence in the record to support Defendant's "affirmative defenses" challenging the validity of Plaintiffs' copyrights. Specifically, Defendant's First Affirmative Defense alleges that, upon information and belief,

Plaintiff's registrations are "invalid or unenforceable," but Defendant provided no information, support, or basis for this allegation.  (Dkt. No. 41 at 17.)  Despite extensive discovery, the record does not support Defendant's baseless challenge.  Accordingly, Plaintiff's sworn declaration and the registration certificates for each photo preclude any *genuine* dispute as to the validity of Plaintiff's copyrights.  (*See* DYW Decl. ¶¶ 4-13.)

Because this Motion pertains to photos registered as unpublished, the effective date of registration *necessarily* precedes Wiley's infringements.  Plaintiff's registrations thus fulfill the requirements of Section 412 of the Copyright Act entitling him to elect statutory damages at trial.

## III.   WILEY INFRINGED PLAINTIFF'S COPYRIGHTS BY VIOLATING LICENSE RESTRICTIONS AND MAKING UNLICENSED USE OF THE PHOTOS

### A.   Wiley's Violations.

Plaintiff's complaint alleged that Wiley committed various types of license violations and unlicensed uses of his photos, including, among other things, (i) printing photos in books without a license; (ii) exceeding the so-called "print run" limitation of its licenses; (iii) distributing books beyond the geographic limits stated in its licenses; (iv) publishing or authorizing foreign translations in direct violation of the language restrictions in its licenses.  Discovery confirmed that Wiley committed each of these infringements.  (*See* McCulloch Decl. Ex. 2.)

As was its custom during this time period (2005-2012), Wiley repeatedly used Plaintiff's photographs without any permission or in excess of whatever usage rights were allowed under its licenses.  Because all of the books at issue in this case were published by the same Wiley division and licensed by the same licensing department as the books at issue in *Psihoyos I*, Wiley cannot seriously deny that these unauthorized uses resulted from Wiley's flawed business practices rather than innocent errors.  For instance, at the *Psihoyos I* trial, Wiley's employees admitted that Wiley made no effort to quarantine the infringing publications, even after

10

becoming aware that hundreds of photos had been used without a license or the books had been printed in quantities that exceeded Wiley's licenses:

> Q: So, a decision was made in your group to continue to sell through the existing inventory of these publications, right?
> A. Inventory, meaning printed books and --
> Q. Books that had already been printed.
> A. Yes.

*Psihoyos I*, Trial Tr. at 703:3-12. Wiley's witnesses also admitted that Wiley failed to issue a directive to stop the inventory department from binding new inventory of books that Wiley knew included unauthorized copies of photos, including Plaintiff's photos in the books at issue on this Motion. *Id.* at 717:14-24. Wiley's witnesses also admitted that Wiley obtained inadequate licenses for *all* of the photos in each infringing book because Wiley made the intentional decision to adopt a policy to limit the permission it requested from licensors at 100,000 units, regardless of whether the previous editions of the same title had sold more units or whether Wiley projected higher sales for the publication. *Id.* at 331:2-7. And perhaps most shockingly, Wiley's witnesses admitted that its inventory department *never had a license compliance program*, and that its inventory department manager operated independent of any license restrictions for over 20 years. *Id.* at 828:2-20.

Given these deeply flawed licensing practices and the lack of any compliance protocols, it is no wonder that Wiley routinely violated the terms of its licenses to use Plaintiff's photos. Specifically, Wiley committed the following license violations:

- Exceeding the print run and geographic limits of Invoice No. 216179 for *Visualizing Psychology*, 1e;
- Exceeding the print run limit of Invoice No. 222325 for Visualizing Psychology, 2e;
- Exceeding the print run and geographic limits of Invoice No. 220364 for Psychology in Action, 9e;
- Violating the prohibition against publishing or authorizing foreign translations of Invoice No. 222463 for Psychology Around Us, 1e;

11

- Violating the prohibition against publishing or authorizing foreign translations of Invoice No. 216344 for Early Childhood Education, 1e;
- Exceeding the print run and geographic limits of Invoice No. 212155 for Lab Manual for Anatomy and Physiology, 2e;
- Exceeding the print run limit of Invoice No. 217615 for Lab Manual for Anatomy and Physiology, 3e;
- Exceeding the print run limit of Invoice No. 223178 for Lab Manual for Anatomy and Physiology, 4e;
- Exceeding the print run limit of Invoice No. 223178 for Lab Manual for Anatomy and Physiology, 4e;
- Exceeding the geographic limit and violating the English-only language restriction of Invoice No. 220424 for Algebra and Trigonometry, 2e;
- Exceeding the print run limit of Invoice No. 213403 for Abnormal Psychology, 10e;
- Violating the English-only language restriction of Invoice No. 220969 for Abnormal Psychology, 11e;
- Violating the English-only language restriction of Invoice No. 225438 for Abnormal Psychology, 12e; and
- Exceeding the print run and geographic limits of Invoice No. 221868 for Visualizing Nutrition, 1e.

(*See* McCulloch Decl. Ex. 2.)

In addition, Wiley also published Plaintiff's photos without a license in at least five separate titles, and in many cases only requested a license many months or even several years later, and only after Wiley already had been sued for infringements in the same titles.  (*Id.*) Although Wiley claimed in *Psihoyos I* that its publishing photos prior to purchasing a license is an accepted practice that was customary in the industry, discovery has revealed that the practice was explicitly prohibited by Wiley's own photo licensing policies.  (*See* McCulloch Decl. Ex. 58.) According to Wiley's own policies, this process was supposed to be supervised by the production editor and the Permissions Manager.  (*Id.* at Ex 59.)  The "Permissions and "Credits" section of Wiley's Photo Illustration Guidelines also specifically require that "All permissions must be cleared in advance of publication."  (*Id.* at Ex 60.)  Those guidelines continue by stating

12

that "The Wiley Photo Department takes permission clearance very seriously" (*id.*), demonstrating Wiley's institutional understanding that "[p]ermissions are often granted once fees are paid." (*Id.* at Ex 61.)

Wiley is liable for each of these infringements of Plaintiff's copyrights.

**B.    Wiley's "Retroactive Licenses" From PhotoEdit Are Invalid And Cannot Provide A Defense Here.**

Grasping at straws, Wiley now claims that its infringements are excused by after-the-fact "license extensions" that it obtained from Plaintiff's agent. Wiley's argument is meritless. Whether to address a print overrun or publishing Plaintiff's photos without a license, Wiley unquestionably purchased these "license extensions" for the express purpose of attempting to cure accrued copyright claims. In fact, Wiley purchased these "extensions" only after it had been sued for infringements in the same titles and after an internal audit (initiated at the behest of Wiley's legal department) revealed the violations.

**1.    Wiley's alleged "license extensions" granted only prospective rights.**

Wiley purchased "license extensions" from PhotoEdit to cure violations of prior licenses or to cure the unlicensed use of Plaintiff's for *Visualizing Psychology*, 1e; *Visualizing Psychology*, 2e; *Psychology in Action*, 8e; *Psychology in Action*, 9e; *Lab Manual for Anatomy and Physiology*, 2e; and *College Algebra*, 1e. (*See* McCulloch Decl. Ex. 2, Rows 2, 4, 7, 9, 13, 17.) As the Court may recall, all of these books but the last two were at issue in the *Psihoyos I* case and Wiley specifically admitted to violating licenses or unauthorized copying for each title (although some claims were eventually dismissed due to lack of registration). (*See* McCulloch Decl. Ex. 63).

Although these alleged "licenses" purport to grant Wiley the right to use Plaintiff's photos for the "life of the edition," Wiley purchased its purported "licenses" in most cases only

after the books already were out of print and the next edition was already in circulation.  (*See* McCulloch Decl. Ex. 2, Row 2, 7, 9, 13.)  Moreover, although these licenses purport to grant Wiley permission throughout the "life of the edition," it bears repeating that they were purchased only *after the books already were out of print* and the next edition was already in circulation. (*Id.*)  As such, these licenses – even if they were valid – granted Wiley only meaningless prospective rights related to books that were out of print because ***none of the licenses issued by PhotoEdit state that they apply retroactively***.  (*See* McCulloch Decl. Ex. 3-23.)  Thus, the express terms of the permission granted to Wiley were still prospective only and did not retroactively sanction prior printings or prior license violations.[4]

### 2.    Any purported "retroactive licenses" from PhotoEdit are invalid.

A retroactive license issued by Plaintiff's licensing agent cannot extinguish Plaintiff's accrued claims.  These purported retroactive licenses are legal nullities.

The Copyright Act provides that only the "legal or beneficial owners of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owners of it."  17 U.S.C. § 501(b).  The Second Circuit enforces Section 501(b) by holding that "[t]he Copyright Act authorizes only two types of claimants to sue for copyright infringement: [i] owners of copyrights, and [ii] persons who have been granted exclusive licenses by owners of copyrights."  *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982).

The Second Circuit conclusively held in *Davis v. Blige* that determining whether a "retroactive license" that purports to authorize a past use that was originally unauthorized involves the same inquiry under the Copyright Act, meaning that such "retroactive licenses" are

---

[4] Wiley cannot claim any "implied license" or "implied consent" because it expressly waived such defenses in order to avoid broader discovery into its dealings with PhotoEdit.  (McCulloch Decl. Ex. 57.)

*per se* invalid unless authorized by the "exclusive" owner of the rights being licensed. 505 F.3d at 103-07. The Second Circuit rejected such retroactive licensing by non-copyright owners for many reasons, including that "the right to sue for infringement" is "one of the most valuable 'sticks' of the 'bundle of rights' of copyright" and thus allowing any party other than the copyright owner to exercise such rights would undermine the goal and explicit provisions of the Copyright Act. *Id.* at 104 (citation omitted).

The holding of *Davis* is dispositive here because Plaintiff owns all copyrights in his photos and never transferred or conveyed any exclusive rights in his photos to PhotoEdit. (DYW Decl. ¶4, 19-31.) Under 17 U.S.C. § 101, a transfer of copyright ownership not only needs to be in writing, but it also must be clear and unambiguous. *See, e.g.*, *Weinstein Co. v. Smokewood Entmt. Group, LLC*, 664 F.Supp. 2d 332, 338 (S.D.N.Y.2009) ("[T]he intention of a copyright owner seeking to transfer an ownership interest must be clear and unequivocal."). "Where an ambiguity exists as to whether the copyright interest itself was transferred, the court should construe such contractual provisions in favor of the author retaining his or her copyright." *Cassway v. Chelsea Historic Properties I*, No. 92–4124, 1993 WL 64633, at *2 (E.D. Penn. Mar. 4, 1993). Far from a clear and unambiguous statement of intent to transfer copyright ownership to PhotoEdit, the contributor agreements contain no language expressly transferring copyright or even suggesting any such intent. (*See* DYW Decl. ¶¶ 4, 19-31.) Wiley can offer no evidence to the contrary.

The fact that Plaintiff authorized PhotoEdit to grant licenses to third parties does not transfer or convey ownership of copyrights.[5] Licensing agents, like PhotoEdit, ahav consistently

---

[5] To the extent there were any ambiguity on whether Plaintiff transferred copyrights to PhotoEdit, courts agree that "the parties' conduct subsequent to the execution of the agency agreement" should be considered in determining whether the photographer "intend[ed] the agency agreements to confer any copyright ownership interest." *Minden Pictures*, 10 F. Supp. 3d at 1125; *accord Alexander & Alexander v. These Ceratain Underwriters at Lloyd's London*,

been found to be neither legal nor beneficial owners of a copyright and thus cannot pursue (or settle by retroactive licensing) infringement claims. *See, e.g.*, *Minden Pictures*, 10 F. Supp. 3d at 1124-31 (licensing agents lacks standing under Copyright Act; *DRK Photo*, 998 F. Supp. 2d at 264-65 (same); *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 937 (7th Cir. 1993) ("A licensing agent is neither the legal nor the beneficial owners of the copyright and has no interest in the copyright."); *Ctr. City Music v. Kisner*, 23 F.3d 400, 1994 WL 159769, at *4 (4th Cir. 1994) (same) (per curiam table decision); *Hulex Music v. C.F. Maint. & Prop. Mgmt., Inc.*, 115 F.R.D. 303, 304 (D. Neb. 1987) (same).

Young-Wolff's agreement with PhotoEdit fits squarely within this case law in that it permitted PhotoEdit to take actions they otherwise would otherwise be the exclusive province of Young-Wolff as the copyright owner (*i.e.*, grant licenses to third parties to exploit and use the images) and provided for payments of periodic royalties for such licenses. At the same time, however, the agreement did not preclude Young-Wolff from using his own photographs and even granting licenses to third parties. The agency agreement thus is merely a standard non-exclusive license that did not transfer or convey any interest in the copyrights to PhotoEdit. *See* Black's Law Dictionary 1003 (9th ed. 2009) (an "exclusive" license is "[a] license that gives the licensee the sole right to perform the licensed act . . . and that prohibits the licensor from performing the licensed act and from granting the right to anyone else."); *Corbello v. DeVito*, 832 F. Supp. 2d 1231, 1244 (D. Nev. 2011) ("[T]he difference between 'exclusive' and

---

136 F.3d 82, 86 (2d Cir. 1998) (holding court "may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract" in construing an ambiguous contract). Here, the subsequent statements and conduct by the parties do not indicate any intention by Young-Wolff to transfer his copyrights to his agency. On the contrary, Plaintiff's counsel expressly advised Wiley – prior to its purchasing certain "license extensions" – that Plaintiff rejected the notion that his agents were authorized to grant retroactive license to cure or extinguish copyright claims. (*See* McCulloch Decl. Exs. 55.) As Wiley itself successfully argued in *Minden Pictures*, such correspondence, "suggest[] that at least the photographer had expressed concerns about the possibility of transferring ownership to [the agency]." *Minden Pictures*, 10 F. Supp. 3d at 1125.

'nonexclusive' licenses concerns the continuing ability of the grantor to use or further license to others the licensed property during the period the license is in effect.").   Thus, where "photographer retained the right to sell his own licenses" the agency does not have an "exclusive" license.  *Minden Pictures*, 10 F. Supp. 3d at 1126.

### C. Policy Concerns Demand The Court Invalidate Wiley's "License Extensions."

The *Davis* Court also identified numerous policy reasons "disfavoring" any retroactive licenses that are intended to extinguish the rights of copyright owners to sue for infringement, including that "such retroactive activity lowers the cost of infringement to infringers, thus making infringement more attractive."   505 F.3d at 106.   Thus, the Court reasoned, if such licenses were sanctioned, "[t]he result is that infringement is encouraged and rewarded."  *Id.*

This is precisely what happened here.  Instead of disclosing its infringements to Plaintiff, Wiley surreptitiously contacted his agent to request "retroactive" licenses for titles already in print and for images which had already been used.  Wiley purchased at least certain of these licenses after being advised the Plaintiff was represented by counsel, disapproved of Wiley's contacting his agents to purchase "clean up" licenses, and requested information from Wiley regarding its uses of his photos.  (McCulloch Decl. Exs. 55 & 56.)  Nevertheless, Wiley went behind Plaintiff's back to purchase these licenses.

Perhaps even more troubling is that Wiley almost certainly used implied threats of blacklisting PhotoEdit to obtain its compliance because, following the *Psihoyos I* case, Wiley's legal department created a "No-Fly List" to identify any photographers and agencies whose photos were ***banned*** from being licensed by Wiley's photo editors.  Shockingly, Wiley's legal team appears to have added any licensors to this "No-Fly List" who were represented by counsel or requested information regarding Wiley's use of their photos.

Given such retaliatory and punitive measures, it is no wonder that many agencies bowed to Wiley's heavy-handed tactics, and Wiley's agreements with PhotoEdit provide the perfect example.  Because PhotoEdit did not own any copyrights in the photos being used by Wiley, it lacked standing to sue Wiley for copyright infringement and thus had little chance of recovering anything other than contractual damages giving it little incentive to stand up to Wiley.  So, instead of risking damaging its business relationship with a valuable client, PhotoEdit granted Wiley the "license extensions" it requested and, just as the Second Circuit warned in *Davis*, even charged Wiley the same license fees (typically $150) for what was effectively a copyright settlement as it would have for a legitimate, prospective license.  (*See, e.g.*, McCulloch Decl 4.) This is remarkable given that the manager of Wiley's photo licensing department purchased the last of these clean-up licenses from PhotoEdit on June 19, 2012 – only weeks before she testified in the *Psihoyos I* trial that Wiley's policy was to disclose information about violations to copyright owners.  (*Id.*)

Thus, in a span of barely two months, Wiley purchased a purported "license" from PhotoEdit for $150/photo for overprinting in *Visualizing Psychology*, 1e whereas a jury in this District imposed statutory damages of $130,000 for *precisely this same conduct* involving the another book *in this exact same series*.[6]   Given the vastly different outcomes, it is evident that, just as the Second Circuit warned, PhotoEdit's conduct, while likely preserving its relationship with Wiley, merely "encouraged and rewarded" a habitual infringer's blatant misconduct.

If the Court has any doubt that it should invalidate these supposed licenses to prevent Wiley from continuing this shameful practice, it should consider that Wiley has attempted this

---

[6] Wiley cannot argue that the jury's damages award was excessive because this Court found the award was "neither erroneous nor excessive" and even noted that "the deterrent effect of a $130,000 damages award hardly seems excessive, and may not even be sufficient to hurt [Wiley's] pocketbook enough for it to take notice." *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (JPO), 2012 WL 5506121, at *4 (S.D.N.Y. Nov. 7, 2012).

same duplicity in numerous other cases.  For instance, it came to light in the *Degginger* case that Wiley waited until it obtained discovery on plaintiff's photos and claims so it could once again purchase "retroactive licenses" from the plaintiff's new licensing agent during the course of the litigation and then moved for summary judgment relying on its new licenses.  (*Id.* Ex. 53.)

This is shocking behavior by any party, but is particularly egregious given that Wiley vehemently argued in *Psihoyos I* that it was "reformed" and was not engaged in any "surreptitious" or "nefarious" efforts to "clean up" license violations.  In reality, however, at nearly the very same time that Wiley was making these arguments before this Court, its employees were working behind the scenes contacting agencies in a mad rush to procure "license extensions" before copyright owners got wind of its illegal activities.

The record is undeniable that Wiley has continued doing everything it possibly can to conceal violations from copyright owners who have the most direct interest in ensuring that their copyrights are respected and, instead, is seeking out illegitimate "licenses" from agencies who have no standing to bring claims related to the underlying copyright violations and thus have no threat of lawsuit or damages to use in negotiations and who have a much greater incentive to settle cheaply so as to not upset their business with Wiley.

### D.    Wiley Must Be Estopped From Arguing Its "Retroactive Licenses" From A Licensing Agent Can Extinguish Accrued Copyright Claims.

As noted already, despite Wiley's rampant efforts to settle claims with agents behind the backs of copyright owners, Wiley has successfully convinced both this Court and the Northern District of California that identically situated licensing agents do not have standing to pursue copyright claims on behalf of their contributing photographers.  *See DRK Photo*, 998 F. Supp. 2d at 278; *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d at 1132.  Wiley's filings in *Minden Pictures* even went so far as to "seek[] to brand Minden with the odious 'Copyright

Troll' label" (which label the district court ultimately rejected as unhelpful "hyperbole" and "disingenuous") and  also argued that the law is so clear that these agents lack authority to bring such claims that Wiley was entitled to recover its attorneys' fees (which the court also rejected). *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. 12-cv-4601, 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014).

Wiley's argument in this case that Plaintiff's licensing agent was permitted to extinguish accrued infringement claims is irreconcilable with its position in both *Minden Pictures* and *DRK Photo*.   Basic principles of judicial integrity and consistency require that Wiley be estopped from taking contradictory positions on the same issue, particularly since Wiley prevailed on that position in this Court less than a year ago.  *See New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001).  This is just another example of Wiley's willingness to adopt whatever legal positions happen to suit its immediate litigation needs regardless of whether it has taken the opposite position in prior litigations.  ***Enough is enough!***  The time has come for the Court to end this charade and hold Wiley accountable for its contradictory legal positions.

## IV.   WILEY'S REMAINING DEFENSES ARE EQUALLY MERITLESS.

### A. Plaintiff Has Standing To Pursue These Infringement Claims Against Wiley.

In addition to challenging the validity of Plaintiff's copyrights, Wiley's Amended Answer also alleged that Plaintiff "lacks standing" because he supposedly "assigned his rights in certain images to third parties such as licensing agents."  (Dkt. No. 41 at 18.)  Again, Wiley did not plead any basis for this allegation and even failed to identify to which agents Plaintiff supposedly "assigned his rights" or which photos Defendant "believes" were subject to such an assignment.  During discovery, Wiley did not proffer any evidence to support this defense.

Under the Copyright Act, the "legal or beneficial owner" of a copyright has standing to bring a claim for infringement.  *See* 17 U.S.C. § 501(b).  Plaintiff's declaration and the

applicable certificates of registration confirm that Plaintiff is the author of all photos at issue and the *only* claimant/owner of the copyrights therein.  (DYW Decl. Exs. 2-10.)  Because Wiley has not presented any evidence to the contrary, there is no genuine dispute that Plaintiff has standing.

### B.      Wiley's Statute Of Limitations Defense Is Meritless.

Because Wiley has asserted the statute of limitations as an affirmative defense, it has the burden of proof on this issue and must demonstrate that Plaintiff was aware of the violations at issue here more than three years prior to suit.  *See Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995).  Although Wiley refuses to withdraw this defense, there is no evidence that supports Wiley's allegation.

The Copyright Act sets forth a three-year statute of limitations for civil infringement claims.  17 U.S.C. § 507(b).  As Wiley well knows, the Second Circuit has explicitly adopted the "discovery rule" in determining when this limitation period begins to run.[7]  *Psihoyos*, 748 F.3d at 124 ("We reject Wiley's suggestion that we apply different accrual rules for ownership and infringement claims, both of which are governed by 17 U.S.C. § 507(b).").  Information regarding Wiley's use of Plaintiff's photos (such as the print run of a book) is not public information and thus Plaintiff could not determine whether Wiley violated a particular license without Wiley's agreeing to disclose such "confidential" information.[8]  As discussed more fully below, Wiley refused all of Plaintiff's counsel's pre-suit demands for information regarding the

---

[7]  The Supreme Court's decision in *Petrella v. Metro–Goldwyn–Mayer, Inc.*, ___ U.S. ___, 134 S. Ct. 1962 (2014), does not constitute an intervening change in law since, as other courts have recognized in rejecting Wiley's defenses in other suits, *Petrella* "was a case about laches, and the holding is limited to that issue."  *See Frerck v. John Wiley & Sons, Inc.*, No. 11-cv-2727, 2014 WL 3512991, at *6 (N.D. Ill. July 14, 2014).  Moreover, the Court's decision in *Petrella* specifically stated that "we have not passed on the question" of whether the discovery rule applies to the Copyright Act's statute of limitations, which discredits any claim that *Petrella* somehow overruled the standard in every Circuit in the country.  *See* 134 S. Ct. at 1969 n.4.

[8]  In fact, Wiley has gone to great lengths to maintain such information as "confidential" in these infringement lawsuits.  In this case, for instance, Wiley has designated all actual print run information as "confidential" and its counsel insists that any documents or briefs that include such information must be filed under seal.

usage of photos licensed through agencies and thus, prior to discovery, Plaintiff had not "discovered" any of the infringements at issue.[9]  (*See* McCulloch Decl. ¶ 58.)

### C.    Wiley Has No Defense Under Section 201(c) Of The Copyright Act.

Wiley's Fourth Affirmative defense alleges that its use of certain unidentified photos in certain unidentified publications were "revisions" and thus, regardless of whether Wiley had a license for such uses, they were "privileged" under Section 201(c) of the Copyright Act.  Wiley's position is unavailing because the publications in issue here are not "collective works" and also are not "revisions" and thus are not subject to Section 201(c).

Section 201(c) provides that "the owner of copyright in the collective work is presumed to have acquired only the privilege of reproducing and distributing the contribution as part of that particular collective work, any revision of that collective work, and any later collective work in the same series."  17 U.S.C. 201(c).  The term "collective work" is defined in the Copyright Act as "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." 17 U.S.C. § 101.  None of the publications at issue in this case are collective works.  Rather, they are individual or joint works of authorship where the author is not claiming copyright in third-party images.   In fact, unlike the authors of periodicals, anthologies or encyclopedias, Wiley did not register the publications in issue as "collective works" and thus cannot now claim that they are so.  These are typical textbooks that have one or two authors who claim copyright in all of the text as joint works of authorship, there are no "independent" textual

---

[9] There is also an additional information gap in this case that precluded Plaintiff from possibly discovering Wiley's infringements prior to suit because the licenses violated by Wiley here were granted by a third-party and PhotoEdit did not report the terms of the licenses granted to customers on monthly royalty statements other than to list the photo licensed, the name of the publication, and the fee charged.  (DYW Decl. ¶ 32.)  Without more information regarding the actual terms of Wiley's licenses, Plaintiff could not possibly have known prior to discovery in this lawsuit what limits were included in Wiley's licenses and could not have known—even with more information regarding Wiley's uses of photos—whether Wiley was in violation of these unknown license terms.  I

works. Accordingly, Section 201(c) does not apply. Wiley knows as much since it spends substantial licensing fees purchasing "re-use rights" to photography or new licenses to use photos in subsequent editions of its publications. If Wiley truly believed that its publications at issue in this case were collective works subject to Section 201(c), it would have registered these books as such and it would not have purchased new licenses (even years after the fact) for each new edition of a given publication. Even assuming *arguendo* that the publications in issue are "collective works," none of the infringements in issue would qualify as privileged "revisions" or subsequent collective works "in the same series." Instead, these are new publications that are entirely new editions, not merely "revisions" of the prior work.

Moreover, all of the licenses issued by PhotoEdit to Wiley were explicitly limited to "one-time" use of the applicable photo in the specified publication, and also specifically stated that "Prices for additional uses including other print, promotion, and other electronic rights, etc. must be negotiated separately. All other rights are reserved." (*See* McCulloch Decl. Exs. 3-23.) These restrictions explicitly precluded any "additional uses" of the photos, including reuse in subsequent editions of a book (which is not a "revision" of a collective work) or even electronic products. Accepting Wiley's self-serving interpretation of Section 201 of the Copyright Act would effectively strip these license restrictions of any meaning. Indeed, if Wiley's interpretation of Section 201 were correct, all of the license limits ever issued to any publishers would be meaningless because publishers could purchase rights to use a photo in just the print version of a specific book and then "reuse" that photo without penalty. The products and uses at issue here are not – and cannot plausibly be construed as – "revisions" under Section 201.

For this reason, other courts have rejected this same argument from Wiley and held that reusing photos subject to a "one-time use" license in subsequent editions or even in electronic

products is a copyright violation, not a privileged revision.  *See, e.g.*, *Beasley v. John Wiley & Sons, Inc.*, No. 12-cv-8715, 2014 WL 3600519, at *6 (N.D. Ill. July 21, 2014) ("[T]he scope of the copyright license would be for one edition only, and . . . [i]t is undisputed that Wiley printed two editions; therefore, it exceeded the scope of the license. There is also no dispute that Wiley exceeded the scope of the license by distributing electronic editions of the book.").

> **D.     Wiley's "Innocent Intent" Defense Is Frivolous.**

Despite already having been found liable for willful infringements related to identical license violations that occurred during the same time period, involved the same licensing process, and even involved books in the same "visualizing" series, Wiley alleges that any license violations were "innocent."  (Dkt. No. 41 at 18.)  This is a frivolous defense that has no possible support in the record or the law.  Because Wiley has pled its "innocent intent" as an affirmative defense, it "must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief."  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990).

Wiley can offer no evidence in the record to show it truly believed its license violations were not infringements, and it certainly cannot meet its burden to show that, if it held such a belief, that it was reasonable or justified.  As other courts considering precisely this argument have concluded, the notion that a license limitation is merely a suggestion that does not restrict the publisher's use of a photo is "self-serving" and "facially implausible."  *Wood v. Houghton Mifflin Harcourt Publ'g Co.*, 589 F. Supp. 2d 1230, 1242 (D. Colo. 2008).

## V.   WILEY'S INFRINGEMENTS WERE WILLFUL AND PART OF A WIDER PATTERN OF DOCUMENTED COPYRIGHT ABUSES.

### A.   Standard For Establishing Willfulness.

It is not necessary to find that Wiley acted maliciously to find its license violations were willful.  Rather, an infringement is "willful" if the infringer acted "with 'reckless disregard' for, or willful blindness to, the plaintiff's rights."  *See Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416, 2012 WL 5506121, at *2 (S.D.N.Y. Nov. 7, 2012) (citing *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995)); *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986) (infringement is "willful" if defendant acted "recklessly" or had "actual or constructive knowledge" that actions were an infringement).

Under this standard, the inquiry into whether Wiley's infringements were willful is not limited only to the violations at issue here because willfulness "may be inferred from the defendant's conduct."  *N.A.S. Import Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (citation omitted).  Courts thus have identified a number of non-exclusive factors to consider in determining whether an infringement is willful, including:

> (1) "the expenses saved and the profits reaped," (2) "the revenues lost by the plaintiff," (3) "the value of the copyright," (4) "the deterrent effect on others besides the defendant," (5) "whether the defendant's conduct was innocent or willful," (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced," and (7) "the potential for discouraging the defendant."

*Manno v. Tennessee Prod. Ctr., Inc.*, 657 F. Supp. 2d 425, 433 (S.D.N.Y. 2009).

### B.   Wiley Had Actual Knowledge Of The Limited Usage Rights Allowed Under Its Licenses

All licenses issued by PhotoEdit explicitly stated that the terms of Wiley's licenses and that any additional uses were prohibited and required additional licensing.  As such, Wiley had actual knowledge of both the restrictions of its licenses to use Plaintiff's photos and that its use

of Plaintiff's photos in any other manner was not permitted.  This evidence is sufficient to demonstrate that Wiley had actual notice and knowledge that its use of Plaintiff's photos beyond license terms or prior to purchasing additional permission was infringing.

### C.     Wiley Has A Well-Documented Pattern Of Massive Copyright Abuses.

Evidence of a broader practice of infringements is directly relevant to the question of willfulness under 17 U.S.C. § 504(c).  *See, e.g.*, *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F. Supp. 730, 733 (S.D.N.Y. 1981).  Wiley has been adjudicated liable for over one hundred counts of copyright infringement and settled many more claims in the face of overwhelming evidence.  *See, e.g.*, *Bean v. John Wiley & Sons, Inc.*, No. 12-cv-8001, 2012 WL 1078662, at *3 (D. Ariz. March 30, 2012) (finding Wiley liable for 108 counts of infringement); *DRK Photo v. Wiley*, AAA No. 76 143 00193 11 (Oct. 23, 2012) (Order finding Wiley liable for 15 counts of copyright infringement) (McCulloch Decl. Ex. 52); *Panoramic Stock Images v. John Wiley & Sons, Inc.*, No. 12-cv-10003 (N.D. Ill.), Dkt. No. 180 (McCulloch Decl. Ex. 53).

The *Psihoyos* case is particularly instructive in that it involved two identical license violations to those alleged here.  Unlike this case, however, Wiley stipulated to two infringements of Mr. Psihoyos' copyrights and thus trial was limited to damages on those claims. As in this case, Wiley also steadfastly maintained that these infringements were merely innocent "mistakes" and inadvertent "clerical errors."  After a week-long trial, the jury saw through Wiley's charade and found that the two infringements were willful.  *See Psihoyos*, 2012 WL 5506121, at *1.  After Wiley moved to set aside the verdict, the court held that the jury's finding of willfulness and damages award were both supported by the record, citing evidence that Wiley "made no effort to curb its infringement after becoming aware that Plaintiff's photographs had been used without license or that books had been printed exceeding Defendant's license" and noting that Wiley's "inventory department lacked a license compliance program during the

relevant time period." *Id.* at *2. This Court also noted that a finding of willfulness was appropriate because Wiley "has violated license agreements with photographers on numerous other occasions" and thus the evidence "supports Plaintiff's theory that Defendant systematically and knowingly, or at least recklessly, exceeded its licenses." *Id.* Thus, after considering nearly identical "mistakes" that led to the same infringements here, a jury, this Court, and then the Second Circuit all concluded that Wiley's infringements were willful and that Wiley was a "repeat infringer" and thus its misconduct warranted substantial damages.

This is powerful evidence that the particular infringements of Plaintiff's copyrights are part of a larger pattern of misconduct which is a crucial factor showing willfulness.

### D. Wiley's Efforts To Conceal Copyright Violations From Copyright Owners Is Powerful Evidence Of Willfulness.

As noted above, Plaintiff's counsel demanded prior to suit that Wiley disclose usage information regarding its use of Plaintiff's photos, but Wiley refused to cooperate. Wiley's refusal to cooperate with Plaintiff's pre-suit investigation is additional evidence that its conduct was willful. *See N.A.S. Import Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (holding willfulness "may be inferred from the defendant's conduct," including its refusing to cooperate with a copyright owner's investigation into a potential infringement); *Fitzgerald Publ'g Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986) (same); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir. 1990) (holding that defendant's refusal to provide plaintiff "statements of account identifying the royalties due" prior to litigation supported finding of willfulness); *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988) ( "defendants must not be able to sneer in the face of copyright owners and copyright laws"); *Video Views v. Studio 21*, 925 F.2d 1010, 1021 (7th Cir. 1991) ("one who undertakes a course of infringing conduct may [not] hide its head in the sand like an ostrich").

**CONCLUSION**

For the reasons set forth herein, Plaintiff respectfully requests that the Court enter partial summary judgment against Defendant.


Dated: March 27, 2015

                                             Respectfully submitted,

                                             NELSON & McCULLOCH LLP


                                             _____
                                             Kevin P. McCulloch (KM0530)
                                             Danial A. Nelson (DN4940)
                                             155 East 56th Street
                                             New York, New York 10022
                                             T: (212) 355-6050
                                             F: (646) 308-1178

                                             *Attorneys for Plaintiff*