UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DAVID YOUNG-WOLFF,           :
          :
          Plaintiff,       :
          :
       v.           :     Case No. 12 Civ. 5230 (JPO) (MHD)
          :
JOHN WILEY & SONS, INC.,      :
          :
          Defendant.      :
          :
          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANT'S COUNTER-STATEMENT IN RESPONSE TO PLAINTIFF'S
STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Pursuant to Local Rule 56.1 of the Local Rules of the United States District Court for the

Southern District of New York, Defendant John Wiley & Sons, Inc. ("Wiley") submits the

following counter-statement in response to Plaintiff David Young-Wolff ("Plaintiff" or "Young-

Wolff") Statement of Proposed Findings of Fact pursuant to Local Civil Rule 56.1(a) in support

of Plaintiff's Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56(a).[1]

---

[1] As used herein, "Rosenthal Decl." refers to the Declaration of Edward H. Rosenthal, dated
March 27, 2015, and the exhibits thereto, submitted in connection with Wiley's affirmative
motion for partial summary judgment. Dkt. 86. "DSUMF" refers to Defendant's Statement of
Undisputed Material Fact, dated March 27, 2015, also submitted in connection with Wiley's
motion for partial summary judgment. Dkt. 89. "Kadyshevich Decl." refers to the Declaration
of Anna Kadyshevich, dated May 8, 2015, submitted in connection with Wiley's opposition to
Plaintiff's motion for partial summary judgment. The "Suarez II Decl." and the "Kliemann
Decl." refer to the respective declarations of Lisa Suarez and Kristin Kliemann, dated May 8,
2015 and May 7, 2015, respectively, also submitted in connection with Wiley opposition to
Plaintiff's motion for partial summary judgment.

## The Parties

1.      Plaintiff is a self-employed professional photographer who makes his living by taking and licensing photographs.  (DYW Decl. ¶ 2.).

**Wiley Statement:  Not disputed.**

2.      Plaintiff has been involved in the business of photography, including licensing photography, for over 20 years.  (DYW Decl. ¶ 2.).

**Wiley Statement:  Not disputed.**

3.      Plaintiff created and is the sole author of all photographic works at issue in this action.  (DYW Decl. ¶ 4.).

**Wiley Statement:  Not disputed, except to the extent that the statement does not specify which "photographic works" are "at issue in this action."   This statement is not disputed only to the extent it refers to the seventeen works identified in the Plaintiff's Complaint that the Court determined were the only photographs at issue in this litigation.  *See* Dkt. 38.**

4.      The photos at issue in this lawsuit were all created and licensed as "stock" photography through various licensing agents, including Getty Images ("Getty") and PhotoEdit, Inc. ("PhotoEdit").  (DYW Decl. ¶ 14.).

**Wiley Statement:  Not disputed.**

5.      Plaintiff submitted all of his images to PhotoEdit as "Rights Managed" works meaning that PhotoEdit could grant licenses that allowed only limited uses of his photos and could not grant any so-called "Royalty Free" licenses that would allow re-use of his photos without additional licensing.  (DYW Decl. ¶ 15.).

**Wiley Statement:** Disputed. At his deposition, Plaintiff testified that he had a written agreement with PhotoEdit that had not changed since he was first represented by the agency in the mid-1990s. DSUMF ¶¶ 6-17; *see also* Rosenthal Decl. Ex. A (Young-Wolff Dep. 14:20; 18:5-9)). Plaintiff testified that PhotoEdit "licenses the images" and they "split it fifty-fifty." *Id.* 14:13-17. Mr. Young-Wolff testified that he "has no control over the terms of the license between PhotoEdit and the third party" to whom PhotoEdit licenses his work. *Id.* 15:24-16:3. He testified that PhotoEdit can license for whatever price it chooses (*id.* 16:4-6), for whatever print run it chooses (*id.* 16:7-19), in any geographic territory it chooses (*id.* 16:24-17:3) and in any language it chooses (*id.* 4-7). When asked, "Are you aware of any restrictions whatsoever on PhotoEdit's right to license the works that they've accepted from you?" Mr. Young-Wolff responded, "No." *Id.* 17:8-13. At no point did Mr. Young-Wolff qualify his statements by claiming that he submitted his works to PhotoEdit as "Rights Managed" works or that PhotoEdit only had permission to grant "limited uses" of his photos; indeed, Mr. Young-Wolff said just the opposite.

6. Defendant John Wiley & Sons, Inc. ("Defendant" or "Wiley") is a publishing company in the business of creating and publishing educational textbooks, instructional technology materials, reference works, travel books, and other similar materials and publications. (Wiley Amended Answer (Dkt. No. 41) ¶ 8.)

**Wiley Statement:** Disputed but immaterial. Wiley admits that it is in the business of publishing (Dkt. 41, ¶ 8) but disputes that it is currently "in the business of creating and publishing travel books." *Id.*

## Plaintiff's Copyrights

7.     Plaintiff has registered his copyrights in the photographic works at issue on this motion with the United States Copyright Office. (DYW Decl. ¶ 4.)

**Wiley Statement: Not disputed, except to the extent that the statement does not specify which "photographic works" are "at issue on this motion." This statement is not disputed only to the extent it refers to the thirteen photographs identified in Exhibit 1 to the Kevin McCulloch Decl. (the "Subject Photos").**

8.     Plaintiff is the sole and exclusive owner of all copyrights in the photographic works at issue on this motion. (DYW Decl. ¶ 4.)

**Wiley Statement: Not disputed, except to the extent that the statement does not specify which "photographic works" are "at issue on this motion." This statement is not disputed only to the extent it refers to the 13 Subject Photos.**

9.     Plaintiff's copyright in Image No. FAM581DYW041-001 (also identified as "16 mo old Japanese/Wh toddler boy imitates his Wh mom signing the word 'more' while sitting on a blanket in their backyard, LA, CA") is registered under copyright registration VAu 677-325 with an effective date of October 14, 2005. (DYW Decl. ¶ 5.).

**Wiley Statement: Not disputed.**

10.     Plaintiff's copyright in Image No. HAN321DYW026-001 (also identified as "16 mo old Japanese/Wh toddler boy imitates his Wh mom signing the word 'more' while sitting on a blanket in their backyard, LA, CA") is registered under copyright registration VAu 677-325 with an effective date of October 14, 2005. (DYW Decl. ¶ 5.)

**Wiley Statement: Not disputed.**

11.     A copy of registration certificate VAu 677-325 was produced to Wiley in this action under Bates PL000017. (DYW Decl. Ex. 2.).

**Wiley Statement:  Not disputed.**

12.     Plaintiff's copyright in Image No. MEN751DYW066-001(also identified as "Wh f therapist talks to irritated Wh young man during therapy session in her office, Santa Barbara, CA") is registered under copyright registration VAu 671-928 with an effective date of April 1, 2006. (DYW Decl. ¶ 6.)

**Wiley Statement:  Disputed but immaterial.  Registration VAu 671-928 has an effective date of April 11, 2006, not April 1, 2006.  *See* DYW Decl. Ex. 3**

13.     A copy of registration certificate VAu 671-928 was produced to Wiley in this action under Bates PL000022. (DYW Decl. Ex. 3.)

**Wiley Statement:  Not disputed.**

14.     Plaintiff's copyright in Image No. CH1051DYW034-001 (also identified as "Culry-haired, angry Wh boy arguing w his friend sticks out his tongue") is registered under copyright registration VAu 653-759, with an effective date of December 23, 2004.  (DYW Decl. ¶ 7.)

**Wiley Statement:  Not disputed to the extent that CH1051DYW034-001 is intended to be CH*I*051DYW034-001.**

15.     Plaintiff's copyright in Image No. MUS401DYW095-001 (also identified as "Wh drum major leads Cal marching band across field before football game, UC Berkeley, CA") is registered under copyright registration VAu 653-759, with an effective date of December 23, 2004. (DYW Decl. ¶ 7.)

**Wiley Statement:  Not disputed.**

16.     Plaintiff's copyright in Image No. CHS121DYW096-001 (also identified as "Empty K classroom w children's books & school supplies arranged on shelf") is registered under copyright registration VAu 653-759, with an effective date of December 23, 2004.  DYW Decl. ¶ 7.)

**Wiley Statement:  Not disputed.**

17.     A copy of registration certificate VAu 653-759 was produced to Wiley in this action under Bates PL000013. (DYW Decl. Ex. 4.)

**Wiley Statement:  Not disputed.**

18.     Plaintiff's copyright in Image No. COM361DYW228-001 (also identified as "Wh young man uses online chatroom to communicate over the Internet on his Mac computer at home") is registered under copyright registration VAu 603-428, with an effective date of January 2, 2004. (DYW Decl. ¶ 8.)

**Wiley Statement:  Not disputed.**

19.     A copy of registration certificate VAu 603-428 was produced to Wiley in this action under Bates PL000005.  (DYW Decl. Ex. 5.)

**Wiley Statement:  Not disputed.**

20.     Plaintiff's copyright in Image No. MEN191DYW005-001 (also identified as "8 mo old Japanese/Wh baby boy held by his Wh mom gets scared of Wh woman at door of home") is registered under copyright registration VAu 668-441, with an effective date of April 20, 2005. (DYW Decl. ¶ 9.)

**Wiley Statement:  Not disputed.**

21.     Plaintiff's copyright in Image No. BAB521DYW025-001 (also identified as "8 mo old Japanese/Wh baby boy looks at bright yellow ball w holes while sitting on brick floor in yard

outside") is registered under copyright registration VAu 668-441, with an effective date of April 20, 2005.  (DYW Decl. ¶ 9.)

**Wiley Statement:  Not disputed.**

22.     A copy of registration certificate VAu 668-441 was produced to Wiley in this action under Bates PL000014.  (DYW Decl. Ex. 6.)

**Wiley Statement:  Not disputed.**

23.     Plaintiff's copyright in Image No. CHI361DYW045-001 (also identified as "7 yr old Japanese/Wh identical twin sisters, unsure what to wear, look at their reflections in mirror while holding colorful clothes, SM, CA") is registered under copyright registration VAu 726-501, with an effective date of October 6, 2006.  (DYW Decl. ¶ 10.)

**Wiley Statement:  Not disputed.**

24.     A copy of registration certificate VAu 726-501 was produced to Wiley in this action under Bates PL000026.  (DYW Ex. 7.)

**Wiley Statement:  Not disputed.**

25.     Plaintiff's copyright in Image No. MEN681DYW041-001 (also identified as "Gesturing Wh middle-aged f family therapist counsels Wh couple & their sulking 13 yr old daughter & 10 yr old son sitting on a couch in her office, SM, CA") is registered under copyright registration VAu 1-001-898, with an effective date of April 7, 2009.  (DYW Decl. 11.)

**Wiley Statement:  Not disputed.**

26.     A copy of registration certificate VAu 1-001-898 was produced to Wiley in this action under Bates PL000051.  (DYW Ex. 8.)

**Wiley Statement:  Not disputed.**

27. Plaintiff's copyright in Image No. MED785DYW075-001 (also identified as "Wh m technician instructs Wh man settling into Bod Pod before beginning weighing procedure, Cal State Long Beach, LB, CA") is registered under copyright registration VAu 610-112, with an effective date of March 19, 2004. (DYW Decl. ¶ 12.)

**Wiley Statement: Not disputed.**

28. A copy of registration certificate VAu 610-112 was produced to Wiley in this action under Bates PL000008. (DYW Decl. Ex. 9.).

**Wiley Statement: Not disputed.**

29. Plaintiff's copyright in Image No. AWD201DYW049-001 (also identified as "Japanese/Wh girl places star on chart in elem school classroom, CA") is registered under copyright registration VAu 688-623, with an effective date of January 17, 2006. (DYW Decl. ¶ 13.)

**Wiley Statement: Not disputed.**

30. A copy of registration certificate VAu 688-623 was produced to Wiley in this action under Bates PL000020. (DYW Decl. Ex. 10.)

**Wiley Statement: Not disputed.**

**Infringements at Issue on this Motion**

31. Defendant published the photos at issue in the following publications:

| Plaintiff's Images | Wiley Titles | Wiley's Counter-Statement |
|---|---|---|
|  | *Visualizing Psychology*, 1e | **Not Disputed** |
| FAM581DYW041-001 | *Visualizing Psychology*, 2e | **Not Disputed** |
|  | *Psychology in Action*, 9e | **Not Disputed** |

| Plaintiff's Images | Wiley Titles | Wiley's Counter-Statement |
|---|---|---|
| | *Psychology in Action*, 10e | **Wiley does not dispute that the Subject Photo FAM581DYW041-001 appears in the publication *Psychology in Action*, 10e. Wiley disputes that Plaintiff has made any allegations concerning this publication or Wiley's use of this Subject Photo in this publication in Plaintiff's summary judgment motion.** |
| | *Psychology Around Us*, 1e | **Not Disputed** |
| | *Psychology Around Us*, 2e | **Wiley does not dispute that the Subject Photo FAM581DYW041-001 appears in the publication *Psychology Around Us*, 2e. Wiley disputes that Plaintiff has made any allegations concerning this publication or Wiley's use of this Subject Photo in this publication in Plaintiff's summary judgment motion.** |
| HAN321DYW026-001 | *Early Childhood Education*, 1e | **Not Disputed** |
| MEN751DYW066-001 | *Psychology in Action,* 9e | **Not Disputed** |
| | *Psychology in Action*, 10e | **Wiley does not dispute that the Subject Photo MEN751DYW066-001 appears in the publication *Psychology in Action*, 10e. Wiley disputes that** |

| Plaintiff's Images | Wiley Titles | Wiley's Counter-Statement |
|---|---|---|
| | | **Plaintiff has made any allegations concerning this publication or Wiley's use of this Subject Photo in this publication in Plaintiff's summary judgment motion.** |
| | *Visualizing Psychology*, 1e | **Not Disputed** |
| | *Visualizing Psychology*, 2e | **Not Disputed** |
| CHI051DYW034-001 | Lab Manual for *Anatomy and Physiology*, 2e | **Not Disputed** |
| | "Lab Manual" for *Anatomy and Physiology*, 3e | **Not Disputed** |
| | "Lab Manual" for *Anatomy and Physiology*, 4e | **Not Disputed** |
| MUS401DYW095-001 | *College Algebra*, 1e | **Not Disputed** |
| | *College Algebra*, 2e | **Wiley does not dispute that the Subject Photo MUS401DYW095-001 appears in the publication *College Algebra*, 2e. Wiley disputes that Plaintiff has made any allegations concerning this publication or Wiley's use of this Subject Photo in this publication in Plaintiff's summary judgment motion.** |
| | *College Algebra*, 3e | **Wiley does not dispute that the Subject Photo MUS401DYW095-001 appears in the publication** |

| Plaintiff's Images | Wiley Titles | Wiley's Counter-Statement |
|---|---|---|
| | | *College Algebra*, **3e.** Wiley disputes that Plaintiff has made any allegations concerning this publication or Wiley's use of this Subject Photo in this publication in Plaintiff's summary judgment motion. |
| | *Precalculus*, 1e | **Not Disputed** |
| | *Intermediate Algebra*, 2e | **Disputed. Plaintiff has put forth no evidence that the photograph MUS401DYW095-001 appears in a publication entitled "*Intermediate Algebra*, 2e." Further disputed to the extent that the statement suggests that *Intermediate Algebra*, 2e is a separate "publication" from *College Algebra*, 2e. Suarez II Decl. ¶ 13. *Intermediate Algebra*, 2e is a high school edition of *College Algebra*, 2e. *Id.*** |
| | *Algebra and Trigonometry*, 2e | **Not Disputed** |
| CHS121DYW096-001 | *Visualizing Elementary Mathematics Methods*, 1e | **Wiley does not dispute that the Subject Photo CHS121DYW096-001 appears in the publication *Visualizing Elementary Mathematics Methods*, 1e Wiley disputes that Plaintiff has made any allegations concerning this publication or Wiley's use of this Subject Photo in this publication in** |

| Plaintiff's Images | Wiley Titles | Wiley's Counter-Statement |
|---|---|---|
| | | Plaintiff's summary judgment motion. |
| COM361DYW228-001 | *Psychology in Action*, 8e | **Not Disputed** |
| | *Psychology in Action*, 9e | **Not Disputed** |
| | *Psychology in Action*, 10e | **Wiley does not dispute that the Subject Photo COM361DYW228-001 appears in the publication *Psychology in Action*, 10e. Wiley disputes that Plaintiff has made any allegations concerning this publication or Wiley's use of this Subject Photo in this publication in Plaintiff's summary judgment motion.** |
| MEN191DYW005-001 | *Abnormal Psychology*, 10e | **Not Disputed** |
| | *Abnormal Psychology*, 11e | **Not Disputed** |
| | *Abnormal Psychology*, 12e | **Not Disputed** |
| BAB521DYW025-001 | *Early Childhood Education*, 1e | **Not Disputed** |
| CHI361DYW045-001 | *Early Childhood Education*, 1e | **Not Disputed** |
| MEN681DYW041-001 | *Clinical Psychology* | **Disputed. There is no evidence in the record that Wiley used this Subject Photo in any book entitled "*Clinical Psychology*" (DSUMF ¶ 135) and Plaintiff has not put forward, nor cited to, any** |

| Plaintiff's Images | Wiley Titles | Wiley's Counter-Statement |
|---|---|---|
| | | evidence of use. |
| | *Visualizing Nutrition: Everyday Choices*, 1e | **Not Disputed** |
| MED785DYW075-001 | *Visualizing Nutrition: Everyday Choices*, 2e | **Wiley does not dispute that the Subject Photo MED785DYW075-001 appears in the publication *Visualizing Nutrition: Everyday Choices*, 2e. Wiley disputes that Plaintiff has made any allegations concerning this publication or Wiley's use of this Subject Photo in this publication in Plaintiff's summary judgment motion.** |
| | *Psychology Around Us*, 1e | **Not Disputed** |
| AWD201DYW049-001 | *Psychology Around Us*, 2e | **Wiley does not dispute that the Subject Photo AWD201DYW049-001 appears in the publication *Psychology Around Us*, 2e. Wiley disputes that Plaintiff has made any allegations concerning this publication or Wiley's use of this Subject Photo in this publication in Plaintiff's summary judgment motion.** |

(*See* McCulloch Decl. Ex. 1.)

## _Visualizing Psychology_, 1e

32.     The license obtained by Wiley for _Visualizing Psychology_, 1e under Invoice No. 216179 permitted Wiley to publish Plaintiff's photos in only 40,000 copies of that book, allowed distribution in North America only, and did not permit any foreign translations to be created or authorized by Wiley.  (McCulloch Decl. Ex. 3.)

**Wiley Counter-Statement:  Disputed to the extent that statement purports:**

> **A.  To refer to photographs other than the Subject Photos FAM581DYW041 001 ("Toddler Boy Imitates His Mom I") and MEN751DYW 066 001 ("Therapist Talks to Irritated Young Man").  _See_ Rosenthal Decl. Ex. B.**
>
> **B.  To alter the scope of Invoice No. 216179.  Wiley refers the Court to Invoice No. 216179 for its full meaning.  _Id_.**
>
> **C.  To suggest that Invoice No. 216179 prohibits Wiley from creating or authorizing foreign translations of _Visualizing Psychology_, 1e.  Invoice No. 216179 does not, and cannot, place any restrictions on Wiley's right to create or authorize translation of any content in _Visualizing Psychology_, 1e other than as it relates to the photographs identified therein.  Rosenthal Decl. Ex. B.**
>
> **D.  To suggest that Wiley was limited to printing 40,000 copies of the Subject Photos "Toddler Boy Imitates His Mom I" and "Therapist Talks to Irritated Young Man" in the publication _Visualizing Psychology_, 1e, or that Wiley was limited to distributing those Subject Photos in that publication in North America.  Wiley obtained a license extension to use these Subject Photos under the following terms:  "World English language rights for print/ebook/web/all manner of media/custom/derivative works/including international student version" for the "life of the edition." Rosenthal Decl. Ex. C.**

33.     Wiley printed over 40,000 copies of _Visualizing Psychology_, 1e.  (McCulloch Decl. Ex. 2, Row 1.)

**Wiley Counter-Statement:  Disputed but immaterial.  Wiley does not dispute that it printed over 40,000 copies of _Visualizing Psychology_, 1e but disputes that it printed the amount**

alleged in Ex. 2, Row 1 of the McCulloch Declaration.  Suarez II Decl. ¶ 3.  **Immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 32, part D, *supra*.**

34.    Wiley distributed *Visualizing Psychology*, 1e in regions beyond North America. (McCulloch Decl. Ex. 2, Row 1.)

**Wiley Counter-Statement:  Not disputed but immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 32, part D, *supra*.**

35.    At the time that Wiley published *Visualizing Psychology*, 1e on or about January 9, 2007, it did not have a license or permission to publish Plaintiff's photos in this publication. (McCulloch Decl. Ex. 2, Row 1.)

**Wiley Counter-Statement:  Disputed but immaterial.  Invoice No. 216179 is not dated 12/21/2007 as written in McCulloch Decl. Ex. 2 Row 1 but rather 12/21/*2006*.  Rosenthal Decl. Ex. B (emphasis added).  Further, Wiley disputes this statement on the grounds that the terms "license" and "permission" are vague and conclusory, and call for a legal conclusion as to the permissibility of Wiley's use of the Subject Photos in the publication *Visualizing Psychology*, 1e.  Immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 32, part D, *supra*.**

36.    Each license granted to Wiley by PhotoEdit expressly stated, at the bottom of the invoice, that "No rights granted until usage fees are paid in full."  (McCulloch Decl. Exs. 3-23.)

**Wiley Counter-Statement:  Disputed to the extent that Plaintiff refers to any licenses other than those identified in Exhibits 3-23 of the McCulloch Declaration.  Further disputed to the extent this statement is read out of the context of Wiley's contractual and business relationship with PhotoEdit, and disputed to the extent that the pricing agreements**

between Wiley and PhotoEdit did not contain any such restrictions.  Kadyshevich Decl. Ex. B.

37.    At the time Wiley requested a "license extension" for *Visualizing Psychology*, 1e in June 2012, Wiley already had exceeded the terms of its original license and the book was already out of circulation and the subsequent editions of the book had already been published.  (McCulloch Decl. Ex. 2, Row 1.)

**Wiley Counter-Statement:  Disputed but immaterial.  *Visualizing Psychology*, 1e was not "out of circulation" as of June 2012.  Suarez II Decl. ¶ 4.  Disputed to the extent it calls for a legal conclusion as to the permissibility of Wiley's use of the Subject Photos in the publication *Visualizing Psychology*, 1e.  Immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 32, part D, *supra*.**

## *Visualizing Psychology*, 2e

38.    The license obtained by Wiley for *Visualizing Psychology*, 2e under Invoice No. 222325 permitted Wiley to publish Plaintiff's photos in only 100,000 copies of that book and did not permit any foreign translations to be created or authorized by Wiley.  (McCulloch Decl. Ex. 5.)

**Wiley Counter-Statement:  Disputed to the extent that statement purports:**

> **A.  To refer to photographs other than the Subject Photos FAM581DYW041 001 ("Toddler Boy Imitates His Mom I") and MEN751DYW 066 001 ("Therapist Talks to Irritated Young Man").   Rosenthal Decl. Ex. E.**
>
> **B.  To alter the scope of Invoice No. 222325.  Wiley refers the Court to Invoice No. 222325 for its full meaning.  Rosenthal Decl. Ex. E.**
>
> **C.  To suggest that the Invoice No. 22325 prohibits Wiley from creating or authorizing foreign translations of *Visualizing Psychology*, 2e.  Invoice No. 222325 does not, and cannot, place any restrictions on Wiley's right to create or authorize translation of any content in *Visualizing Psychology*, 2e other than as it relates to the photographs identified in Invoice No. 222325.**

Rosenthal Decl. Ex. E.

     **D.  To suggest that Wiley was limited to printing 100,000 copies of the Subject Photos "Toddler Boy Imitates His Mom I" and "Therapist Talks to Irritated Young Man" in the publication *Visualizing Psychology*, 2e. Wiley obtained a license extension to use these Subject Photos under the following terms: "world English language rights for print/ebook/web/all manner of media/custom/derivative works/including international student version" for the "life of the edition." Rosenthal Decl. Ex. F.**

39.    Wiley printed over 100,000 copies of *Visualizing Psychology*, 2e. (McCulloch Decl. Ex. 2, Row 3.)

**<u>Wiley's Counter-Statement:</u> Disputed but immaterial. Wiley does not dispute that it printed over 100,000 copies of *Visualizing Psychology*, 2e, but disputes that it printed the amount alleged in Ex. 2, Row 3 of the McCulloch Declaration. Suarez II Decl. ¶ 5. Immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 38, part D, *supra*.**

40.    At the time Wiley requested a "license extension" for *Visualizing Psychology*, 2e in September 2011, Wiley already had exceeded the terms of its original license. (McCulloch Decl. Ex. 2, Row 3.)

**<u>Wiley Counter-Statement:</u> Disputed but immaterial. As of September 2011, Wiley had not printed more than 100,000 copies of Visualizing Psychology, 2e. Suarez II Decl. ¶ 5. *Visualizing Psychology*, 2e was not "out of circulation" as of September 2011. *Id.* ¶ 5. Disputed to the extent it calls for a legal conclusion as to the permissibility of Wiley's use of the Subject Photos in the publication *Visualizing Psychology*, 2e. Immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 38, part D, *supra*.**

## *Psychology In Action*, 8e

41.     At the time that Wiley published *Psychology in Action*, 8e on or about December 14, 2005, it did not have a license or permission to publish Plaintiff's photos in this publication. (McCulloch Decl. Ex. 2, Row 6.).

**Wiley Counter-Statement:   Disputed.   McCulloch Decl. Ex. 2, Row 6 incorrectly cites to the absence of evidence to claim that Wiley did not obtain an original invoice for publication of *Psychology in Action*, 8e.  Wiley paid for Invoice No. 213605, dated November 22, 2005, to reproduce and distribute the Subject Photo COM361DYW228 001("Man Uses Online Chatroom") in the publication *Psychology in Action*, 8e. Rosenthal Decl. Ex. X.   Invoice No. 213605 was produced to Plaintiff at Bates-Range WILEY-YW 304-06.  *Id.*   Furthermore, Wiley obtained a license extension to use this Subject Photo under the following terms:  "World English language rights for print/ebook/web/all manner of media/custom/derivative works/including international student version" for the "life of the edition." (Invoice No. 225485). Rosenthal Ex. Y.  Plaintiff received and accepted royalty payments for Invoice No. 213605 and Invoice No. 225485.  DSUMF ¶ 88.**

**The Subject Photo "Man Uses Online Chatroom is the only Subject Photo in the publication *Psychology in Action*, 8e (DSUMF ¶¶ 33, 65), and the only Subject Photo in *Psychology in Action*, 8e that Plaintiff asserts is a use "at issue on this motion" (paragraph 31, *supra*).**

42.     At the time Wiley requested a "license extension" for *Psychology in Action*, 8e in October 2011, the book was already out of circulation and the subsequent editions of the book had already been published.  (McCulloch Decl. Ex. 2, Row 7.)

**Wiley Counter-Statement:** Disputed to the extent it calls for a legal conclusion as to the permissibility of Wiley's use of the Subject Photo in the publication *Psychology in Action*, 8e. Immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 41, *supra*.

43. The "license extension" that Wiley obtained for *Psychology in Action*, 8e under Invoice No. 225485 did not permit any foreign translations to be created or authorized by Wiley. (McCulloch Decl. Ex. 8.)

**Wiley Counter-Statement:** Disputed. Nothing in either Invoice No. 213605 or Invoice No. 225485 prohibits Wiley from creating or authorizing foreign translations of *Psychology in Action*, 8e. Rosenthal Decl. Exs. X-Y. Invoice Nos. 213605 and 225485 do not, and cannot, place any restrictions on Wiley's right to create or authorize translations of any content in *Psychology in Action*, 8e other than with respect to the photographs specifically identified therein.

44. Wiley created or authorized the publication of foreign translations of *Psychology in Action*, 8e. (McCulloch Decl. Ex. 2, Row 7.)

**Wiley Counter-Statement:** Disputed. Wiley did not create or authorize any translations of *Psychology in Action*, 8e. Kliemann Decl. ¶¶ 6, 9-10 and Ex. A. McCulloch Decl. Ex. 2 Row 7 cites to no facts in support of the allegation that Wiley "created or authorized" foreign translations of *Psychology in Action*, 8e.

## *Psychology In Action*, 9e

45. The license obtained by Wiley for *Psychology in Action*, 9e under Invoice No. 220364 permitted Wiley to publish Plaintiff's photos in only 100,000 copies of that book,

allowed distribution in North America only, and did not permit any foreign translations to be created or authorized by Wiley. (McCulloch Decl. Ex. 9.)

**Wiley's Counter-Statement:** **Disputed to the extent that statement purports:**

> **A. To refer to photographs other than the Subject Photos FAM581DYW041 001 ("Toddler Boy Imitates His Mom I"), MEN751DYW066-001 ("Therapist Talks to Irritated Young Man") and COM361DYW228-001 ("Man Uses Online Chatroom"). Rosenthal Decl. Ex. H.**

> **B. To alter the scope of Invoice No. 216179. Wiley refers the Court to Invoice No. 216179 for its full meaning. Rosenthal Decl. Ex. H.**

> **C. To suggest that Invoice No. 220364 prohibits Wiley from creating or authorizing foreign translations of *Psychology in Action*, 9e. Invoice No. 220364 does not, and cannot, place any restrictions on Wiley's right to create or authorize translation of any content in *Psychology in Action*, 9e other than as it relates to the photographs identified therein. Rosenthal Decl. Ex. H**

> **D. To suggest that Wiley was limited to printing 100,000 copies of the Subject Photos FAM581DYW041 001 ("Toddler Boy Imitates His Mom I"), MEN751DYW066-001 ("Therapist Talks to Irritated Young Man") and COM361DYW228-001 ("Man Uses Online Chatroom"), including "World English language rights for print/ebook/web/all Man Uses Online Chatroom,") in the publication *Psychology in Action*, 9e, or that Wiley was limited to distributing those Subject Photos in that publication in North America. Wiley obtained license extensions to use these Subject Photos, including under the following terms: "World English language rights for print/ebook/web/all manner of media/custom/derivative works/including international student version" for the "life of the edition." Rosenthal Decl. Exs. I, J.**

46. At the time that Wiley requested a license for 100,000 copies of *Psychology in Action*, 9e, it knew that it had already printed more than 100,000 copies of both the 7th and the 8th editions of this title. (McCulloch Decl. Ex. 2, Rows 5 & 6.)

**Wiley Counter-Statement:** **Disputed. The evidence cited by Plaintiff (Rows 2219 and 2499 of WILEY-YW 3830) neither makes reference to, nor supports any inference, concerning Wiley's knowledge "at the time that Wiley requested a license for 100,000 for Psychology in Action, 9e."**

47.     Wiley printed over 100,000 copies of *Psychology in Action*, 9e.  (McCulloch Decl. Ex. 2, Row 8.)

**Wiley Counter-Statement:  Disputed but immaterial.  Wiley does not dispute that it printed over 100,000 copies of *Psychology in Action,* 9e, but disputes that it printed the amount alleged in Ex. 2, Row 8 of the McCulloch Declaration.  Suarez II Decl. ¶ 7.   Immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 45, part D, *supra*.**

48.     Wiley distributed *Psychology in Action*, 9e in regions beyond North America. (McCulloch Decl. Ex. 2, Row 8.)

**Wiley Counter-Statement:  Not disputed but immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 45, part D, *supra*.**

49.     At the time Wiley requested a "license extension" for *Psychology in Action*, 9e in April 2011, Wiley already had exceeded the terms of its original license.  (McCulloch Decl. Ex. 2, Row 8.)

**Wiley Counter-Statement:  Disputed to the extent it calls for a legal conclusion as to the permissibility of Wiley's use of the Subject Photos in the publication *Psychology in Action*, 9e.  Immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 45, part D, *supra.***

## *Psychology Around Us*, 1e

50.     The license obtained by Wiley for *Psychology Around Us*, 1e under Invoice No. 222463 did not permit any foreign translations to be created or authorized by Wiley. (McCulloch Decl. Ex. 11.)

**Wiley Counter-Statement:  Disputed.  Nothing in Invoice No. 222463 prohibits Wiley from creating or authorizing foreign translations of in *Psychology Around Us*, 1e.  Rosenthal**

Decl. Ex. N. Invoice No. 222463 does not, and cannot, place any restrictions on Wiley's right to create or authorize translations of any content in *Psychology Around Us*, 1e other than with respect to the photographs specifically identified therein. *Id.*

51. Wiley created or authorized the publication of foreign translations of *Psychology Around Us*, 1e. (McCulloch Decl. Ex. 2, Row 10.)

**Wiley Counter-Statement: Disputed. Wiley did not "create" or "authorize" the publication of foreign translations of *Psychology Around Us*, 1e. Kliemann Decl. ¶ 3. The evidence cited to by Plaintiff (WILEY-YW 0003820) is a chart listing licensees of foreign English language editions of this publication. *Id.* Column "V" indicates that all products are English-language products. *Id.* *See also* Kadyshevich Decl. Ex. C.**

## *Early Childhood Education*, 1e

52. The license obtained by Wiley for *Early Childhood Education*, 1e under Invoice No. 216344 did not permit any foreign translations to be created or authorized by Wiley. (McCulloch Decl. Ex. 12.)

**Wiley Counter-Statement: Disputed. Nothing in Invoice No. 216344 prohibits Wiley from creating or authorizing foreign translations of in *Early Childhood Education*, 1e. *See* Rosenthal Decl. Ex. II. Invoice No. 216344 does not, and cannot, place any restrictions on Wiley's right to create or authorize translations of any content in *Early Childhood Education*, 1e other than with respect to the photographs specifically identified therein. *Id.***

53. Wiley created or authorized the publication of foreign translations of *Early Childhood Education*, 1e. (McCulloch Decl. Ex. 2, Row 11.)

**Wiley Counter-Statement:  Disputed.  Wiley did not "create" or "authorize" the publication of foreign translations of *Early Childhood Education*, 1e.  Kliemann Decl. ¶ 4.  The evidence cited to by Plaintiff (WILEY-YW 0003820) is the same chart referenced in paragraph 52, above, and only identifies foreign English language editions of the publication.  *Id. Psychology Around Us*, 1e.  *Id. ¶ 3*.  Nothing in WILEY-YW 0003820 references the publication *Early Childhood Education*, 1e.  *See* Kadyshevich Decl. Ex. C.**

## *Lab Manual for Anatomy and Physiology*, 2e

54.     The license obtained by Wiley for *Lab Manual for Anatomy and Physiology*, 2e under Invoice No. 212155 permitted Wiley to publish Plaintiff's photos in only 40,000 copies of that book, allowed distribution in North America only, and did not permit any foreign translations to be created or authorized by Wiley.  (McCulloch Decl. Ex. 13.)

**Wiley Counter-Statement:  Disputed to the extent that statement purports:**

> **A.  To refer to photographs other than the Subject Photo CHI051DYW034-001 ("Curly Haired Boy Arguing with Friend").   Rosenthal Decl. Ex. T.**

> **B.  To alter the scope of Invoice No. 212155.  Wiley refers the Court to Invoice No. 212155 for its full meaning.  Rosenthal Decl. Ex. T.**

> **C.  To suggest that the Invoice No. 212155 prohibits Wiley from creating or authorizing foreign translations of Lab Manual for Anatomy and Physiology, 2e.  Invoice No. 212155 does not, and cannot, place any restrictions on Wiley's right to create or authorize translation of any content in Lab Manual for Anatomy and Physiology, 2e other than as it relates to the photographs identified therein.  Rosenthal Decl. Ex. T.**

> **D.  To suggest that Wiley was limited to printing 40,000 copies of the Subject Photo CHI051DYW034-001 in the publication Lab Manual for Anatomy and Physiology, 2e, or that Wiley was limited to distributing those Subject Photos in that publication in North America.  Wiley obtained a license extension to use these Subject Photos under the following terms: "World English language rights for print/ebook/web/all manner of media/custom/derivative works/including international student version" for the "life of the edition."  Rosenthal Decl. Ex. U.**

55.     Wiley printed over 40,000 copies of *Lab Manual for Anatomy and Physiology*, 2e. (McCulloch Decl. Ex. 2, Row 12.)

**Wiley Counter-Statement:  Disputed but immaterial.  Wiley does not dispute that it printed over 40,000 copies of *Lab Manual for Anatomy and Physiology*, 2e, but disputes that it printed the amount alleged in Ex. 2, Row 12 of the McCulloch Declaration.  Suarez II Decl. ¶ 8.  Immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 54, part D, *supra*.**

56.     Wiley distributed *Lab Manual for Anatomy and Physiology*, 2e in regions beyond North America.  (McCulloch Decl. Ex. 2, Row 12.)

**Wiley Counter-Statement:  Not disputed but immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 54, part D, *supra*.**

57.     At the time that Wiley published *Lab Manual for Anatomy and Physiology*, 2e on or about March 28, 2005, it did not have a license or permission to publish Plaintiff's photos in this publication.  (McCulloch Decl. Ex. 2, Row 12.)

**Wiley Counter-Statement:  Disputed but immaterial.  Wiley obtained a license to publish the Subject Photo CHI051DYW034-001 ("Curly Haired Boy Arguing with Friend").  Rosenthal Decl. Ex. T.  Wiley further disputes this statement on the grounds that the terms "license" and "permission" are vague and conclusory, and call for a legal conclusion as to the permissibility of Wiley's use of the Subject Photos in the publication *Lab Manual for Anatomy and Physiology*, 2e.  Immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 54, part D, *supra*.**

58.     Each license granted to Wiley by PhotoEdit expressly stated, at the bottom of the invoice, that "No rights granted until usage fees are paid in full."  (McCulloch Decl. Exs. 3-23.)

**Wiley Counter-Statement:  Wiley incorporates its Counter-Statement to paragraph 37,** *supra***, herein.**

59.     At the time Wiley requested a "license extension" for *Lab Manual for Anatomy and Physiology*, 2e in October 2011, Wiley already had exceeded the terms of its original license, the book was already out of circulation, and multiple subsequent editions of the book had already been published.  (McCulloch Decl. Ex. 2, Row 12.)

**Wiley Counter-Statement:  Disputed but immaterial.  *Lab Manual for Anatomy and Physiology*, 2e was not "out of circulation" as of October 2011.  Suarez II Decl. ¶ 9.**

**Disputed to the extent it calls for a legal conclusion as to the permissibility of Wiley's use of the Subject Photo in the publication *Lab Manual for Anatomy and Physiology*, 2e.**

**Immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 54, part D,** *supra***.**

# *Lab Manual for Anatomy and Physiology*, 3e

60.     The license obtained by Wiley for *Lab Manual for Anatomy and Physiology*, 3e under Invoice No. 217615 permitted Wiley to publish Plaintiff's photos in only 100,000 copies of that book.  (McCulloch Decl. Ex. 15.)

**Wiley Counter-Statement:  Disputed to the extent that the statement purports:**

> **A.   To refer to photographs other than the Subject Photo CHI051DYW034-001 ("Curly Haired Boy Arguing with Friend").   *See* McCulloch Decl. Ex. 15.**
>
> **B.   To alter the scope of Invoice No. 217615.  Wiley refers the Court to Invoice No. 217615 for its full meaning.  *Id.***

61.     Wiley printed over 100,000 copies of *Lab Manual for Anatomy and Physiology*, 3e. (McCulloch Decl. Ex. 2, Row 14.)

**Wiley's Counter-Statement:** Disputed. Wiley does not dispute that it printed over 100,000 copies of *Lab Manual for Anatomy and Physiology*, 3e, but disputes that it printed the amount alleged in Ex. 2, Row 14 of the McCulloch Declaration. Suarez II Decl. ¶ 10.

## *Lab Manual for Anatomy and Physiology*, 4e

62.     The license obtained by Wiley for *Lab Manual for Anatomy and Physiology*, 4e under Invoice No. 223178 permitted Wiley to publish Plaintiff's photos in only 100,000 copies of that book. (McCulloch Decl. Ex. 16.)

**Wiley Counter-Statement:** Disputed to the extent that the statement:

> **A. Purports to refer to photographs other than the Subject Photo CHI051DYW034-001 ("Curly Haired Boy Arguing with Friend"). McCulloch Decl. Ex. 16.**
>
> **B. Purports to alter the scope of Invoice No. 223178. Wiley refers the Court to Invoice No. 223178 for its full meaning. *Id.***
>
> **C. Is read out of the context of Wiley's contractual and business relationship with PhotoEdit. Wiley and PhotoEdit have entered into multiple master licensing agreements that set forth the payment terms for Wiley's use of photographs, including the Subject Photos, obtained from PhotoEdit. Kadyshevich Decl. Ex. B.**

63.     Wiley's stated print run total for this title is under 100,000 copies but it continued to print and sell this book during this litigation and thus has now printed over 100,000 copies of *Lab Manual for Anatomy and Physiology*, 4e. (McCulloch Decl. Ex. 2, Row 15.)

**Wiley's Counter-Statement:** Undisputed.

## _College Algebra_, 1e

64.     The license obtained by Wiley for _College Algebra_, 1e under Invoice No. 213271

permitted Wiley to publish Plaintiff's photos in only 40,000 copies of that book.  (McCulloch Decl.

Ex. 17.)

**Wiley Counter-Statement:  Disputed to the extent that the statement purports:**

> **A. To refer to photographs other than the Subject Photo MUS401DYW095-001 ("Drum Major Leads Marching Band").   Rosenthal Decl. Ex. BB.**
>
> **B. To alter the scope of Invoice No. 213271.  Wiley refers the Court to the terms of Invoice No. 213271 for its full meaning.  Rosenthal Decl. Ex. BB.**
>
> **C. To suggest that Wiley was limited to printing 40,000 copies of the Subject Photo MUS401DYW095-001 in the publication _College Algebra_, 1e.  Wiley obtained a license extension to use this Subject Photo under the following terms:  "World English language rights for print/ebook/web/all manner of media/custom/derivative works/including international student version" for the "life of the edition."  Rosenthal Decl. Ex. CC.**

65.     Wiley printed over 40,000 copies of _College Algebra_, 1e.  (McCulloch Decl. Ex. 2,

Row 16.)

**Wiley Counter-Statement:  Disputed but immaterial.  Wiley does not dispute that it printed**

**over 40,000 copies of _College Algebra_, 1e.  Immaterial for the reasons set forth in Wiley's**

**Counter-Statement to paragraph 64, part C, _supra_.**

66.     At the time Wiley requested a "license extension" for _College Algebra_, 1e in June

2012, Wiley already had exceeded the terms of its original license and the book was already out

of circulation.  (McCulloch Decl. Ex. 2, Row 17.)

 **Wiley Counter-Statement:  Disputed but immaterial.   _College Algebra_, 1e was not "out of**

**circulation" as of June 2012.  Suarez II Decl. ¶ 12.  Disputed to the extent it calls for a legal**

**conclusion as to the permissibility of Wiley's use of the Subject Photo in the publication**

*College Algebra*, 1e.  **Immaterial for the reasons set forth in Wiley's Counter-Statement to paragraph 64, part C,** *supra.*

## *Precalculus*, 1e

67.     Wiley published Plaintiff's photo MUS401DYW095-001 in *Precalculus*, 1e without a license.  (McCulloch Decl. Ex. 2, Row 18.)

**Wiley Counter-Statement:  Disputed.  Wiley paid PhotoEdit for a license, dated October 21, 2009, to reproduce and distribute the Subject Photo MUS401DYW095-001 ("Drum Major Leads Marching Band") in the publication** *Precalculus*, **1e that included a combined print run up to 100,000 copies, including ISV, World English print and electronic rights (Invoice No. 222412).  Rosenthal Decl. Ex. EE.  This document was produced to Plaintiff at Bates-number WILEY-YW 0000350. DSUMF ¶ 106.  Plaintiff received and accepted royalty payments for Invoice No. 222412.** *Id.* ¶ 108.  **All of Wiley's uses of the Subject Photo "Drum Major Leads Marching Band" in the publication** *Precalculus*, **1e are authorized.** *Id.* ¶ 107.

## *Intermediate Algebra*, 2e

68.     Wiley published Plaintiff's photo MUS401DYW095-001 in *Intermediate Algebra*, 2e without a license.  (McCulloch Decl. Ex. 2, Row 19.)

**Wiley Counter-Statement:  Disputed.  McCulloch Decl. Ex. 2 Row 19 cites to no facts in support of the allegation that the Subject Photo "MUS401DYW095-001" appeared in a publication entitled "***Intermediate Algebra*, 2e."  **The publication entitled "***Intermediate Algebra*, 2e" **is a high school version of the publication** *College Algebra*, 2e.  **This is reflected in the spreadsheet that was produced to Plaintiff at WILEY-YW 2389-2508.  Suarez II Decl. ¶ 13. Wiley paid PhotoEdit for a license, dated August 15,**

**2008, to reproduce and distribute the Subject Photo MUS401DYW095-001 ("Drum Major Leads Marching Band") in the publication** *College Algebra***, 2e (Invoice No. 220002). Kadyshevich Decl. Ex. D. Wiley produced a combined total of less than 100,000 copies of** *College Algebra***, 2e, including all editions and versions such as** *Intermediate Algebra***, 2e. Suarez II Decl. ¶ 13.**

## *Algebra and Trigonometry, 2e*

69.     The license obtained by Wiley for *Algebra and Trigonometry*, 2e under Invoice No. 220424 permitted Wiley to distribute the book in North America only and did not permit any foreign translations to be created or authorized by Wiley. (McCulloch Decl. Ex. 19.)

**Wiley Counter-Statement: Disputed. Wiley sent a request to PhotoEdit, dated October 30, 2008, to reuse the Subject Photo MUS401DYW095-001 ("Drum Major Leads Marching Band") in the publication** *Algebra and Trigonometry***, 2e with "World English Language publication rights." Kadyshevich Decl. Ex. E. PhotoEdit sent back an invoice that erroneously listed "North American" distribution rights (Invoice No. 220424).** *See* **McCulloch Decl. Ex. 19. Wiley paid PhotoEdit $131.25 for Invoice No 220424. Pursuant to the terms of the master pricing agreement between Wiley and PhotoEdit in place at the time that Wiley requested Invoice No. 220424, Wiley and PhotoEdit agreed that Wiley would pay $131.25 for World distribution reuse rights.** *Id.* **Ex. B at p. 6. (75% of 175.00).**

**Wiley further disputes this statement to the extent it suggests that Invoice No. 220424 prohibits Wiley from creating or authorizing foreign translations of** *Algebra and Trigonometry***, 2e. Invoice No. 220424 does not, and cannot, place any restrictions on Wiley's right to create or authorize translation of any content in** *Algebra and*

*Trigonometry*, 2e other than as it relates to the photographs identified therein. *See* **McCulloch Decl. Ex. 19.**

70.    Wiley distributed *Algebra and Trigonometry*, 2e in regions beyond North America. (McCulloch Decl. Ex. 2, Row 20.)

**Wiley Counter-Statement:  Not disputed.**

71.    Wiley created or authorized the publication of foreign translations of *Algebra and Trigonometry*, 2e.  (McCulloch Decl. Ex. 2, Row 20.)

**Wiley Counter-Statement:  Disputed.  Wiley did not create or authorize the publication of foreign translations of *Algebra and Trigonometry*, 2e.  Kliemann Decl. ¶ 5, 9-10.  McCulloch Decl. Ex. 2 Row 20 cites to no facts in support of the allegation that Wiley "created or authorized" foreign translations of *Algebra and Trigonometry*, 2e.   The Bates-range that Plaintiff identifies in McCulloch Decl. Ex. 2, Row 20 (WILEY-YW 0003779-3781) is a licensing agreement for an "*English Language* Reprint Agreement" between Wiley and a third party, authorizing the preparation of "a low-cost *English* Reprint" of *Algebra and Trigonometry*, 2e.  Kadyshevich Decl. Ex. F (emphasis added).**

## *Abnormal Psychology*, 10e

72.    The license obtained by Wiley for *Abnormal Psychology*, 10e under Invoice No. 213403 permitted Wiley to publish Plaintiff's photos in only 50,000 copies of that book. (McCulloch Decl. Ex. 20.)

**Wiley Counter-Statement:  Disputed to the extent that the statement:**

    **A.  Purports to refer to any photographs other than the Subject Photo MEN191DYW005-001 ("Baby Boy Gets Scared").  McCulloch Decl. Ex. 20.**

    **B.  Purports to alter the scope of Invoice No. 213403.  Wiley refers the Court to the terms of Invoice No. 213403 for its full meaning.  *Id.***

73.     Wiley printed over 50,000 copies of *Abnormal Psychology*, 10e.  (McCulloch Decl. Ex. 2, Row 21.)

**Wiley Counter-Statement:  Disputed.  Wiley does not dispute that it printed over 50,000 copies of *Abnormal Psychology*, 10e, but disputes that it printed the amount alleged in Ex. 2, Row 21 of the McCulloch Declaration.   Suarez Decl. ¶ 14.**

## *Abnormal Psychology*, 11e

74.     The license obtained by Wiley for *Abnormal Psychology*, 11e under Invoice No. 220969 did not permit any foreign translations to be created or authorized by Wiley. (McCulloch Decl. Ex. 21.)

**Wiley Counter-Statement:  Disputed.  Nothing in Invoice No. 220969 prohibits Wiley from creating or authorizing foreign translations of *Abnormal Psychology*, 11e.  McCulloch Decl. Ex. 21.  Invoice No. 220969 does not, and cannot, place any restrictions on Wiley's right to create or authorize translations of any content in *Abnormal Psychology*, 11e other than with respect to the photographs specifically identified therein.  *Id.***

75.     Wiley created or authorized the publication of foreign translations of *Abnormal Psychology*, 11e.  (McCulloch Decl. Ex. 2, Row 22.)

**Wiley Counter-Statement:  Disputed.  Wiley did not create or authorize the publication of foreign translations of *Abnormal Psychology*, 11e.  Kliemann Decl. ¶ 7, 9-10.  McCulloch Decl. Ex. 2 Row 20 cites to no facts in support of the allegation that Wiley "created or authorized" foreign translations of *Abnormal Psychology*, 11e.   The Bates-range that Plaintiff identifies in McCulloch Decl. Ex. 2, Row 22 (WILEY-YW 3959-3961) is a licensing agreement between the non-party entity John Wiley & Sons International Rights, Inc. and John Wiley & Sons (HK) Ltd for translation into a foreign**

language.  *See* Kliemann Decl. ¶ 7 and Ex. B. When Wiley International licenses the rights to create a foreign translation of this publication, its contract with the licensee expressly stated that the "grant of rights shall not apply to any text, illustrations or supplemental material from other sources that may be incorporated in the original" publication.  *See* Kliemann Decl. ¶ 7.

When Wiley International licenses the text of its publications for translation to third parties, neither Wiley nor Wiley International have any involvement with the day-to-day publishing activities of those entities.  Wiley and Wiley International do not supervise, control or direct the publication of the foreign-language versions.  *Id.* ¶ 9.  Similarly, neither Wiley nor Wiley International has any involvement with the day-to-day publishing activities of the entities that license translation rights from John Wiley & Sons (HK) Ltd.  Wiley and Wiley International do not supervise, control or direct the publication of the foreign-language versions produced pursuant to these licenses.  *Id.* ¶ 10.

## *Abnormal Psychology*, 12e

76.  The license obtained by Wiley for *Abnormal Psychology*, 12e under Invoice No. 225438 did not permit any foreign translations to be created or authorized by Wiley. (McCulloch Decl. Ex. 22.)

**Wiley Counter-Statement:  Disputed.  Nothing in Invoice No. 225438 prohibits Wiley from creating or authorizing foreign translations of *Abnormal Psychology*, 12e.  Rosenthal Decl. Ex. HH.  Invoice No. 225438 does not, and cannot, place any restrictions on Wiley's right to create or authorize translations of any content in *Abnormal Psychology*, 12e other than with respect to the photographs specifically identified therein.  *Id.***

77.     Wiley created or authorized the publication of foreign translations of *Abnormal Psychology*, 12e.  (McCulloch Decl. Ex. 2, Row 23.)

**Wiley Counter-Statement:  Disputed.  Wiley did not create or authorize the publication of foreign translations of *Abnormal Psychology*, 12e.  Kliemann Decl. ¶ 8, 9-10.  McCulloch Decl. Ex. 2 Row 23 cites to no facts in support of the allegation that Wiley "created or authorized" foreign translations of *Abnormal Psychology*, 12e.   The Bates-range that Plaintiff identifies in McCulloch Decl. Ex. 2, Row 22 (WILEY-YW 3962-4036) are licensing agreements between the non-party entity John Wiley & Sons International Rights, Inc. and third-parties for translation into foreign languages.  *See* Kliemann Decl. ¶ 8 and Ex. C. When Wiley International licenses the rights to create a foreign translation of this publication, its contract with the licensee explicitly stated that the "grant of rights shall not apply to any text, illustrations or supplemental material from other sources that may be incorporated in the original" publication.  *Id.***

**When Wiley International licenses the text of its publications for translation to third parties, neither Wiley nor Wiley International have any involvement with the day-to-day publishing activities of those entities.  Wiley and Wiley International do not supervise, control or direct the publication of the foreign-language versions.  *Id.* ¶ 9. Similarly, neither Wiley nor Wiley International has any involvement with the day-to-day publishing activities of the entities that license translation rights from John Wiley & Sons, Singapore Pte, Ltd and John Wiley & Sons (HK) Ltd.  Wiley and Wiley International do not supervise, control or direct**

the publication of the foreign-language versions produced pursuant to these licenses. *Id.* ¶ 10.

## *Clinical Psychology*

78. Wiley published Plaintiff's photo MEN681DYW041-001 in *Clinical Psychology* without a license. (McCulloch Decl. Ex. 2, Row 24.)

**Wiley Counter-Statement: Disputed. McCulloch Decl. Ex. 2 Row 24 cites to no facts in support of the allegation that the Subject Photo MEN681DYW041-001 was used in any Wiley publication with the title "*Clinical Psychology*." *See also* DSUMF ¶¶ 134-135.**

## *Visualizing Nutrition: Everyday Choices*, 1e

79. The license obtained by Wiley for *Visualizing Nutrition: Everyday Choices*, 1e under Invoice No. 221868 permitted Wiley to publish Plaintiff's photos in only 40,000 copies of that book and allowed distribution in North America only. (McCulloch Decl. Ex. 23.)

**Wiley Counter-Statement: Disputed. Wiley sent a request to PhotoEdit, dated June 29, 2009, for a license to use the Subject Photo MED785DYW075-001 ("Technician Instructs Man") in *Visualizing Nutrition: Everyday Choices*, 1e with "World English Language publication rights" with "estimated" print runs of under 40, 000. Kadyshevich Decl. Ex. G. PhotoEdit sent back an invoice that erroneously listed "North American" as the distribution rights (Invoice No. 221868). *Id.* McCulloch Decl. Ex. 23. PhotoEdit billed, and Wiley paid, $175.00 for use of MED785DYW075-001 in *Visualizing Nutrition: Everyday Choices*, 1e. Pursuant to the terms of the master pricing agreement between Wiley and PhotoEdit in place at the time that Wiley requested Invoice No. 221868, Wiley and PhotoEdit agreed that**

**Wiley would pay $175.00 for World distribution rights for print runs up to 100,000 copies.** *Id.* **Ex. B.**

80. Wiley printed over 40,000 copies of *Visualizing Nutrition: Everyday Choices*, 1e. (McCulloch Decl. Ex. 2, Row 25.)

**Wiley Counter-Statement: Disputed. Wiley does not dispute that it printed over 40,000 copies of *Visualizing Nutrition: Everyday Choices*, 1e, but disputes that it printed the amount alleged in Ex. 2, Row 25 of the McCulloch Declaration. Suarez Decl. ¶ 15. Wiley printed less than 100,000 copies of *Visualizing Nutrition: Everyday Choices*, 1e. *Id.***

81. Wiley distributed *Visualizing Nutrition: Everyday Choices*, 1e in regions beyond North America. (McCulloch Decl. Ex. 2, Row 25.)

**Wiley Counter-Statement: Not disputed.**

<b><u>Plaintiff's Licensing Agreement with PhotoEdit</u></b>

82. Plaintiff rejects the argument by Wiley that PhotoEdit had authority to pursue or settle copyright infringements related to Plaintiff's photos, including the infringements alleged in this lawsuit and that are at issue on this motion. (DYW Decl. ¶ 19.)

**Wiley Counter-Statement: Disputed. Wiley disputes this statement to the extent it does not specify which "photos" Plaintiff is referring to.**

**Further, whether Plaintiff "rejects" a particular "argument" by Wiley is not relevant to this motion.**

**Moreover, Wiley disputes the characterization of equating "licensing activities" with "settlement authority." Wiley disputes this statement to the extent it purports to, after the fact, limit the scope of rights that Plaintiff granted to PhotoEdit in their agreement. DSUMF ¶ 8.**

At his deposition, Plaintiff testified that he had a written agreement with PhotoEdit that had not changed since he was first represented by the agency in the mid-1990s. *See* DSUMF ¶¶ 6-17. *See also* Rosenthal Decl. Ex. A (Young-Wolff Dep. 14:20; 18:5-9). He testified that PhotoEdit "licenses the images" and they "split it fifty-fifty." *Id.* 14:13-17. Plaintiff testified that he "has no control over the terms of the license between PhotoEdit and the third party" to whom PhotoEdit licenses his work. *Id.* 15:24-16:3. He testified that PhotoEdit can license for whatever price it chooses (*id.* 16:4-6), for whatever print run it chooses (*id.* 16:7-19), in any geographic territory it chooses (*id.* 16:24-17:3) and in any language it chooses (*id.* 4-7). Plaintiff agreed that PhotoEdit was permitted to grant reuse and extension rights to third-parties, including Wiley. *Id.*, 59:13-65:23; 67:2-69:23. When asked, "Are you aware of any restrictions whatsoever on PhotoEdit's right to license the works that they've accepted from you?" Mr. Young-Wolff responded, "No." *Id.* 17:8-13.

When asked how he became aware that Wiley had allegedly infringed his copyrights, or what Wiley had done to infringe his rights, Plaintiff repeatedly refused to answer, claiming that the information was privileged. *See, e.g.*, *id.* 18:5–19:25; 41:7-21; 70:16-71:3; 84:11-25.

83. Plaintiff was never informed by either Wiley or PhotoEdit that Wiley had exceeded the terms of any licenses or was seeking an "extension" of rights due to its determination that it already had violated a prior license. (DYW Decl. ¶ 20.)

**Wiley Counter-Statement:** **Disputed but immaterial. Wiley disputes this statement to the extent it does not specify which "photos" Plaintiff is referring to.**

Wiley further disputes this statement on the grounds that PhotoEdit provided to Plaintiff royalty statements which identified the publications (with the ISBN number) in which PhotoEdit had licensed use, reuse, and extension rights for the Subject Photos.  *See, e.g.*, DSUMF ¶¶ 22, 37, 59, 72.  This indicated to Plaintiff that the Subject Photos were licensed more than once for use in that publication.

Wiley further disputes this statement to the extent it purports to:  (1) after the fact, limit the scope of rights that Plaintiff granted to PhotoEdit in their agreement; (*see* Wiley Counter-Statement to paragraph 82, *supra*); (2) suggest that PhotoEdit had an obligation to inform Plaintiff when it granted extension rights (*id.*); (3) suggest that Plaintiff had ever requested from PhotoEdit information regarding the licenses it granted Wiley. Plaintiff never contacted PhotoEdit for information regarding the print runs that Wiley licensed, never requested to review or audit PhotoEdit's records and never asked whether Wiley had exceeded the terms of any of its licenses for Young-Wolff's photographs (DSUMF ¶ 14); or (4) suggest that Wiley had any obligation to inform Plaintiff of its licensing activities with PhotoEdit (*see, e.g.*, *Young-Wolff v. McGraw-Hill Companies*, No. 13 Civ. 4372, 2014 WL 349711, at *6 (S.D.N.Y. Jan. 31, 2014) ("Plaintiff points to neither case law nor language in the Copyright Act indicating that a copyright owner has an inherent right to sue a licensee for an audit")).

84.     PhotoEdit never notified Plaintiff that it was negotiating license "extensions" with Wiley in order to supposed retroactively cure misuses of Plaintiff's photos.  (DYW Decl. ¶ 22.)

**Wiley Counter-Statement:** Disputed but immaterial. DYW Decl. ¶ 22 cites to no evidence in support of the allegation that Wiley "misused" any of Plaintiff's photos, and incorporates its Counter-Statements to paragraphs 82 and 83, *supra*.

85. PhotoEdit never notified Plaintiff that it was negotiating a settlement with Wiley related to violations of his copyrights. (DYW Decl. ¶ 23.)

**Wiley Counter-Statement:** Disputed. Wiley disputes that PhotoEdit negotiated any "settlements" with Wiley with regard to "violations of his copyrights." DWY Decl. ¶ 23 cites to no evidence in support of this allegation. Wiley and PhotoEdit entered into numerous, valid licenses and license extensions that were authorized by Plaintiff. *See, e.g.*, DSUMF ¶¶ 19, 20, 37, 59, 72. Plaintiff received and accepted payment for the licenses and license extensions Wiley obtained from PhotoEdit. *Id.* ¶¶ 22, 59, 72, 81. Wiley incorporates its Counter-Statements to paragraphs 82 and 83, *supra*.

86. Plaintiff was not aware that Wiley was contacting PhotoEdit requesting license "extensions" intended to somehow cure violations of his copyrights. (DYW Decl. ¶ 24.)

**Wiley Counter-Statement:** Disputed. Wiley incorporates its Counter-Statements to paragraphs 82, 83 and 85, *supra*.

87. Plaintiff's licensing agreement with PhotoEdit is non-exclusive. (DYW Decl. ¶ 26.)

**Wiley Counter-Statement:** Not disputed but immaterial.

88. Plaintiff did not license any of the images at issue in this action to PhotoEdit on an exclusive basis. (DYW Decl. ¶ 26.)

**Wiley Counter-Statement:** Not disputed but immaterial.

89.     Plaintiff's licensing agreement with PhotoEdit did not grant, transfer, or convey his copyrights in any photographs to PhotoEdit and Plaintiff has never otherwise conveyed or transferred any of his copyrights in any photos to PhotoEdit.  (DYW Decl. ¶ 27).

**Wiley Counter-Statement:   Not disputed but immaterial.**

90.     Plaintiff did not give PhotoEdit any authority to negotiate settlements on his behalf intended to release my claims for copyright infringement against Wiley, including any of his claims that are at issue in this lawsuit.  (DYW Decl. ¶ 28.)

**Wiley Counter-Statement:   Disputed.  DYW Decl. ¶ 27 cites to no evidence in support of this allegation.  Wiley and PhotoEdit entered into valid licenses and license extensions that were authorized by Plaintiff.  *See, e.g.*, DSUMF ¶¶ 19, 20, 37, 59, 72.  Plaintiff received and accepted payment for the licenses and license extensions Wiley obtained from PhotoEdit.  *See id.*, *e.g.*, ¶¶ 22, 59, 72, 81, 88.  Wiley disputes that PhotoEdit negotiated any "settlements" with Wiley with respect to Plaintiff's "claims for copyright infringement against Wiley."  Wiley incorporates its Counter-Statements to paragraphs 82, 83 and 85, *supra*.**

91.     Plaintiff did not authorize PhotoEdit to grant any retroactive license to Wiley that would excuse any of Wiley's infringements of his copyrights, including any infringements at issue in this suit.  (DYW Decl. ¶ 29.)

**Wiley Counter-Statement:   Disputed.  Wiley incorporates its Counter-Statements to paragraphs 82, 83, 85 and 89, *supra*.**

92.     Plaintiff never told Wiley that PhotoEdit had authority to grant retroactive licenses to Wiley that would somehow excuse Wiley's copyright infringements, including any infringements at issue in this suit.  (DYW Decl. ¶ 30.)

**Wiley Counter-Statement:   Disputed.   Wiley incorporates its Counter-Statements to paragraphs 82, 83, 85 and 90, *supra*.**

**Wiley's Pattern of Copyright Abuse**

93.     Wiley has been sued in numerous jurisdictions by photographers and stock photo licensing agents for copyright infringement related to Wiley's violations of licenses and unauthorized publishing of photos, including in the following cases:

- *John Wiley & Sons, Inc. v. Hiser*, No. 1:09-cv-4307 (S.D.N.Y.);
- *Grant Heilman v. John Wiley & Sons, Inc.*, No. 5:11-cv-01665 (E.D. Penn.);
- *Visuals Unlimited, Inc. v. John Wiley & Sons, Inc.*, No. 1:11-cv-0415 (D.N.H.);
- *Degginger v. John Wiley & Sons, Inc.*, No. 2:11-cv-06600 (E.D. Penn.)
- *Bean v. John Wiley & Sons, Inc.*, No. 3:12-cv-8001 (D. Ariz.)
- *DRK Photo v. John Wiley & Sons, Inc.*, No. 3:11-cv-8133 (D. Ariz.)
- *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-2090 (S.D.N.Y.)
- *Frerck v. John Wiley & Sons, Inc.*, No. 1:11-cv-2727 (N.D. Ill.);
- *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (S.D.N.Y.);
- *Warren v. John Wiley & Sons, Inc.*, No. 12-cv-05070 (S.D.N.Y.);
- *Rubin v. John Wiley & Sons, Inc.*, No. 12-cv-05071 (S.D.N.Y.);
- *Panoramic Stock Images v. John Wiley & Sons, Inc.*, No. 12-cv-10003 (N.D. Ill.);
- *Beasley v. John Wiley & Sons, Inc.*, No. 12-cv-8715 (N.D. Ill.);
- *Minden Pictures v. John Wiley & Sons, Inc.*, No. 12-cv-04601 (N.D. Cal.);
- *Senisi v. John Wiley & Sons, Inc.*, No. 13-cv-3314 (S.D.N.Y.);
- *Dwight v. John Wiley & Sons, Inc.*, No. 14-cv-6742 (S.D.N.Y);
- *Gibson v. John Wiley & Sons, Inc.* No. 14-cv-6743 (S.D.N.Y);
- *Wells v. John Wiley & Sons, Inc.* No. 14-cv-6745 (S.D.N.Y); and
- *Wu v. John Wiley & Sons, Inc.* No. 14-cv-6746 (S.D.N.Y).

(McCulloch Decl. Ex 27 to 45.)

**Wiley Counter-Statement:   Disputed but immaterial.  Wiley refers the Court to the cases cited by Plaintiff in paragraph 93 for the allegations therein and disputes Plaintiff's conclusory statement that the existence of these lawsuits establishes that it committed "violations of licenses and unauthorized publishing of photos."**

94.     During pendency of *Degginger v. John Wiley & Sons, Inc.*, No. 2:11-cv-06600 (E.D. Penn.), Wiley attempted to extinguish the plaintiff's infringements claims by purchasing a

supposed "retroactive license extensions" from the plaintiff's licensing agents without informing the plaintiff it was doing so and without informing the licensing agents that the licenses violations that led to the need for the "extensions" were at issue in a pending federal lawsuit.  (McCulloch Decl. Ex. 53.)

**Wiley Counter-Statement:**   **Disputed but immaterial.  Wiley refers to the proceedings in** ***Degginger v. John Wiley & Sons, Inc.***, **No. 2:11-cv-06600 (E.D. Penn.) for the truth and meaning of their contents.**

95.     In the *Bean* action, Wiley admitted to numerous infringements (*see* Dkt. No. 100) and subsequently was held liable on summary judgment for 108 counts of copyright infringement. *See Bean v. John Wiley & Sons, Inc.*, No. 12-cv-8001, 2012 WL 1078662, at *3 (D. Ariz. March 30, 2012).

**Wiley Counter-Statement:**   **Not disputed but immaterial.  Wiley refers to the proceedings in** ***Bean v. John Wiley & Sons, Inc.***, **No. 12-cv-8001, 2012 WL 1078662, at *3 (D. Ariz. March 30, 2012) for the truth and meaning of their contents.**

96.     Following the *Bean* Court's finding of liability against Wiley on summary judgment, Wiley settled those claims.   *See Bean* Dkt. No. 126 (D. Ariz. May 29, 2012). (McCulloch Decl. Ex. 49.)

**Wiley Counter-Statement:**   **Not disputed but immaterial.**

97.     In *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (S.D.N.Y.), Wiley was found liable by a jury for 2 willful infringements and 1 non-willful infringement and the jury awarded the plaintiff $130,000 for the two willful infringements.  The District Court (Oetken, J.) denied Wiley's motion for remittitur and affirmed the jury's finding of willfulness.  *See Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (JPO), 2102 WL 5506121 (S.D.N.Y. Nov. 7, 2012).

**Wiley Counter-Statement:**   **Not disputed but immaterial.**

98.      During discovery in *Psihoyos*, Wiley admitted that it published Mr. Psihoyos'

photos without a license in the books that also are at issue here, including: *Psychology in Action*,

8th Edition; *Psychology in Action*, 9th Edition; *Visualizing Psychology*, 1st Edition; and

*Visualizing Psychology*, 2nd Edition.  (*See* McCulloch Decl. Ex. 63.)

**Wiley Counter-Statement:**   **Not disputed but immaterial.  Wiley refers to the proceedings**

**in *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (S.D.N.Y.) (JPO) for the truth and**

**meaning of their contents.**

99.      During discovery in *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-2090 (S.D.N.Y.),

Wiley admitted and stipulated to exceeding the print run of its license and republishing the

plaintiff's photos in a subsequent edition of the book without a license.  (McCulloch Decl. Ex. 54.)

**Wiley Counter-Statement:**  **Not disputed but immaterial.  Wiley refers to the proceedings**

**in *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-2090 (S.D.N.Y.) for the truth and meaning of**

**their contents.**

100.      In *Warren v. John Wiley & Sons, Inc.*, No. 12-cv-05070 (S.D.N.Y.), the parties

agreed to settle the claims in suit involving a single photo for ███████, but Wiley is failing to

honor the agreement to settle.  (*See Warren* Dkt. No. 83, Motion to Enforce Settlement.)

**Wiley Counter-Statement:**  **Disputed but immaterial.  Wiley refers to the proceedings in**

***Warren v. John Wiley & Sons, Inc.*, No. 12-cv-05070 (S.D.N.Y.) for the truth and meaning of**

**their contents.**

101.     Wiley settled the copyright infringement claims against it in *Rubin v. John Wiley & Sons, Inc.*, No. 12-cv-05071 (S.D.N.Y.).  *See Rubin* Dkt. No. 53. (S.D.N.Y. 2012).  (McCulloch Decl. Ex. 48.)

**Wiley Counter-Statement:  Not disputed but immaterial.**

102.     In *Beasley v. John Wiley & Sons, Inc.*, No. 12-cv-8715 (N.D. Ill.), Wiley was held liable on summary judgment for copyright infringement involving claims that Wiley both exceeded the print run terms of its license to use the plaintiff's photos and then republished his photos in a subsequent edition without permission or a license.  *See Beasley v. John Wiley & Sons, Inc.*, No. 12-cv-8715, 2014 WL 3600519 at * 7 (N.D. Ill. 2014).

**Wiley Counter-Statement:  Not disputed but immaterial.**

103.     In *Panoramic Stock Images v. John Wiley & Sons, Inc.*, No. 12-cv-10003 (N.D. Ill.), the jury entered judgment against Wiley on multiple counts of willful copyright infringement and award the plaintiff damages in the amount of $403,500.00.  *See Panoramic* Dkt. No. 180 (N.D. Ill. 2012).  (McCulloch Decl. Ex. 62.)

**Wiley Counter-Statement:  Not disputed but immaterial.**

104.     In *Minden Pictures v. John Wiley & Sons, Inc.*, No. 12-cv-04601 (N.D. Cal.), Wiley successfully argued that licensing agents do not have standing or authority to pursue copyright infringement claims related to copyrights owned by their contributing photographers.  *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d 1117, 1125 (N.D. Cal. 2014)

**Wiley Counter-Statement: Disputed to the extent that this statement purports to suggest that Wiley's arguments go beyond the facts presented in the case *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d 1117, 1125 (N.D. Cal. 2014), but nevertheless immaterial.  Wiley refers to the proceedings in *Minden Pictures, Inc. v.***

***John Wiley & Sons, Inc.*, 10 F. Supp. 3d 1117, 1125 (N.D. Cal. 2014) for the truth and meaning of their contents.**

105.    Wiley's Answer in *Minden Pictures* was filed on October 18, 2012, and alleged that Plaintiff did not have standing to assert copyright claims.  *See Minden* Dkt. No. 16. at 4, 18.

<u>**Wiley Counter-Statement:**</u>  **Not disputed but immaterial.**

Dated: New York, New York
       May 8, 2015

                              FRANKFURT KURNIT KLEIN & SELZ, P.C.


                              By:___/s/ Edward H. Rosenthal_____
                                     Edward H. Rosenthal
                                     Anna Kadyshevich
                                     Andrew D. Jacobs
                              488 Madison Avenue, 10th Floor
                              New York, New York 10022
                              Phone:  (212) 980-0120
                              Fax:  (212) 593-9175
                              erosenthal@fkks.com

                              *Attorneys for Defendant John Wiley & Sons, Inc.*