UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                               :

DAVID YOUNG-WOLFF,                  :

                         Plaintiff,   :       12-CV-5230 (JPO)

                                 :

             -v-                :       OPINION AND ORDER

                                 :

JOHN WILEY & SONS, INC.,          :

                         Defendant.  :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Photographer David Young-Wolff ("Plaintiff") filed this copyright infringement action

against John Wiley & Sons, Inc. ("Defendant" or "Wiley"), a publishing company.  (Dkt. No. 1.)

Following discovery, the parties have filed cross-motions for partial summary judgment.  (Dkt.

Nos. 85, 90.)  For the reasons that follow, both parties' motions are granted in part and denied in

part.

## I.      Background

      The following facts are undisputed unless otherwise noted.  Plaintiff is a self-employed

professional photographer who earns money taking and licensing photos.  (Dkt. No. 96 ¶ 1.)

Plaintiff licenses his photography, including the seventeen photos identified in the Complaint,

through "licensing agents" such as PhotoEdit, Inc. ("PhotoEdit").  (Id. ¶¶ 3-4.)  In essence,

PhotoEdit sells permission to use Plaintiff's photographs to third parties and then splits the

proceeds with Plaintiff.  (Id. ¶ 4; Dkt. No. 102 ¶ 9.)  The terms on which a third party, such as a

textbook publisher, may use the photos obtained from a licensing agent are memorialized in

licensing agreements.  (See Dkt. No. 91 at 14; Dkt. No. 88 at 16.)

      Plaintiff alleges that Wiley unlawfully exploited several of his copyrighted works by

obtaining the photographs from PhotoEdit and then publishing them in a manner outside the

1

scope of its licenses.  (*See* Dkt. No. 91 at 2.)  For instance, Wiley is alleged to have made

unauthorized sales outside North America, exceeded the approved print-run, and allowed

foreign-language translations without permission.  (Dkt. No. 93 "McCulloch Decl." Ex. 2.)

Plaintiff moves for summary judgment as to liability on thirty-four of the total thirty-seven

unauthorized uses ("Infringements at Issue") identified in his Local Rule 56.1 Statement of

Proposed Undisputed Facts.  (Dkt. No. 93 "Pl. 56.1 Statement" ¶ 31.)  Among other things,

Plaintiff also seeks summary judgment that his copyright registrations in the relevant

photographs are valid, and that Wiley's license violations were willful.  (*See, e.g.*, Dkt. No. 91 at

9, 25.)  Wiley cross-moves for summary judgment on thirty-seven uses on the grounds that

"Wiley never made eleven of the uses" and that "twenty-six of the uses at issue complied with

the licenses Wiley obtained from Plaintiff's authorized agent."[1]  (Dkt. 88 at 1.)

The chief point of contention between the parties concerns the effect of so-called

"retroactive" license agreements between PhotoEdit and Wiley.  Wiley purchased many of its

licenses from PhotoEdit only *after* it published Plaintiff's photographs without authorization.

(*See* Dkt. No. 91 at 3; Dkt. No. 88 at 14-15.)  Plaintiff argues that the licenses between PhotoEdit

and Wiley did not retroactively extinguish his claims for copyright infringement—both as a

matter of law and on the facts of this case.  (Dkt. No. 91 at 2-3.)  Wiley contends that PhotoEdit

---

[1] Wiley argues that some of the Infringements at Issue were not included in the Complaint and thus are not properly before the Court.  (Dkt. 88 at 4 n.2.)  For instance, while Plaintiff's Complaint specifically alleges that image MUS401DY1095-001 was published in *College Algebra 1e* and *College Algebra 2e*, the Infringements at Issue also include the publication of that same image in *College Algebra 3e*.  (*See* Compl. ¶¶ 30, 31.)  Given the substantial similarity between the Infringements at Issue not named in the Complaint and those allegations that were specifically alleged in the Complaint, the Court is satisfied that Defendant received fair notice of the Infringements at Issue, against which it must defend.  That said, Plaintiff's claims in this action are limited to the seventeen photographs identified in the Complaint.  (*See* Dkt. 38 at 8.)  As a result, any claim related to the photograph labeled YNG421DYW122-001 is not properly before the Court.  (*See* McCulloch Decl. Ex. 2 at Row 8.)

had the authority to enter into retroactive license agreements on Plaintiff's behalf, meaning

Plaintiff cannot now sue for copyright infringement based on uses authorized by the licenses.

## II.      Discussion

### A.      Standard for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact is

material if it "might affect the outcome of the suit under the governing law."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if, considering the record as

a whole, a rational jury could find in favor of the non-moving party.  *Ricci v. DeStefano*, 557

U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586-87 (1986)).  This familiar standard applies even when the parties file cross-motions for

summary judgment, as "each party's motion must be examined on its own merits, and in each

case all reasonable inferences must be drawn against the party whose motion is under

consideration."  *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing

*Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

### B.      Standard for Copyright Infringement

To sustain a claim for copyright infringement, a plaintiff must show "(i) ownership of a

valid copyright; and (ii) unauthorized copying of the copyrighted work."  *Psihoyos v. John Wiley*

*& Sons, Inc.*, No. 11-CV-1416 (JSR), 2011 WL 4916299, at *1 (S.D.N.Y. Oct. 14, 2011)

(quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003)).  In proving ownership

of a valid copyright, the Copyright Act ("the Act") "requires copyright holders to register their

works before suing for copyright infringement."  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154,

157 (2010) ("Section 411(a)'s registration requirement is a precondition to filing a claim" for

copyright infringement); *see* 17 U.S.C. § 411(a).  "[A] claim for copyright infringement will fail

if the challenged use of the copyrighted work is authorized by a license."  *Wu v. Pearson Educ.,

Inc.*, No. 10-CV-6537 (KBF), 2013 WL 145666, at *4 (S.D.N.Y. Jan. 11, 2013) (citing *Graham

v. James*, 144 F.3d 229, 236 (2d Cir. 1998)).  When the "contested issue is the *scope* of a license,

rather than the *existence* of one, the copyright owner bears the burden of proving that the

defendant's copying was unauthorized under the license . . . ."  *Graham*, 144 F.3d at 236; *see

Bourne v. Walt Disney Co.*, 68 F.2d 621, 631 (2d Cir. 1995).

       **C.**     **Copyright Registration**

As a preliminary matter, Plaintiff requests summary judgment holding that "Plaintiff's

copyright registrations are valid and entitle Plaintiff, if he chooses, to elect statutory damages at

trial on all claims."  (Dkt. No. 91 at 1.)  Section 412 of the Act establishes registration as a

prerequisite to certain remedies for infringement, including statutory damages.  17 U.S.C. § 412.

In support of his motion, Plaintiff submits copies of the relevant certificates of registration for

thirteen photos.  (Dkt. No. 92 Exs. 2-11.)  Defendant does not dispute that Plaintiff registered his

copyrights in the thirteen photographs at issue.  (Dkt. No. 96 ¶¶ 7-30.)  Nor does Defendant

oppose summary judgment on this point in its response to Plaintiff's motion.  (*See* Dkt. No. 99.)

Accordingly, there is no genuine dispute of material fact on the issue of whether the photographs

were properly registered.  Plaintiff may, in conformity with the timing provisions proscribed by

Section 412, elect to seek statutory damages for any infringements that commenced after the

effective date of a copyright's registration.  *See Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158-

59 (2d Cir. 2007).

### D.     Defendant's Motion for Summary Judgment on Eleven Uses

Defendant seeks summary judgment on eleven of the infringing uses alleged in the Complaint because plaintiff has failed to "provide evidence to raise an issue of fact as to actual use." (Dkt. No. 88 at 6; *see id.* at 5-7.)

"To prevail on a motion for summary judgment, the defendant[] must demonstrate the absence of material evidence supporting an essential element of [Plaintiff's] copyright infringement claim." *Jorgensen*, 351 F.3d at 50-51; *see Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Plaintiff's claims require a showing that Wiley made unauthorized *use* of copyrighted works. *Jorgensen*, 351 F.3d at 51; *see Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Such claims are necessarily defeated if Wiley never used the photographs at issue.

In its Local Rule 56.1 Statement of Proposed Undisputed Facts, Defendant outlines eight instances in which—contrary to the allegations in the Complaint—Plaintiff's photographs never appeared in Defendant's publications. (*See* Dkt. No. 89 ¶¶ 29, 31, 33, 61, 63, 65, 83, 113.) Plaintiff does not "contest[] for the purposes of this motion" Defendant's claim that these eight uses never occurred. (See Dkt. No. 102 ¶¶ 29, 31, 33, 61, 63, 65, 83, 113.) In light of that admission, and because Plaintiff does not otherwise offer material evidence that could support the conclusion that these publications feature the photographs at issue, Defendant's motion for summary judgment on these eight alleged infringements is granted.

Defendant also seeks summary judgment on three uses alleged in the Complaint because "Plaintiff has failed to provide any evidence of actual copying." (Dkt. No. 88 at 6-7; *see* Compl. ¶¶ 38, 42, 43.) Plaintiff does not "contest[] for the purposes of this motion" Wiley's assertion. (Dkt. No. 102 ¶¶ 119, 133, 135.) Because there is an "absence of material evidence supporting

an essential element of [Plaintiff's] copyright infringement claim," Defendant's motion for summary judgment on these three uses is also granted. *Jorgensen*, 351 F.3d at 50.

### E.    Retroactive License Issue

At the core of this case is a dispute about whether certain license agreements between Wiley and PhotoEdit had the effect of retroactively extinguishing Plaintiff's claims for copyright infringement. Three questions arise. First, as a matter of law, can an agreement between a licensing agent and a third party retroactively cure claims of infringement asserted against that third party by the exclusive license holder? Second, did the license agreements at issue here, by their own terms, act retroactively? Third, did PhotoEdit, as Plaintiff's agent, have the authority to convey a retroactive license to Wiley? These questions are addressed in turn.

#### 1.    Retroactive Licenses Generally

Plaintiff contends that "[a] retroactive license issued by [his] licensing agent cannot extinguish [his] accrued claims" for copyright infringement. (Dkt. No. 91 at 14.) In his view, only the exclusive owner of a copyright may authorize a retroactive license. (*Id.* at 14-15.) This result, Plaintiff says, is dictated by the Second Circuit's holding in *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007), in which the court held that the "retroactive" transfer of copyright ownership by one co-author could not defeat an action for infringement brought by another co-author. Defendant, on the other hand, argues that *Davis* is "limited to the unique circumstance of retroactive transfers and licenses by a copyright co-owner" and does not preclude "retroactive licensing by non-copyright owners." (Dkt. No. 99 at 6-7.)

This Court joins others in this district in concluding that *Davis* is addressed to the co-ownership context and does not preclude retroactive licenses granted by an agent when that agent has been given such authority by the copyright owner. *See Spinelli v. National Football League*,

96 F. Supp. 3d 81, 123-24 (S.D.N.Y. 2015) ("[T]he holding in *Davis* was a narrow one that does not apply to the facts here . . . ."); *Wu*, 2013 WL 145666, at * 4 ("[T]here is no legal prohibition to obtaining a retroactive license if it is authorized by the rights holder."); *see also Canon Inc. v Tesseron Ltd.*, No. 14-CV-5462 (DLC), 2015 WL 7308663, at *6 (S.D.N.Y. Nov. 19, 2015) ("As far as the *Davis* case is concerned, neither the legal principles nor public policy undergirding the opinion recommend a reading that would indiscriminately ban all copyright- or patent-holders, even sole owners, from voluntarily entering into retroactive license agreements.").

As a foundational matter, "the concept of agency posits a consensual relationship in which one person, to one degree or another . . . acts on behalf of another person with the power to affect the legal rights and duties of another person." Restatement (Third) of Agency § 1.01 (2006). Plaintiff must offer some reason why the ordinary presumption that an agent may act to affect the legal claims of a principal does not apply when a licensing agent grants a retroactive license to a third party.

Plaintiff finds such a reason in *Davis*, reading it for the proposition that only the "exclusive" owner of the rights being licensed—in this case, Plaintiff himself—may enter into a retroactive license agreement. (Dkt. No. 91 at 14-15.) It is true that *Davis* contains language that, in isolation, appears to support this position. *See, e.g.,* 505 F.3d at 104 ("[W]e hold that a license or assignment in copyright can only act prospectively.") But the driving force behind *Davis* was a concern that a "non-consenting co-owner" would have her "valuable and vested right to enforce her claim" destroyed by the act of another. *Id.* at 103. The *Davis* court affirmed that "an owner who wishes to release unilaterally his own accrued claims may do so . . . but such an agreement cannot have the effect of eviscerating a co-owner's claims . . . ." *Id.* at 104.

7

The court in *Davis* articulated two policy reasons supporting its holding: "the need for predictability and certainty" and "discouragement of infringement." *Id.* at 104-05.  Plaintiff argues that these same interests, especially the deterrence of infringement, favor the extension of *Davis* beyond the context of co-ownership.  This argument is unpersuasive.  As to predictability, the court noted that "[i]f retroactive transfers and licenses were permissible, one could never reliably and definitively determine if and when an infringement occurred, because an infringement could be 'undone' by the very sort of maneuver attempted by defendants in this case." *Id.* at 105.  When co-authors license a joint work independently, the complexity of determining who may sue and who may be sued multiplies exponentially, but where single authors are concerned, the retroactive license adds little more complication than an ordinary settlement.  *See Canon*, 2015 WL 7308663, at *6 ("Determining when and if infringement has occurred is not difficult for a sole owner . . . ."); 1 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 6.10 n.48 (2015) ("Nimmer") ("Though [*Davis'* first rationale is] stated categorically, it would seem that this danger arises in the context of joint works, not as to works by solitary authors.").

As for the need to deter infringement, the *Davis* court was concerned with the increased leverage an infringer would receive when dealing with independent co-authors, each of whom may settle a claim on behalf of all owners.[2]  *See Davis*, 505 F.3d 90 at 106 ("[A] retroactive

---

[2] Dicta in *North Jersey Media Grp. v. Pirro*, No. 13-CV-7153 (ER), 2015 WL 1086566 (S.D.N.Y. Mar. 9, 2015), supports Plaintiff's view that the "holding [in *Davis*] extended beyond the context of co-ownership." *Id.* at *4 n.6.  For the reasons articulated here, this Court declines to adopt a broader reading of *Davis*.  Moreover, despite its interpretation of *Davis*, *Pirro* distinguished *Wu* on the grounds that "the *Wu* decision was clearly animated by principles of estoppel.  There it was undisputed that the plaintiff authorized his agents to enter into licensing agreements for the use of his photographs, including retroactive agreements, and was paid pursuant to those agreements." *Id.*  At present, the question is whether, as a matter of law, an agreement between a licensing agent and a third-party can retroactively cure claims of

license or assignment [could] be obtained from a co-owner not bringing suit, or one willing to settle for a lower price than the co-owner bringing the action [which] is likely to cost much less . . . ."); *see also* 1 Nimmer § 6.10 ("A blatant pirate, if sued by five, could presumably pick off one of the remaining 15 co-owners more cheaply than it would cost to settle with all the name plaintiffs.")  This concern is not present in the sole-ownership context.

Plaintiff also argues that the Copyright Act, because it authorizes only the "legal or beneficial owner of an exclusive right . . . to institute an action for any infringement," renders these retroactive licenses invalid as a matter of law.  17 U.S.C. § 501(b).  But the fact that an agent lacks standing to independently bring a suit does not bear on that agent's ability to act on behalf of its principal and affect its principal's legal rights.  For that reason, it is of little consequence that courts have held that licensing agents lack standing to pursue copyright claims on behalf of contributing photographers.  *See, e.g., John Wiley & Sons, Inc., v. DRK Photo*, 998 F. Supp. 2d 262, 277-78 (S.D.N.Y. 2014).[3]

Because neither *Davis* nor the text of the Copyright Act requires a different result, an agreement between a licensing agent and a third party can, as a matter of law, retroactively cure claims of infringement asserted against that third party by the exclusive license holder.

---

infringement asserted against that third party by the exclusive license holder.  For purposes of answering that legal question, the Court assumes that the licensing agent was empowered—under ordinary principles of agency law—to enter into such an agreement on the exclusive license holder's behalf.

[3] Because there is no inconsistency between a licensing agent's lack of standing to bring such a claim and Wiley's present position on the effect of retroactive licenses, the Court rejects Plaintiff's argument that Wiley is "estopped from taking [such] contradictory positions."  (Dkt. No. 91 at 19-20.)

2.      **The Licenses At Issue**

Having determined that a license agreement issued by an authorized agent may

retroactively cure claims of infringement, the Court turns to the question whether the agreements

between PhotoEdit and Wiley—by their own terms—had retroactive effect.  In construing

copyright licenses, courts "rely on neutral principles of contract interpretation rather than

solicitude for either party."  *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,* 145

F.3d 481, 487 (2d Cir. 1998); *Spinelli*, 96 F. Supp. 3d at 122; *Wu*, 2013 WL 145666, at *4.

"This principle favors neither licensors nor licensees.  It follows simply from the words of the

contract."  *Boosey*, 145 F.3d at 487.

Plaintiff offers a variety of textual arguments for why the licenses at issue in this case did

not have retroactive effect.  Chief among them, Plaintiff argues that the licenses granted Wiley

only prospective rights because "none of the licenses issued by PhotoEdit state" in express terms

"that they apply retroactively."[4]  (Dkt. No. 91 at 14.)  In response, Wiley urges the Court not to

read unwritten restrictions on use into the licenses.  (Dkt. No. 104 at 3.)

---

[4] Plaintiff also argues that licenses purporting to grant rights for the "life of the edition" should not cover "books [that] already were out of print" prior to issuance of the license because "there was no more 'life' of the edition."  (Dkt. No. 100 at 8-9.)  This construction does not comport with the natural meaning of that phrase.  Just as one can refer to the "life" of a person already deceased, the Court declines to read "life of the edition" as excluding uses that occurred prior to the license agreements.  In addition, the Court notes that a 2012 agreement between PhotoEdit and Wiley defined "life of the edition" as "for so long as any version of the edition of the title is available from Wiley or any of its licensees in any format including copies manufactured or electronically transmitted on demand."  (*See* Dkt. No. 97-2.)

     For similar reasons, the Court rejects Plaintiff's proposed construction of the term "reprint."  The fact that a license referred to a "reprint" does not mean that this license concerns only printings that *temporally* follow the license.  A reprint, ordinarily understood as the act of printing more copies of a work, could have occurred prior to the license agreement and still fall within the terms of that agreement.  (*See* McCulloch Decl. Ex. 2, Row 9.)

This Court joins *Wu* and *Spinelli* in rejecting the notion that "absent express language, a license cannot apply retroactively." *Wu*, 2013 WL 145666, at *5 ("The Court declines to read additional, unstated limits into otherwise clear contracts between sophisticated parties."); *Spinelli*, 96 F. Supp. 3d at 124-125.  By their terms, these licenses give Wiley permission to use specific photographs in specific publications, subject to stated conditions; without any reference to prospective or retroactive use, the licenses are presumed to cover both.  (*See, e.g.,* Dkt. No. 86 ("Rosenthal Decl.") Exs. C, F, J, U, Y, CC.)

There is no persuasive reason to adopt a rule requiring licenses to expressly acknowledge and sanction a retroactive use if the clear terms of the license otherwise permit the use.  It is true that dicta in *Davis* lends support for the proposition that a "license" should expressly acknowledge retroactive infringement in order to function like a "settlement" and extinguish existing claims for copyright infringement.  *Davis*, 505 F.3d at 103 ("Unlike a settlement, which recognizes an unauthorized use but waives a settling owner's accrued claims of liability, a retroactive license . . . would—if given legal effect—erase the unauthorized use from history . . . .")  But elsewhere the court in *Davis* recognized that "[a]n owner who wishes to release unilaterally his own accrued claims may do so using whatever language he chooses—including by calling the negotiated settlement the proverbial 'banana'. . . ."  *Id.* at 104; *see also* 1 Nimmer § 6.10 n.44.  If an agreement styled "banana" can retroactively extinguish past claims, so can an agreement termed a "license."

Separately, Plaintiff suggests that the licenses should be invalidated because they were procured by duplicitous means.  (*See* Dkt. No. 91 at 17-19.)  Although evidence of fraud could invalidate these licenses, Plaintiff has plainly failed to offer such evidence.  *See Wu*, 2013 WL 145666, at *4 ("[A]llegations of fraud . . . could potentially invalidate the licenses . . . .")  The

11

fact that a license applies retroactively without saying so explicitly is not fraud.  That Wiley procured licenses in order to avoid legal liability is not fraud—the very purpose of a license is to provide the licensee with a defense to claims of copyright infringement.

In sum, the agreements at issue between PhotoEdit and Wiley had retroactive effect. (*See, eg.*, Rosenthal Decl. Exs. C, F, J, U, Y, CC.)

### 3.    The Agency Relationship

Even if the licenses in question purport to act retroactively, the question remains whether PhotoEdit, as Plaintiff's agent, had the authority to convey a retroactive license to Wiley.  Based on the record evidence presented on this motion, PhotoEdit had actual authority to convey retroactive licenses on Plaintiff's behalf and no reasonable jury could find otherwise. Defendant's motion for summary judgment on this point is granted.

Wiley contends that PhotoEdit had "*actual authority* to enter into license extensions on [P]laintiff's behalf."  (Dkt. No. 104 at 7 n.6 (emphasis in original).)  "Actual authority 'is the power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him.'"[5]  *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003) (citing *Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996)).  "The consent necessary for actual authority may be 'either express or implied from the parties' words and conduct as

---

[5] Because neither party has produced a copy of the agreement between PhotoEdit and Plaintiff, there is no choice-of-law provision to consult in determining what agency law to apply. Moreover, neither party has affirmatively raised the issue of choice of law or suggested that a particular body of agency law should apply.  "Choice of law does not matter, however, unless the laws of the competing jurisdictions are actually in conflict."  *Int'l Bus. Mach. Corp., v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).  As "there is no discernable difference between federal common law principles of agency and New York agency law," the Court applies both. *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 122 (S.D.N.Y. 2009).

construed in light of the surrounding circumstances.'"  *Spagnola v. Chubb Corp.*, 264 F.R.D. 76,

89 (S.D.N.Y. 2010) (quoting *Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452, 486

(S.D.N.Y. 2001).  "Unlike apparent authority, the question of whether actual authority exists

'depends upon the actual interactions of the putative agent and principal and not on the

perception a third party may have of the relationship.'"  *Spagnola*, 264 F.R.D. at 89 (quoting

*Manchester Equip. Co., Inc. v. American Way*, 60 F. Supp. 2d 3, 8 (E.D.N.Y. 1999).

Because neither party has offered a written agreement between Plaintiff and PhotoEdit,

the existence of actual authority must, at this stage, be deduced from the parties' other words and

conduct.  *Id.*  (*See* Dkt. No. 86-1 ("Pl. Dep.") at 18:5-19:23.)  In his deposition, Plaintiff testified

that he has no control over the terms of licenses between PhotoEdit and third parties.  (*See* Pl.

Dep. at 15:20-17:13.)  For example, when asked if he was "aware of any restrictions whatsoever

on PhotoEdit's right to license the works that they've accepted from [him]," Plaintiff answered

"No."  (*Id.* at 17:8-17:13.)  His other testimony reinforces the conclusion that PhotoEdit was

invested with unrestricted authority to license photographs on his behalf.  (*Id.* at 52:18-24; 54:14-

19.)  In fact, Plaintiff testified that PhotoEdit had in the past resolved a potential claim for

copyright infringement on his behalf and with his knowledge.  (*Id.* at 57:13-59:3.)

Plaintiff contests the importance of this sworn testimony by citing purportedly contrary

passages in his affidavit.  (Dkt. No. 102 ¶¶ 10, 17, 28-30.)  But statements such as "I do not

agree that PhotoEdit had any authority to act in my name or on my behalf in settling or

attempting to resolve in any my [sic] copyright claims against Wiley," are both conclusory and

self-serving declarations insufficient to defeat summary judgment in light of deposition

testimony and legal conclusions that the Court need not consider.  (Dkt. No. 92 ¶ 19.)  *See*

*United Magazine Co. v. Murdoch Magazines Distrib.*, Inc., 393 F. Supp. 2d 199, 212 (S.D.N.Y.

2005) ("It is axiomatic that a party cannot defeat summary judgment by submitting an affidavit that contradicts prior sworn deposition testimony.") (citing *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)); *see also Miller Marine Serv., Inc. v. Travelers Prop. Cas. Ins. Co.*, 197 Fed. Appx. 62, 64 (2d Cir. 2006) (recognizing courts' authority to disregard testimony that amounts to a legal conclusion); *Larouche v. Webster*, 175 F.R.D. 452, 455 (S.D.N.Y. 1996) ("When . . . legal conclusions appear in an affidavit, such extraneous material should [] be disregarded by the court.").[6]

Because there is no genuine issue of material fact as to whether Plaintiff gave PhotoEdit actual authority to convey retroactive licenses on his behalf, Defendant's motion for summary judgment on this point is granted.  *See Wu*, 2013 WL 145666, at *5 (relying on plaintiff's deposition testimony to conclude that "plaintiff indisputably gave the Photo Agencies the discretion to enter into retroactive licenses.")

In sum, the relevant license agreements between Wiley and PhotoEdit had the effect of retroactively extinguishing Plaintiff's claims for copyright infringement.  (*See* McCulloch Decl. Ex. 2, Rows 1-4, 6-7, 8-9, 12-13, 16-17.)   As a consequence, summary judgment in favor of

[6] Plaintiff argues that, prior to the issuance of two of the retroactive licenses, his counsel advised Wiley that PhotoEdit did not have authority to grant retroactive licenses. (Dkt. No. 91 at 15-16 n.5; *see* McCulloch Decl. Ex. 55; Rosenthal Decl. Exs. C, CC.)  He thus contends that Wiley was on notice of PhotoEdit's inability to grant retroactive licenses on Plaintiff's behalf.  But Wiley relies on a theory of PhotoEdit's actual authority, not apparent authority.  (*See* Dkt. No. 104 at 7 n.6.)  "Unlike apparent authority, the question of whether actual authority exists 'depends upon the actual interactions of the putative agent and principal and not on the perception a third party may have of the relationship.'"  *Spagnola*, 264 F.R.D. at 89 (citation omitted).  Plaintiff offers no evidence that he informed *PhotoEdit* that it did not have authority to issue retroactive licenses on his behalf.  Nor has Plaintiff offered evidence to support the conclusion that PhotoEdit's actual authority was terminated or altered by some other mechanism.  *See* Restatement (Third) of Agency § 3.06 Termination of Actual Authority.  Rather, Plaintiff's deposition testimony indicates that PhotoEdit has, in the past, resolved potential claims for copyright infringement on his behalf.  (Pl. Dep. at 57:13-59:3.)

Wiley is appropriate on a number of related claims.  Since these retroactive licenses do not contain print-run limitations, Defendant is granted summary judgment on all related print-run violations.  (*See, e.g.,* Rosenthal Decl. Ex. CC.)  As these retroactive licenses authorize "World" rights, meaning publication outside North America was sanctioned, Defendant is granted summary judgment on related geographic violation claims.  (*See, e.g.,* Rosenthal Decl. Ex. C.) But because these retroactive licenses authorize "English" rights, related claims for foreign-language violations must be addressed separately.

## F.    Foreign Sales and Foreign-Language Translations

Plaintiff moves for summary judgment on the ground that Wiley, in violation of the relevant licenses, "published or authorized" foreign-language translations in connection with nine uses.  (*See* McCulloch Decl. Ex. 2, Rows 10, 11, 20, 22, 23.)  Plaintiff also claims that Wiley violated certain licenses by making or authorizing sales outside North America.[7]

### 1.    English-Language Foreign Sales

Three of the alleged foreign-language translations can be dealt with quickly.

For two of the translations—editions of *Psychology Around Us 1e* and *Early Childhood Education 1e*—Plaintiff points to a document that concerns only *English-language* versions of *Psychology Around Us 1e*.  (*See* Dkt. No. 97 ("Kadyshevich Decl.") Ex. C (Redacted); Dkt. No. 101-6 at 2; McCulloch Decl. Ex. 2, Rows 10, 11.)  This evidence provides no support for the allegation that Wiley "created or authorized the publication of foreign translations."  (Pl. 56.1 Statement ¶¶ 51, 53.)  Accordingly, Plaintiff is denied summary judgment on these claims.

---

[7] As explained above, all but two of Plaintiff's claims concerning geographic violations are eliminated as a consequence of the Court's grant of summary judgment to Defendant on the issue of retroactive licenses.  (McCulloch Ex. 2, Rows 20, 25.)

Plaintiff also alleges that Wiley violated the license it obtained to use the photograph

MUS401DYW095-001 in *Alegbra and Trigonometry 2e* by authorizing a foreign language

translation.  (*See* Pl. 56.1 Statement ¶¶ 69-71.)  In support of the claim, he cites a document that

concerns an "English Reprint"—not a translation.  (*See* Kadyshevich Decl. Ex. F (Redacted).)

Summary judgment is therefore denied as to this use.  (Pl. 56.1 Statement ¶ 70.)

## 2.    Foreign-Language Publications

Plaintiff alleges that Wiley improperly authorized the use of photograph

MEN191DYW005-001 in foreign-language translations of *Abnormal Psychology 11e* and

*Abnormal Psychology 12e*.  (McCulloch Decl. Ex. 2, Rows 22, 23.)  Wiley concedes that its

wholly owned subsidiary John Wiley & Sons International Rights, Inc. ("Wiley International")

licensed the right to create foreign translations to John Wiley & Sons (HK) Ltd ("Wiley HK")

and John Wiley & Sons, Singapore Pte ("Wiley Singapore").  (Dkt. No. 96 ¶¶ 75, 76.)  But

Wiley argues it cannot be held liable for unlicensed uses by these entities, under either a theory

of direct copyright infringement or by a theory of contributory or vicarious infringement.  (*See*

Dkt. No. 99 at 14-19.)

"One infringes contributorily by intentionally inducing or encouraging direct

infringement, and infringes vicariously by profiting from direct infringement while declining to

exercise a right to stop or limit it."  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545

U.S. 913, 930 (2005) (citations omitted).  Contributory liability exists if the defendant "with

knowledge of the infringing activity, induced, caused, or materially contributed to the infringing

conduct of another."  *Lefkowitz v. John Wiley & Sons, Inc.*, No. 13 Civ. 6414 (KPF), 2014 WL

2619815, at *10 (S.D.N.Y. June 2, 2014) (citing *Wolk v. Kodak Imaging Network, Inc.*, 840 F.

Supp. 2d 724, 750 (S.D.N.Y. 2012).  Vicarious liability occurs "when the defendant profits

directly from the infringement and has a right and ability to supervise the direct infringer, even if

the defendant initially lacks knowledge of the infringement." *Metro-Goldwyn-Mayer*, 545 U.S.

at 930 n.5.  As these standards make clear, both contributory and vicarious theories of liability

require evidence of the underlying direct infringement.  *See id.* at 940 ("[T]he inducement theory

of course requires evidence of actual infringement . . . ."); *Faulkner v. Nat'l Geographic Enters.*

*Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) ("[T]here can be no contributory infringement absent actual

infringement.")

Plaintiff's motion for summary judgment on these uses must fail.  To start with, Plaintiff

has not submitted sufficient evidence of direct infringement—that the photograph in question

actually appeared in foreign-language versions of *Abnormal Psychology*—to prevail on summary

judgment.  Even if he had, Plaintiff has not presented evidence sufficient to attribute these

infringing publications to Wiley under a theory of vicarious or contributory liability.[8]  The

record simply does not permit the conclusion that Wiley had knowledge of the infringements in

question, or that Wiley induced infringement, or that Wiley has the right or ability to supervise

the entities that published the infringing works.  All the record reveals is that a wholly owned

subsidiary of Wiley, Wiley International, licensed the right to create foreign-language

translations of *Abnormal Psychology 11e* and *Abnormal Psychology 12e*, to other entities,

including Zanichelli Editore, S.p.A., Wiley HK, and Wiley Singapore.  (Dkt. No. 98 ("Kliemann

Decl.") Exs. B, C (Redacted).)  There is little evidence of the scope or nature of the relationship

between Wiley and these other entities, be they subsidiaries, affiliated companies, or independent

---

[8] Alternatively, Plaintiff suggests that the Court should pierce the corporate veil to find Wiley liable for these underlying infringements.  Plaintiff has failed to offer evidence sufficient to conclude, at this stage, that piercing the corporate veil is appropriate.  *See MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 62 (2d Cir. 2001).

third parties.  There is even less evidence of Wiley's connection to the underlying infringement.

What evidence does exist suggests that licenses between Wiley International and other entities

specifically advised that the agreements did not confer rights in "any text, illustrations or

supplementary material from other sources that may be incorporated in the original Work."  (*Id.*)

Because there are genuine issues of material fact as to Wiley's connection to the underlying

direct infringement, both parties' motions for summary judgment are denied.

### 3.      Geographic Violations

Plaintiff claims that Wiley violated certain licenses by making or authorizing sales

outside North America.

According to one claim, Wiley violated the license it obtained to use the photograph

MUS401DYW095-001 in *Alegbra and Trigonometry 2e* because it sold copies outside the

United States.  (*See* Pl. 56.1 Statement ¶¶ 69-71.)  The license in question authorizes "North

American" distribution rights "including 10% distribution abroad."  (McCulloch Decl. Ex. 19.)

Wiley does not dispute that it disseminated *Algebra and Trigonometry 2e* outside North

America.  (Dkt. No. 96 ¶ 70.)  But it contends that the use of the term "North American" in the

license was in error, and alternatively that the terms of this license were supplanted by a  "master

pricing agreement between Wiley and PhotoEdit" which set out standard prices for "World

English" rights.[9]  (*Id.* ¶ 69; Kadyshevich Decl. Ex. 2 at 6.)  Wiley has provided little reason why

_____

[9] Wiley argues that while it requested "World English Language publication rights" for the
publication, PhotoEdit "sent back an invoice that erroneously listed 'North American'
distribution rights."  (*See* Kadyshevich Decl. Ex. E; McCulloch Decl. Ex. 19.)  That the license
was intended to confer "World" rights is, Wiley argues, underscored by the fact that the price
Wiley paid for the license was consistent with other prices it paid PhotoEdit for "World English"
reuse rights and consistent with the terms of the master pricing agreement.  (Dkt. No. 99 at 22.)
Wiley has failed to justify a departure from the prevailing rule that "[u]nambiguous contract
terms 'are given their plain meaning,'" particularly where the contract is one between
sophisticated parties.  *Anthracite Capital, Inc., v. MP-555 West Fifth Mezanine, LLC*, No. 03-

a "master pricing agreement" governing the purchase of "World English" rights should bear on the construction of a license that by its terms grants only "North American" rights.  However, a genuine issue of material fact exists as to whether Wiley exceeded the grant of rights in the license by, for instance, authorizing sales outside the United States exceeding "10% distribution abroad."  (McCulloch Decl. Ex. 19.)  Plaintiff's motion for summary judgment on this geographic violation claim is therefore denied.

Wiley is also charged with violating geographic restrictions in the license it obtained to use MED785DYW075-001 in *Visualizing Nutrition: Everyday Choices 1e*.  (McCulloch Decl. Ex. 2, Row 25.)  By its terms, the license grants only "North American" rights and Wiley does not dispute that it distributed the publication outside North America.  (McCulloch Decl. Ex. 23 (Redacted); Dkt. No. 96 ¶ 81.)  But because of a genuine issue of material fact related to the statute of limitations, explained below, Plaintiff's motion for summary judgment on this claim is denied.

### G.    Statute of Limitations

Wiley argues that there are "genuine issues of fact with respect to whether the statute of limitations bars any or all damages" for alleged violations "for which the Court does not grant summary judgment to Wiley."  (Dkt. No. 99 at 23.)

Civil claims for copyright infringement must be "commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  The Second Circuit has held that a claim does not "'accrue' until the copyright holder discovers, or with due diligence should have discovered, the

---

CV-5219 (DLC), 2005 WL 1155418, at *6 (S.D.N.Y. May 17, 2005), *aff'd*, 165 Fed. Appx. 875 (2d Cir. 2005) (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000).

infringement (the so-called 'discovery rule')." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 at 124 (2d Cir. 2014).[10]

The complaint in this action was filed on July 5, 2012.  The alleged infringements, however, extend to publications released as early as 2005.  (Dkt. No. 1.)  Plaintiff states that he learned about these potential license violations through his counsel and as a result of discovery. (Pl. Dep. at 28:16-29:15; see Dkt. No. 92 ¶ 25.)  But Plaintiff received regular royalty payments from PhotoEdit that included details about uses of the photographs at issue.  (*See* Dkt. No. 89 ¶¶ 54, 72, 81.)  Wiley argues that this, and other information sent to or accessible by Plaintiff, suggests that with due diligence Plaintiff should have discovered the alleged infringements much earlier.  (*See* Dkt. 99 at 23-24.)   In response, Plaintiff notes that "[i]nformation regarding Wiley's use of Plaintiff's photos (such as the print run of a book) is not public information and thus Plaintiff could not determine whether Wiley violated a particular license without Wiley's agreeing to disclose such 'confidential' information."  (Dkt. No. 91 at 21.)

Because there are triable issues of fact as to whether Plaintiff had sufficient notice of the copyright violations in question to put him on inquiry notice, Plaintiff's motion for summary judgment is denied as to all remaining infringing uses.  These include Plaintiff's otherwise surviving claims for print-run violations.  (*See* McCulloch Decl. Ex. 2, Rows 14, 15, 21, 25.)

## H.    Remaining Issues

The parties have moved for summary judgment on a number of other issues.  For one, Plaintiff asks the Court to find that Wiley's alleged license violations were willful.  (Dkt. No. 91

---

[10] *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 n.4 (2014), did not disturb the Second Circuit's discovery rule, as the Supreme Court explicitly acknowledged it had not "passed on the question" whether the discovery rule, which nine courts of appeals have adopted, is an appropriate alternative to the incident-of-injury rule.

at 25.)  A plaintiff can prove that an infringement was "willful" under the Copyright Act by demonstrating that the defendant had knowledge that its conduct constituted infringement or acted with "reckless disregard" for the copyright holder's rights.  *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995).  "Generally speaking, summary judgment is not a tool well suited to determining willfulness . . . ."  *Close-Up Intern., Inc. v. Berov*, 382 Fed. Appx. 113, 117 (2d Cir. 2010) (citing *Lipton*, 71 F.3d at 472).  Plaintiff has "pointed to an arguable pattern of knowing and continued infringing publication on the part of defendant" but there remains a genuine dispute of material fact on whether Wiley acted willfully with respect to any of the potential infringements.  *Psihoyos*, 2011 WL 4916299, at *5.[11]  Summary judgment is therefore denied.

Finally, Plaintiff moves for summary judgment on a number of Infringements at Issue without providing any detail about the nature of the underlying infringements.[12]  (Pl. 56.1 Statement ¶ 31.)  For these claims, there is no question that Plaintiff's photographs appeared in Wiley publications, but Plaintiff has failed to explain how Wiley's uses constituted infringement.[13]  (*See Id.* ¶¶ 32-81; McCulloch Decl. Ex. 2.)  Defendant moves for summary judgment on the ground that there is no evidence in the record that Wiley exceeded the terms of its licenses.  (Dkt. No. 88 at 9-12; Dkt. No. 99 at 19-21.)  Because Plaintiff has not articulated

---

[11] For the same reason, Plaintiff's request for summary judgment on the issue of an "innocent intent" defense is denied.  Because Defendant has withdrawn its standing and Section 201(c) defenses, the Court need not pass upon them.  (*See* Dkt. No. 99 at 4 n.3.)

[12] These alleged infringements appear in the following publications: *Psychology in Action 10e*; *Psychology Around Us 2e*; *College Algebra 2e*; *College Algebra 3e*; *Visualizing Elementary Mathematical Methods*; *Psychology in Action 10e*; *Visualizing Nutrition, Everyday Choices 2e*; and *Psychology Around Us 2e*.

[13] All of these alleged infringements are absent from the chart provided by Plaintiff that purports to "identify[] Plaintiff's claims of Wiley's license violations in this matter."  (McCulloch Decl. Ex. 2.)

why he is entitled to relief, let alone submitted evidence to support a finding in his favor,

Defendant's motion for summary judgment on these uses is granted.

**III.     Conclusion**

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED in

part and DENIED in part, and Defendant's motion for summary judgment is GRANTED in part

and DENIED in part.

The trial in this case will begin on Monday, March 7, 2016 at 9:30 AM with jury

selection.  The joint pretrial order and any motions *in limine* shall be filed by February 12, 2016.

Oppositions shall be filed by February 19, 2016.  The joint pretrial order shall comply with this

Court's individual practices in civil cases.  The final pretrial conference shall be held on

February 29, 2016 at 10:00 AM.  All proceedings shall take place in Courtroom 706 of the

Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

Counsel for the parties shall jointly submit a letter by January 20, 2016 indicating the

estimated length of trial.

The Clerk of Court is directed to close the motions at docket numbers 85 and 90.

SO ORDERED.

Dated: January 12, 2016
       New York, New York

 

_____
              J. PAUL OETKEN
              United States District Judge